1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10
11   ROBERT ALEXANDER KASEBERG,          Case No.:  15-cv-01637-JLS (DHB)
12                          Plaintiffs,
                                         **ORDER:**
13   v.
14   CONACO, LLC, ET AL.,                **(1) REGARDING JOINT MOTIONS
                                         FOR DETERMINATION OF
15                          Defendants.  DISCOVERY DISPUTES (ECF NOS.
16                                       36, 38); AND
17                                       **(2) GRANTING DEFENDANTS'
                                         MOTION FOR PROTECTIVE
18                                       ORDER (ECF NO. 34)**
19
20
21
22        On June 3, 2016, Defendants Conaco, LLC ("Conaco"), Turner Broadcasting
23   System, Inc. ("TBS"), Time Warner Inc. ("Time Warner"), Conan O'Brien ("Mr.
24   O'Brien"), Jeff Ross ("Mr. Ross"), and Mike Sweeney ("Mr. Sweeney") (collectively,
25   "Defendants") moved for the entry of a protective order as set forth in Exhibit A attached
26   to their motion.  (ECF No. 34.)  Plaintiff filed an opposition on June 23, 2016, and
27   Defendants filed a reply on June 30, 2016.  (ECF Nos. 40, 43.)
28

Thereafter, on June 9, 2016, the parties filed a Joint Motion for Determination of Discovery Dispute. (ECF No. 36.) The Joint Motion addresses disputes concerning Plaintiff's responses to the First Set of Interrogatories and First Set of Requests for Admission served by Conaco. (*Id*.) On June 10, 2016, the parties filed another Joint Motion for Determination of Discovery Dispute. (ECF No. 38.) The second Joint Motion addresses disputes concerning Defendants' responses to Plaintiff's First Set of Interrogatories to all Defendants and Request for Production of Documents, Set One, to Conaco. (*Id*.)

Having considered the arguments of the parties and the applicable law, and for the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Joint Motion addressing Plaintiff's responses to the First Set of Interrogatories and First Set of Requests for Admission served by Conaco (ECF No. 36); **GRANTS IN PART** and **DENIES IN PART** the Joint Motion addressing Defendants' response to Plaintiff's First Set of Interrogatories to all Defendants and Request for Production of Documents, Set One, to Conaco (ECF No. 38); and **GRANTS** Defendants' motion for entry of a protective order.[1]

## I.    BACKGROUND

Plaintiff commenced this action on July 22, 2015 by filing a complaint against Defendants alleging copyright infringement. (ECF No. 1 ("Compl.").) Plaintiff alleges he is a comedic writer engaged in the entertainment industry. (*Id*. at ¶ 14.) Plaintiff alleges that after he wrote and published four jokes on his personal online blog and/or Twitter account, each joke was subsequently featured in the monologue segment of the "Conan" show. (*Id*. at ¶¶ 15-21.)

Plaintiff alleges that he published a joke regarding a Delta flight on or about January 14, 2015 on his personal online blog ("Joke #1"). (*Id*. at ¶ 15.) Defendants used a joke

---

[1]    The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).

about a Delta flight in the Conan show monologue on January 14, 2015.  (*See* ECF No. 36-1 ("Huskins Decl.") at Exh. B at Definition K.)  Plaintiff further alleges that, on or about February 3, 2015, he published a joke on his personal online blog and Twitter account regarding Tom Brady ("Joke #2").  (Compl. at ¶ 16.)  Defendants used a joke about Tom Brady in the Conan show monologue on February 4, 2015.  (Huskins Decl. at Exh. B at Definition M.)  On or about February 17, 2015, Plaintiff alleges he published a joke on his personal online blog and Twitter account regarding the Washington Monument ("Joke #3").  (Compl. at ¶ 18.)  Defendants used a joke regarding the Washington Monument in the Conan show monologue on February 17, 2015.  (Huskins Decl. at Exh. B at Definition O.)  Lastly, on or about June 9, 2015, Plaintiff alleges he published a joke on his personal online blog and Twitter account regarding Bruce Jenner ("Joke #4").  (Compl. at ¶ 19.)  Defendants used a joke regarding Bruce Jenner in the Conan show monologue on June 9, 2015.  (Huskins Decl. at Exh. B at Definition Q.)

Plaintiff filed copyright applications for each of the jokes at issue, deeming them "literary works," with the United States Copyright Office on March 10, 2015, March 11, 2015, June 26, 2015, and July 8, 2015.  (Compl. at ¶ 23; *see also* ECF No. 1-2.)  These applications are pending.  (*Id.*)

Plaintiff seeks a permanent injunction, actual damages, statutory damages, increased statutory damages for willful infringement, and profits attributable to the infringement of Plaintiff's copyrights pursuant to 17 U.S.C. §§ 502(a) and 504.  (*Id.* at pp. 6-7.)  Plaintiff also seeks attorney's fees and costs and punitive damages.  (*Id.* at p. 7.)

## II.   DISCUSSION

### A.   Joint Motions for Determination of Discovery Disputes (ECF Nos. 36, 38)

#### 1.   Legal Standard

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The relevance standard is commonly recognized as one that is necessarily broad in scope. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes.  District courts also have broad discretion to limit discovery.  For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or the "proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

### 2.    Defendants' Motion to Compel (ECF No. 36)

Defendants seek an Order compelling Plaintiff to supplement his responses to Interrogatories Nos. 11-12 in Conaco's First Set of Interrogatories, and deeming admitted Requests for Admission 2-5 and 6-7 in Conaco's First Set of Requests for Admission.

#### a.    *Interrogatory No. 11*

In Interrogatory No. 11, Conaco asks Plaintiff to identify every instance in the last five years in which he sold any of his original content and to identify the original content sold.  (Huskins Decl. at Exh. A.)  Plaintiff initially objected to this interrogatory.  (*Id*. at Exh. C.)  However, Plaintiff later served a supplemental response which states that he will

"provide a separate document for Attorney's Eyes Only."   (ECF No. 36-2 ("Lorenzo Decl.") at Exh. JJ; *see also* Exh. GG.)

Although Plaintiff's counsel asserts in his declaration that he provided Defendants with a supplemental response to Interrogatory No. 11, and attached an email to the motion reflecting this transmission, Defendants represent they did not receive the supplemental response.   (*See* Lorenzo Decl. at Exh. GG; ECF No. 36 at p. 4, n. 1.)   Accordingly, Defendants' position on Plaintiff's supplemental response is unknown.   However, given the nature of the response and the entry of a Protective Order, as discussed below, with an Attorney's Eyes Only ("AEO") provision, the Court will not compel a further response at this time.

> b.   *Interrogatory No. 12*

In Interrogatory No. 12, Conaco asks Plaintiff to identify the contact information for each purchaser, including name, address, phone number and email address and the amount of compensation Plaintiff received, for each instance identified in Plaintiff's response to Interrogatory No. 11.   (Huskins Decl. at Exh. A.)   Plaintiff initially objected to this interrogatory on the grounds it seeks information which is not relevant, and seeks information that is private and confidential and may violate the privacy rights or trade secrets of the third parties who accepted submissions.   (*Id.* at Exh. C.)   Plaintiff later served a supplemental response, but did not change his objections.   (Lorenzo Decl. at Exh. JJ.)

Defendants move to compel a response, arguing that information concerning the purchase of Plaintiff's content is directly relevant to the quantification of the potential damages at issue.   (ECF No. 36 at p. 3.)   Defendants further argue that to the extent Plaintiff objects on privacy grounds, the disclosure would be treated subject to the terms of the Protective Order which contains an AEO provision.   (*Id.* at pp. 3-4.)

The Court agrees with Defendants that the amount of compensation Plaintiff received when he sold original content on other occasions is relevant to the issue of damages.   *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).   However, Defendants have not demonstrated how the address, phone number and email address of

each purchaser is relevant to the issue of damages.  Accordingly, Plaintiff is ordered to serve a supplemental response to Interrogatory No. 12 and identify the name of each purchaser, as well as the amount of compensation he received.  However, the Court will not require Plaintiff to provide the address, phone number, and email address of each purchaser.

### c.   *Requests for Admission Nos. 2-5*

Requests for Admission Nos. 2-5 ask Plaintiff to admit that Jokes 1-4 are "not identical" to the jokes used in the monologue for the Conan show, as those jokes are defined in the "Definitions" section of the Requests for Admission.  (Huskins Decl. at Exh. B.) Plaintiff initially objected to Requests for Admission 2-5 on the grounds they are "vague and ambiguous" as to "identical" and the response calls for a legal conclusion.  (*Id*. at Exh. D.)  Plaintiff served supplemental objections to Requests for Admission Nos. 2-5 making the same objections, but then responding: "Without waiving said objections Respondent Denies and is not denying on the basis of the objection."  (*Id*. at Exh. H, at pp. 5-6.) Therefore, Plaintiff has specifically denied each Request for Admission without qualification.

Defendants contend that because "it is objectively clear that the Jokes At Issue are not literal, word-for-word copies of Defendants' Monologue Jokes," that any denial, with or without qualification, is insufficient.  (ECF No. 36 at pp. 5-6.)  Defendants further argue that Plaintiff's supplemental responses are evasive and in bad faith, and indicate a "clear disregard for the requirements and purpose of Rule 36."  (*Id*. at pp. 5-6.)  Therefore, Defendants request that the Court deem these requests admitted in accordance with Federal Rule of Civil Procedure 36(a)(6).  (*Id*. at p. 6.)

Federal Rule of Civil Procedure 36(a) permits a party to serve any other party with a written request to admit any matters within the scope of Federal Rule of Civil Procedure 26(b)(1) relating to facts.  Fed. R. Civ. P. 36(a)(1)(A).  "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial."  *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir.

1981).  In response, a party may admit the fact, specifically deny it, or state in detail why the party cannot truthfully admit or deny.  Fed. R. Civ. P. 36(a)(4).  "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *Id.*  "[A]n evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer."  Fed. R. Civ. P. 37(a)(4).

If the requesting party contends that the response is insufficient, the party may "move to determine the sufficiency of an answer or objection."  Fed. R. Civ. P. 36(a)(6).  If the court finds that an answer does not comply with Rule 36, "the court may order either that the matter is admitted or that an amended answer be served."  *Id.*  Ordinarily, the court should "first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed."  *Asea, Inc.*, 669 F.2d at 1247.  However, "this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district judge."  *Id.*

Here, the Court does not find Plaintiff's responses to be insufficient, nor does it find them evasive or to be in bad faith.  Defendants argue they made clear during the parties' meet and confer and in follow-up correspondence that Plaintiff should understand "identical" to mean a word-for-word copy.  (ECF No. 36 at p. 5, lines 15-17.)  However, Conaco does not define the word "identical' in its Requests for Admissions, and the Court does not find Plaintiff's response, absent the word being defined as "word-for-word copy" in the Requests for Admission, to be insufficient, evasive, or in bad faith.  (*See* Huskins Decl. at Exh. B, pp. 1-5.)  Accordingly, the Court denies Defendants' request to deem admitted Plaintiff's responses to Requests for Admission Nos. 2-5.

### d.   *Requests for Admission Nos. 6-7*

Request for Admission No. 6 asks Plaintiff to admit that the "only evidence" he has of Defendants' access to Jokes 1-4 prior to Defendants' alleged infringement is his publication of the jokes on his Twitter account, personal online blog, or Facebook Page.  (Huskins Decl. at Exh. B, p. 6.)  Request for Admission No. 7 asks Plaintiff to admit that

he is not aware of any Defendant following or viewing his personal online blog, Twitter account, or Facebook page prior to February 4, 2015.  (*Id*.)

Plaintiff initially responded to Request for Admission No. 6 as follows: "Respondent refers to and incorporates by reference its General Objections as though set forth in full herein.  Respondent further objects to this Request on the grounds that it is compound, vague and ambiguous and that Respondent cannot provide an intelligible response with [sic] speculation.  Without waiving said objections, Respondent Denies." (*See id*. at Exh. D, at p. 6.)  Plaintiff's response to Request for Admission No. 7 similarly incorporated the General Objections and then stated: "Respondent further objects to this Request on the grounds that it is compound and that discovery is continuing.  Without waiving said objections Respondent Denies."  (*Id*. at p. 7.)

Plaintiff served supplemental responses to Requests for Admission Nos. 6-7 making the same objections, but then responding: "Without waiving said objections Respondent Denies on the basis that he has a recollection of someone on the Conan show following Respondent on twitter at some point in time."  (Huskins Decl. at Exh. H, pp. 6-7.) Therefore, Plaintiff has specifically denied each Request for Admission with qualification.

Defendants argue that Plaintiff's supplemental response contradicts his response to Interrogatory No. 6.  (ECF No. 36 at p. 7.)  Interrogatory No. 6 asks Plaintiff to state all facts relating to Defendants' opportunity to view or copy the jokes at issue.  (Huskins Decl. at Exh. C, p. 7.)  Plaintiff objected to the request and then stated: "Without waiving said objections, Respondent maintains a facebook, twitter and blog page that are all publicly available and accessible.  Discovery is continuing."  (*Id*.)

As an initial matter, the Court does not find these responses contradictory.  Plaintiff states that Defendants had an opportunity to view or copy the jokes at issue on his publicly available and accessible Twitter account, and that he has a recollection of someone on the Conan show following him on his public and accessible Twitter account at some point in time.  Although Plaintiff's supplemental responses to Requests for Admission Nos. 6-7 provide additional information on which to evaluate Defendants' access to the jokes,

Defendants did not have to follow Plaintiff on Twitter to have an "opportunity to view or copy" the jokes.

Defendants further question the veracity of Plaintiff's responses to Requests for Admission Nos. 6-7, arguing that "[i]f this information were true, Plaintiff would have had this information when he initially responded to the Interrogatories and RFAs." (ECF No. 37 at p. 7, lines 6-8.) To the extent Defendants are asking the Court to question Plaintiff's truthfulness because he remembered additional information about events that happened more than a year prior, the Court declines to do so. Plaintiff represented his response to Interrogatory No. 6 was "complete" on May 23, 2016. (Huskins Decl. at Exh. F.) He thereafter served his supplemental response with additional information to Conaco's Requests for Admissions on June 1, 2016. (*Id.* at ¶ 10.) It is entirely plausible that Plaintiff recalled additional information during this time as he was having conversations with his counsel about discovery.

As Defendants have not moved to compel an additional response to Interrogatory No. 6, that issue is not before the Court. However, the Court will remind Plaintiff of his duty to supplement his initial disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See* Fed. R. Civ. P. 26(e)(1).

For the foregoing reasons, the Court denies Defendants' request to deem admitted Plaintiff's responses to Requests for Admission Nos. 6-7.

               3.    <u>Plaintiff's Motion to Compel (ECF No. 38)</u>

Plaintiff seeks an Order compelling (1) Conaco to supplement its responses to Requests Nos. 3-8 in Plaintiff's Request for Production of Documents, (2) all Defendants to supplement their responses to Interrogatory Nos. 1-3 in Plaintiff's, and (3) Conaco to supplement its response to Interrogatory Nos. 4, 5, and 7 in Plaintiff's Interrogatories. (ECF No. 38.) Defendants oppose. (*Id.*)

As an initial matter, Defendants argue Plaintiff's motion is defective and untimely. (*Id.* at pp. 15-16.)  Defendants served their responses to Plaintiff's Interrogatories and Requests for Production of Documents on April 18, 2016.  (*See* ECF No. 38-1 at Exhibits N-U.)  Pursuant to Judge Bartick's Civil Chambers Rules, counsel was required to file their joint motion addressing this discovery dispute within forty-five (45) days of the service of the response.  (*See* Judge Bartick's Civil Chambers Rules at § IV(C), (D).)  Therefore, the joint motion should have been filed no later than June 2, 2016.  The joint motion was not filed, however, until June 10, 2016.

As demonstrated by the parties' declarations and exhibits attached to the Joint Motion, Plaintiff's counsel first sent a letter to Defendants addressing alleged deficiencies in their responses on May 13, 2016.  (*See* ECF No. 38-1 at Exh. U.)  The parties thereafter met and conferred on May 18, 2016.  (*See id.* at ¶ 2; ECF No. 38-2 at ¶ 2.)  Following the May 18, 2016 meet and confer, the parties continued to exchange emails through May 31, 2016.  (*See id.* at ¶¶ 5-11; EF No. 38-2 at ¶¶ 18-22.)  Although Plaintiff was required to provide Defendants with a reasonable opportunity to contribute to any joint motion he intended to file by May 26, 2016, Plaintiff's counsel states that he "thought it was best to continue to meet and confer rather than to rush to file a motion." (ECF No. 38-1 at ¶ 11; *see also* Judge Bartick's Civil Chambers Rules at § IV(C)(3).)  The parties also discussed informally calling Judge Bartick to resolve their dispute without filing papers.  (*See id.* at ¶¶ 4, 7, 10.)

Based on the foregoing, the Court finds that although the Joint Motion was untimely filed, because the parties were diligent in meeting and conferring, the Joint Motion was filed shortly after the deadline, and resolving the disputes therein is in the interest of justice, the Court, in its discretion, will consider the motion.[2]

---

[2]    The Court also notes Plaintiff's failure to comply with the page requirement. (*See* Judge Bartick's Civil Chambers Rules at § IV(C)(1).)  Although the Court will

15-cv-01637-JLS (DHB)

a.     *Requests for Production No. 3-4*

In Requests for Production Nos. 3-4 to Conaco, Plaintiff requests any and all documents, tangible things, and other items relating to Conaco's annual gross revenues and annual net profits in 2015.  (ECF No. 38-1 at Exh. M.)  In response, Conaco objected, in part, on the basis of relevance and the fact the requests seek confidential information prior to the entry of a suitable protective order.  (ECF No. 38-2 at Exh. 14.)  Based on its objections, Conaco withheld responsive documents.  (*Id*.)  In the Joint Motion, Defendants contend their principal objection to these requests is that they are irrelevant and not reasonably related to any infringement.  (ECF No. 38 at p. 17, lines 1-3.)  Plaintiff argues this information is relevant to prove Plaintiff's damages.  (*Id*. at pp. 7-8.)

Among other items, Plaintiff seeks actual damages and profits in this copyright infringement action pursuant to 17 U.S.C. §§ 504(b).  Section 504(b) states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.   In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

Section 504(b) therefore provides for two distinct monetary remedies – actual damages and recovery of wrongful profits.  *See Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 707-08 (9th Cir. 2004).  Actual damages, which focus on the copyright holder's losses, "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  *Id*. at 708 (quoting *McRoberts Software, Inc. v. Media 100, Inc*., 329 F.3d 557, 566 (7th Cir. 2003)).  Wrongful profit damages, on the

_____

consider the final page and a half of Plaintiff's motion on this occasion, it cautions that in the future it will only read and consider the first ten (10) pages filed.

11

other hand, which focus on the infringer's gains, are awarded "[t]o take away incentives for would-be infringers and to prevent the infringer from unfairly benefiting from a wrongful act." *Id.* (citation and internal quotations omitted). For both types of damages, the plaintiff must establish a causal link between the infringement and the monetary remedy sought as a predicate to recovery. *Id.* "[T]his requirement is akin to tort principles of causation and damages." *Id.*

Implicated in Requests for Production Nos. 3 and 4 are wrongful profit damages. Wrongful profits can be direct or indirect. *Id.* Direct profits are "those that are generated by selling an infringing product" and indirect profits are "revenue that has a more attenuated nexus to the infringement." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). In this case, Plaintiff is seeking indirect profits. A plaintiff seeking indirect profits must establish the existence of a causal link before indirect profit damages can be recovered. *Id.*; *see also Polar Bear Prods., Inc.*, 384 F.3d at 708. As the Ninth Circuit stated in *Mackie*, determining whether there is a causal link between the infringement and subsequent profits is a "threshold inquiry." *Id.* at 915. "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." *Polar Bear Prods., Inc.*, 384 F.3d at 711 (quoting 4 NIMMER ON COPYRIGHT § 14.03, 14-34).

The Ninth Circuit has set out the following "two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Id.* In order to make a showing of a causal nexus, "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Id.* In other words, the evidence of gross revenue must be "duly apportioned to relate to the infringement." *Id.* (quoting 4 NIMMER ON COPYRIGHT § 14.03[B], 14-39).

In the Joint Motion, Plaintiff states he has agreed to narrow his Requests for Production Nos. 3 and 4 to any all documents that relate to the annual gross revenues and annual net profits for the Conan show in 2015. (*See* ECF No. 38 at p. 8.)  In response, Defendants contend that "[e]ven accepting Plaintiff's proposal that the requests be limited to revenues related to the 'Conan' show . . . , the proposed limitation does nothing to cure the fact that the requests are still too attenuated and too speculative to be relevant." (*Id*. at p. 19, lines 11-14.)  Defendants assert that "[a]t issue are four, one-liner jokes . . . which together make up no more than 2 minutes of air time in a show that ran approximately 180 new episodes in 2015, each with a runtime of about 42 minutes." (*Id*. at p. 19, lines 14-17.)  Moreover, Defendants argue "Conaco's revenues related to the 'Conan' show stem from, among other things, the licensing fee paid by the network, TBS." (*Id*. at p. 9, lines 17-18.)

For the reasons laid out above, the Court agrees with Defendants that Plaintiff must ultimately prove a causal nexus.  However, this case is still at the discovery stage.  In the cases cited by Defendants, the parties were either at the summary judgment or trial stage of the case.  *See Mackie*, 296 F.3d at 911 (appeal of a summary judgment order); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 155 (2d Cir. 2001) (appeal of a summary judgment order); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 509 (9th Cir. 1985) (appeal of bench trial).  In each case, the plaintiff was able to at least put on evidence relating to profits; evidence that was obtained through discovery.  The question before the Court is therefore what is relevant for purposes of discovery, not whether Plaintiff has met his ultimate burden of proof on damages.

To the extent that Plaintiff seeks documents relating to Conaco's annual gross revenues and annual net profits in 2015, these requests are simply too broad to be relevant.  They do not fall within any logical parameter.  As the Ninth Circuit stated in *Polar Bear Prods. Inc.*:

> Although the statute only references the broad term "gross revenue," to conclude that a copyright plaintiff need only provide the company's overall

> gross revenue, without regard to the infringement, would make little practical or legal sense. Otherwise, the plaintiff in a copyright action against a multidivision, multi-product company such as General Mills, would need to do nothing more than offer an overall gross revenue number—like $11.5 billion—and sit back. [citation]. But the causation element of the statute serves as a logical parameter to the range of gross profits a copyright plaintiff may seek.

*Id*. at 711-12 (internal citation omitted); *see also On Davis*, 246 F.3d at 160 (submitting the gross revenue of a multi-book publisher when the infringement relates to one book does not meet the plaintiff's burden; the burden "would require evidence of the revenues realized from the sale of the anthology containing the infringing poem"); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.")

As noted above, Plaintiff has offered to limit his requests to the Conan show for 2015. However, given that what is at issue are four, one-liner jokes, "which together make up no more than 2 minutes of air time in a show that ran approximately 180 new episodes in 2015, each with a runtime of about 42 minutes," the Court still finds this request much too broad. Plaintiff seeks the production of thousands, if not hundreds of thousands, of documents that are simply not relevant to any damages calculation.

In his Complaint, Plaintiff alleges the jokes at issue were featured in the monologue segments of the January 14, 2015, February 4, 2015, February 17, 2015, and June 9, 2015 Conan shows. (Compl. at ¶¶ 15, 17, 19, 21.) Therefore, although the jokes amounted to less than 0.05% of each of these shows, the Court finds the gross revenue and net profits of these particular shows relevant to Plaintiff's damages claim.

Accordingly, the Court grants Plaintiff's request to compel documents which identify the gross revenues and net profits of the Conan show for the four dates at issue. The Court stresses that Conaco need not produce *any and all* documents relating to the

15-cv-01637-JLS (DHB)

gross revenues and net profits.  A document(s) which identifies the total gross revenues and net profits, and the elements comprising these numbers, is sufficient.[3]

### b.   *Request for Production No. 5*

In Request for Production No. 5 to Conaco, Plaintiff requests any and all documents, tangible things, and other items relating to the amount paid to each writer, whether staff, contract, or writers, for the Conan show in 2015.  (ECF No. 38-1 at Exh. M.)  In response, Conaco objected, in part, on the basis of relevance and the fact the requests seek confidential information prior to the entry of a suitable protective order.  (ECF No. 38-2 at Exh. 14.)   Based on its objections, Conaco withheld responsive documents.  (*Id*.)

In the Joint Motion, Plaintiff argues this information is relevant to establish his wrongful profit damages.  (ECF No. 38 at pp. 9-10.)  Defendants respond that the individual defendants are salaried employees and that the "salaries and/or bonuses of writers on the 'Conan' show are in no way contingent upon, or tied to, the amount of jokes they write which end up in the show's monologue."  (*Id*. at p. 20.)  Therefore, Defendants argue, based on *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981), production of financial compensation to its writers is not required.  (*Id*.)

An individual defendant may be liable for profits he earned in connection with the alleged copyright infringement.  *Frank Music Corp.*, 772 F.2d at 519 (citing *MCA, Inc*., 677 F.2d at 186).  Amounts paid as salary are not to be considered as profits.  *Id*.; *see also MCA Inc*., 677 F.2d at 186 (salaries that are not "contingent upon or fixed by the profits" of the show containing infringing material are not considered "profits" recoverable as damages).  However, to the extent an individual defendant "did earn profits from the production, such as royalties, he is liable for a proportionate amount of these."  *Id*.

As an initial matter, because Plaintiff is seeking production of these documents on a wrongful profits theory, documents relating to the compensation of non-defendants are not

---

[3]       As discussed below, these documents may be covered by an AEO provision in the protective order.

relevant.  For all writers who are named defendants, however, the Court finds any profits earned by these defendants related to the Conan shows at issue to be relevant at this stage. These profits exclude any salary not contingent upon or fixed by the profits of the Conan show.  Although Defendants argue the writers' bonuses are not contingent upon, or tied to, "amount of jokes they write which end up in the show's monologue," that argument goes to their burden of proof.

Accordingly, the Court grants Plaintiff's motion to compel all documents identifying the profits, excluding non-contingent salary, earned by the individual writer defendants relating to their work on the four Conan shows at issue.[4]  As with Requests for Production Nos. 3-4, a document(s) which identifies the profits, and the elements comprising these numbers, is sufficient.[5]

### c.    *Requests for Production No. 6-8*

In Requests for Production Nos. 6-8, Plaintiff asks Conaco to produce any and all documents, including any and all emails, involving Josh Comers, Brian Kiley, and Rob Kutner regarding any and all jokes these individuals submitted for use on the Conan show monologue in the last three years.  (ECF No. 38-2 at Exh. 14.)  Conaco objected to these requests, in part, as overbroad, unduly burdensome, and harassing to the extent the requests seek information which is not relevant to any party's claim or defense and is not proportional to the needs of the case.  (*Id.*)  Subject to these objections, Conaco agreed to produce all relevant and non-privileged documents within its possession concerning these individuals and the jokes at issue after entry of a protective order.  (*Id.*)

---

[4]    The Court acknowledges that this ruling may appear to be inconsistent with the Court's previous June 22, 2016 ruling issued during the deposition of Defendant Mike Sweeney.  However, upon further review of the applicable case law, the Court has determined that any salary or bonus of the writers which is contingent upon or fixed by the profits of the Conan show is relevant and needs to be disclosed.

[5]    Again, as discussed below, these documents may be produced pursuant to an AEO provision in the protective order.

15-cv-01637-JLS (DHB)

Plaintiff argues that jokes other than the jokes at issue "are relevant because they relate to the element of 'access.'" (ECF No. 38 at p. 10, lines 12-13.) In other words, unrelated jokes "are relevant because any link or similarity between them and any of Plaintiff's [other] jokes would tend to establish that Defendants had access to Plaintiff's jokes." (*Id.* at p. 10, lines 13-15.) Defendants contend these requests are extremely burdensome and irrelevant. Defendants specifically note that monologue writers for the Conan show "submit several jokes, and several versions of each joke, for the monologue each day," and argue that "Plaintiff has inadequately demonstrated how correspondence related to jokes beyond those at issue is relevant to access at all, must less sufficient to justify the burden of these requests." (*Id.* at p. 23, lines 15-19.)

The Court agrees with Defendants that Requests Nos. 6-8, as framed, are overly broad and unnecessarily burdensome. Although Plaintiff contends these requests are relevant to access, they are not specifically tailored to the issue of access, and thus are not likely to lead to relevant evidence. As Plaintiff has not made a specific showing that the burdens of production would be minimal, proportional to the needs of the case, and that the requested documents would lead to relevant evidence, the Court denies Plaintiff's motion to compel responses to Requests Nos. 6-8 beyond what Conaco has already agreed to produce. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (affirming district court's denial of a motion to compel documents where the requests were unnecessarily burdensome and overly broad and there was no "specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence"); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992) (same); *see also* Fed. R. Civ. P. 26(b)(1).

### d. *Interrogatories Nos. 1-3 to All Defendants*

In Interrogatories Nos. 1-3 served on all Defendants, Plaintiff asks Defendants to identify their annual gross revenues in 2015, identify all persons and witnesses who calculate and/or determine their gross revenues, and identify all documents that relate to their annual gross revenues in 2015. (*See* ECF No. 38-1 at Exhs. G-L.) Defendants

17

objected to the Interrogatories as vague and ambiguous, irrelevant, harassing, overbroad, and unduly burdensome.  (ECF No. 38-2 at Exhs. 8-13.)  Defendants further objected to the Interrogatories served on the public companies to the extent they seek publicly accessible revenue information equally available to Plaintiff, and those served on all companies to the extent they seek confidential information.  (*Id*. at Exhs. 8-10.)  As to all Interrogatories served on individuals, Defendants further objected on the grounds they seek personal financial information subject to the attorney-client privilege, the attorney work product doctrine, the joint defense and/or common interest privilege, the right of privacy, and any other applicable privileges.  (*Id*. at Exhs. 11-13.)

For the reasons discussed above, the Court grants Plaintiff's motion to compel Defendants to respond to Interrogatories Nos. 1-3, but with the same limitations as laid out above with respect to Plaintiff's Requests for Production Nos. 3-5.

### e.   *Interrogatory No. 4 to Conaco*

In Interrogatory No. 4, Plaintiff asks Conaco to identify the names of all persons on its writing staff, including writing staff interns, for the last five years.  (ECF No. 38-2 at Exh. 10.)  Conaco objected, arguing the Interrogatory was overbroad, unduly burdensome, harassing, and sought information about the identities of individual non-parties, the disclosure of which may lead to the invasion of privacy, harassment, or unnecessary involvement.  (*Id*.)  Subject to these objections, Conaco identified the members of the writing staff who wrote, created, and/or edited the jokes at issue.  (*Id*.)

Plaintiff argues these names go to the element of access.  (ECF No. 38 at p. 12.)  He asserts that "[t]here may be other writers working for Conaco who may have been in contact with Plaintiff at some point in time in the past."  (*Id*. at p. 12, lines 2-4.)  In addition, Plaintiff argues "there may be other writers who follow Plaintiff's twitter account and may have obtained the 'jokes at issue' themselves and related them to the individuals listed as being involved in the 'jokes at issue.'"  (*Id*. at p. 12, lines 4-6.)  Defendants argue the Interrogatory seeks irrelevant information to the extent it seeks the identities of writers, other than those who wrote, created, and/or edited the jokes at issue.  (*Id*. at p. 22.)

Defendants argue that simply because a member of the writing staff followed Plaintiff's social media accounts, this "does not impute access to a completely separate individual." (*Id*. at p. 22, line 22.)

The Court agrees that the identity of an individual who was not on the writing staff of the Conan show at the time the jokes at issue were created and/or used in the monologue is not relevant. Any possible connection is far too attenuated. However, the Court finds that the connection is not too remote as to the writers who were employed by the Conan show on the days when the jokes at issue were created and/or used in the monologue. Accordingly, the Court compels Conaco to supplement its response to Interrogatory No. 4 to identify the names of all writers employed by the Conan show, including writing staff interns, on the days when the jokes at issue were created and/or used in the monologue.

### f.    *Interrogatory No. 5 to Conaco*

In Interrogatory No. 5, Plaintiff asks Conaco to provide the gross revenue or annual salary for 2015 of each person listed in response to Interrogatory No. 4. (ECF No. 38-2 at Exh. 10.) Conaco objected, arguing the Interrogatory was overbroad, unduly burdensome, and harassing to the extent it seeks information that is not relevant, "not proportional to the needs of the case," and "not limited in scope to those writers that wrote, created or edited the jokes specifically identified in the Complaint." (*Id*.) Conaco further objected on the grounds of confidentiality and privilege. (*Id*.)

Plaintiff argues the salaries of all Conan show writers are relevant to prove wrongful profits damages. For the reasons stated above with respect to Request for Production No. 5, the Court denies Plaintiff's motion to compel a further response as to individuals who are not defendants. However, the Court grants Plaintiff's motion to compel a further response with respect to any revenue or salary, excluding non-contingent salary, earned by the named individual writer defendants relating to their work on the four Conan shows at issue.

///

///

g.     *Interrogatory No. 7 to Conaco*

In Interrogatory No. 7, Plaintiff asks Conaco to identify the names of all persons on its writing staff, including writing interns, who have submitted material or jokes for the Conan show monologue in the last three years.  (ECF No. 38-2 at Exh. 10.)  Conaco objected, arguing the Interrogatory was overbroad, unduly burdensome, and harassing to the extent it seeks information that is not relevant, "not proportional to the needs of the case," and "not limited in scope to those writers that wrote, created or edited the jokes specifically identified in the Complaint." (*Id*.)  Conaco further objected on the grounds of invasion of privacy, duplication, and inaccessibility. (*Id*.)  Subject to these objections, Conaco identified the members of the writing staff who wrote, created, and/or edited the jokes at issue for the Conan show monologue.  (*Id*.)

Plaintiff argues the identity of these individuals is relevant to prove the element of access.  (ECF No. 38 at p. 12.)  Defendants object to disclosure for the same reasons discussed above with regard to Interrogatory No. 4.  The Court agrees that this request is largely duplicative of Interrogatory No. 4.  Therefore, for the same reasons set forth above in discussing Interrogatory No. 4, the Court compels Conaco to supplement its response to Interrogatory No. 7 by identifying the names of all writers employed by the Conan show, including writing staff interns, on the days when the jokes at issue were created and/or used in the monologue.

**B.     Defendants' Motion for Protective Order (ECF No. 34)**

1.     Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in

evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 26 authorizes the court, upon a showing of good cause, to issue a protective order to "[a] party . . . from whom discovery is sought . . . to protect [that] party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The court's order may, among other things, forbid the discovery; "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters"; or "require[] that a trade secret or other confidential research, development, or commercial information not be revealed, or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (D), (G).

The party seeking a protective order bears the burden of establishing good cause. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" *Id.* (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). The showing of good cause under Rule 26 is a "heavy burden." *Id.* (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citing *Phillips*, 307 F.3d at 1211-12). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* (quoting *Rivera v. NIBCO, Inc.* 364 F.3d 1057, 1063-64 (9th Cir. 2004)).

District courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Phillips*, 307 F.3d at 1211 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Indeed, district courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Id.*

2.   Discussion

The parties agree that a protective order is appropriate in this case, and that it should contain an AEO provision.  The only dispute is whether a party may designate non-public financial information as AEO.  (*See* ECF No. 43 at p. 1, lines 8-9; ECF No. 40 at p. 3, lines 24-25.)  Defendants argue that an AEO provision must be included for non-public financial information because Plaintiff is a direct competitor and the inadvertent disclosure of such information would pose a material threat to Defendants.  In response, Plaintiff argues that he is not a direct competitor and that the inclusion of an AEO provision in the protective order would impair his ability to evaluate any potential damages evaluation or settlement offer.  For the following reasons, the Court finds there is good cause for the inclusion of an AEO provision covering non-public financial information in the protective order.

Both parties cite cases that address whether in-house counsel should be permitted access to the trade secrets of an opposing party.  However, Plaintiff is not in-house counsel, or even an attorney, and therefore is not subject to the same demands during litigation as in-house counsel in directing or managing litigation, nor is he subject to the State Bar's Rules of Professional Conduct.  Therefore, while the Court finds cases addressing attorneys, and in particular in-house counsel, to be helpful, they do not directly apply to the facts of this case.

As the Ninth Circuit stated in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), a case involving in-house counsel, in determining when protective orders for trade secrets may be appropriate, "a balancing test will best resolve" such disputes.  *Id.* at 1470.  Specifically, a court must balance the risk of "inadvertent disclosure of trade secrets to competitors" against the risk that protection of trade secrets impairs the prosecution of a plaintiff's claims.  *Id.*  This balancing test "requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure."  *Id.*  The district court should factor in "the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures."  *Id.*  The court should also factor in whether the receiving party is "involved in 'competitive decisionmaking'; that is,

22

advising on decisions about pricing or design 'made in light of similar or corresponding information about a competitor.'"  *Id.* (citing U.*S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  The resulting protective order should strike a "reasonable balance" between the parties' interests.  *Id.* at 1471.

As discussed at length above, in his discovery requests, Plaintiff requests documents and information concerning Defendants' gross revenue and profits.  Defendants assert that "[a]mong a tremendous amount of other sensitive, non-public information, this request would also encompass licensing fees paid by TBS to Conaco to license its programming." (ECF No. 34-1 at p. 5, lines 3-5.)  "The material threat posed by the inadvertent disclosure of just this particular bit of information is clear – it would severely impact both Conaco's ability to negotiate future content licenses with networks and media outlets, and TBS's ability to negotiate future content licenses with production companies."  (*Id.* at p. 5, lines 5-8.)  Based on these representations, the Court finds Defendants' non-public financial information, which it has ordered to be produced, to be commercially sensitive, and the risk of inadvertent disclosure, in terms of content, to be high.  This factor therefore weighs heavily in favor of an AEO provision.

Unlike the plaintiff's in-house counsel in *Brown Bag*, Plaintiff is clearly not involved in any competitive decisionmaking for a competitor.  However, as Plaintiff readily admits, he "is engaged in the entertainment industry, namely as a comedic writer," and he has submitted many other jokes to businesses who are direct competitors to Defendants.  (ECF No. 1 at ¶ 14; ECF No. 40 at p. 5, lines 6-7; ECF No. 34-2 at Interrogatory Nos. 11, 12, Exh. 6.)  Therefore, the Court finds some potential for risk of inadvertent disclosure to competitors, in terms of proximity and opportunity, thus weighing in favor of an AEO provision.

On Plaintiff's side, he argues that he must have access to the information in order to evaluate any potential damages evaluation or settlement offer.  Any AEO designation, he claims, would impair his ability to calculate and ascertain the extent of his damages. Plaintiff's counsel further asserts that he must be able to discuss the reasonableness of any

settlement offer with his client.  The Court does not find this argument persuasive in light of the highly sensitive financial information at issue.  *See Inter-Med Inc. v. ASI Med. Inc.*, No. 09-cv-383, 2010 WL 2679992, at *2 (E.D. Wis. July 1, 2010).  Both Plaintiff's counsel and any financial expert retained by Plaintiff will have an opportunity to review, interpret, and formulate opinions as to the reasonableness of any settlement offer or damages calculation.  *See Lopez v. Aqui Es Texcoco*, 2013 WL 150691, at *3 (S.D. Cal. Jan. 14, 2013).  Plaintiff does not have any specialized knowledge or technical experience that would assist in this evaluation, or that would require his involvement.  *See Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) ("Where, because of the technical nature of a case, the specialized knowledge of in-house counsel was necessary to supervise the litigation, good cause was found to outweigh the risk of inadvertent disclosure and permit access of in-house counsel to confidential information.").

Moreover, Plaintiff's counsel is not precluded from discussing any potential settlement offer with his client in terms that do not reveal confidential information, and to the extent Plaintiff's counsel at the time of any settlement discussion needs to disclose additional information to his client, he may request permission from Defendants.  Lastly, this provision covers documents and information produced discovery.  To the extent the information becomes relevant at a subsequent stage of this case, disclosure is subject to further order of the court.

Given the foregoing, the Court finds Defendants have demonstrated that the risk of inadvertent disclosure outweighs Plaintiff's need to view the information to prosecute his case.  Accordingly, the Court finds good cause for the inclusion of an AEO provision covering non-public financial information in the protective order.

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Joint Motion addressing Plaintiff's responses to the First Set of Interrogatories and First Set of Requests for Admission served by Conaco, LLC (ECF No. 36); **GRANTS IN PART** and **DENIES IN PART** the Joint Motion addressing Defendants' response to Plaintiff's

15-cv-01637-JLS (DHB)

First Set of Interrogatories to all Defendants and Request for Production of Documents, Set One, to Conaco (ECF No. 38); and **GRANTS** Defendants' motion for entry of a protective order.  The Court will issue the protective order, in the form attached as Exhibit A to Defendants' motion, in a subsequent order.

IT IS SO ORDERED.

Dated:  July 26, 2016

DAVID H. BARTICK
United States Magistrate Judge

15-cv-01637-JLS (DHB)