Jayson M. Lorenzo, Esq. SBN 216973
Attorney at Law
2794 Gateway Road, Suite 116
Carlsbad, CA 92009
Tel. (760) 517-6646
Fax (760) 520-7900

Attorney for Plaintiff
ROBERT ALEXANDER KASEBERG

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ALEXANDER KASEBERG,<br><br>        Plaintiff,<br><br>    vs.<br><br>CONACO, LLC; TURNER BROADCASTING SYSTEM; TIME WARNER, INC.; CONAN O' BRIEN; JEFF ROSS; MIKE SWEENEY; and DOES 1-100, Inclusive,<br><br>        Defendants. | Case No.: 15-CV-01637-JLS-DHB<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION AT THE DEPOSITION OF DANIELLE WEISBERG**<br><br>Judge: Hon. David H. Bartick |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## JOINT DECLARATION OF COMPLIANCE WITH THE COURT'S MEET AND CONFER REQUIREMENT

Pursuant to Civil Chambers' Rule (IV)(C), Plaintiff Robert Alexander Kaseberg ("Plaintiff") and Defendants Conaco, LLC, Turner Broadcasting System, Inc.; Time Warner Inc.; Conan O'Brien; Jeff Ross; and Mike Sweeney (Collectively, "Defendants") submit this Joint Motion for Determination of Discovery Dispute to advise the Court of the parties' impasse concerning Defendants' objection to producing documents at the deposition of Danielle Weisberg, which took place on July 1, 2016. This motion is made following the conference of counsel pursuant to Civil Local Rule 26.1a and Civil Chambers' Rule (IV)(A), which took place on July 1, 2016, July 18, 2016 and July 29, 2016.

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### RELEVANT BACKGROUND

On April 18, 2016, over three months ago, Plaintiff noticed two depositions in May 2016, for Defendant Mike Sweeney and Defendant Conaco, LLC employee Danielle Weisberg, giving 30 days' notice.  Plaintiff's counsel also sent a letter stating that he would work with Defendant towards mutually convenient dates if the dates were inconvenient. Plaintiff then noticed three additional depositions in June 2016 for Defendant Conaco, LLC employees Brian Kiley, Josh Comers and Rob Kutner, who are writers of the "Conan" show, giving over 60 days' notice.  Plaintiff also noticed two depositions in July 2016 for Defendant Ross and Defendant O'Brien, giving well over 90 days' notice. *See* Declaration of Jayson M. Lorenzo ("Lorenzo Dec.") at ¶ 2.

Defendants' counsel, Erica Van Loon, requested an accommodation regarding depositions at an early meet and confer conference.  She requested that Plaintiff give at least 30 days' notice to coordinate dates, due to her clients' busy schedules and the taping schedule of the "Conan" show.  Lorenzo Dec. at ¶ 3. Plaintiff's counsel had no

issues working with the Defendants' schedules and was happy to extend the professional courtesy, expecting similar courtesy would be reciprocated.

The depositions were originally set in South Orange County, closer to North County San Diego.   During meet and confer discussions regarding scheduling of depositions, Defendants' counsel offered their offices in Los Angeles for all of the depositions.   Plaintiff's counsel expressed concern that since the case was filed and venued in San Diego, it was not equitable for Plaintiff and Plaintiff's attorney to incur the extra time and expense of driving an additional three hours round north trip, for the convenience of Defendant and their counsel, and that depositions may be set anywhere within 100 miles of the deponent's residence.   Even so, Plaintiff's counsel made another effort to resolve the matter by proposing to drive further north to take depositions in Irvine for the convenience of Defendants and their counsel. Lorenzo Dec. at ¶ 4.   An agreement was made that all depositions would take place in Irvine. Lorenzo Dec. at ¶ 4.   Defendants' counsel also requested that depositions be held on Fridays, as that is the day the show does not tape.   Plaintiff's counsel was again happy to accommodate that request and noticed each deposition for a Friday, unless agreed otherwise. Lorenzo Dec. at ¶ 4.

Ms. Weisberg's deposition was originally scheduled for May 20, 2016. The notice requested that the deponent produce the following documents:

1.      All e-mail correspondences between Deponent and Josh Comers from January 1, 2013 to December 31, 2015.

2.      All e-mail correspondences between Deponent and Brian Kiley from January 1, 2013 to December 31, 2015.

3.      All e-mail correspondences between Deponent and Rob Kutner from January 1, 2013 to December 31, 2015. Lorenzo Dec. at ¶ 5. (**Exh. A**)

On May 4, 2016, Defendants' counsel advised that Ms. Weisberg was not available to be deposed on the date and would provide alternate dates. Lorenzo Dec. at ¶ 6. (**Exh. B**). Defendants initially agreed to produce Mr. Sweeney, Mr. Kiley and Mr,

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG

Kutner for deposition. For all other depositions noticed, new dates would need to be provided. During a meet and confer call on May 18, 2016, Plaintiff again requested dates for Ms. Weisberg's deposition. Defendant did not provide any dates for Ms. Weisberg and on June 7, 2016, Plaintiff re-noticed her deposition for June 24, 2016. Lorenzo Dec. at ¶ 7. (**Exh. C**). On June 10, 2016, Plaintiff's counsel sent another email to Defendants' counsel regarding Ms. Weisberg's deposition. Lorenzo Dec. at ¶ 8. (**Exh. D**). On June 14, 2016, Defendants' counsel finally provided a date of July 1, 2016. Lorenzo Dec. at ¶ 9. (**Exh. E**). Ms. Weisberg's deposition was re-noticed for that date. Lorenzo Dec. at ¶ 10. (**Exh. F**).

The deposition of Danielle Weisberg took place on July 1, 2016. However, the only documents produced consisted of two e-mails that were only related to the jokes at issue and not to any other correspondence between the writers.

At the deposition, Plaintiff's counsel offered to limit the scope of the requested documents to a time period of just six months before the first infringement in January, 2015 to the date of the last infringement in June, 2015. Lorenzo Dec. at ¶ 11. However, Defendants' counsel did not agree to the limitation as to time and a call was placed to his Honor.

Upon both sides briefing the Court of the dispute, the Court denied the motion to compel e-mails based in part on the fact that the request was similar to Request for Production Nos. 6-8, served on Defendant Conaco, LLC, which was subject to a joint motion that was at that time pending before the court. However, the Court encouraged the parties to continue to meet and confer on the issue. On July 12, 2016, Plaintiff's counsel sent a subsequent email to Defendants' counsel agreeing to limit the request to only January 13, 2015, January 14, 2015, February 3, 2015, February 17, 2015 and June 9, 2015, the dates the jokes at issue were aired, as well as a date where a similar joke was used on the show. Lorenzo Dec. at ¶ 13. (**Exh. G**). The parties agreed to a meet and confer call on July 18, 2016. No agreement was reached and emails were exchanged on July 19, 2016, and July 21, 2016, summarizing the call. The parties were cognizant of

the fact that a Joint Motion was pending that may have an impact on the issue in this motion.  Lorenzo Dec. at ¶ 14. (**Exh. H, I, J**).

On or about July 26, 2016, the Court issued a ruling on the Joint Motion. Lorenzo Dec. at ¶ 15. The Court denied Plaintiff's motion to compel responses to Requests Nos. 6-8 beyond what Conaco, LLC had already agreed to produce. *Id.* Request for Production Nos. 6-8, one for each writer, request the following documents to be produced:

> "Any and all documents, including any and all emails, involving (the three writers, Josh Comers, Brian Kiley, Rob Kutner) regarding any and all jokes (the three writers) submitted to you for use on the "CONAN" show monologue in the last three years."

After the ruling, the parties met and conferred again on July 29, 2016 to discuss the production and were unable to reach agreement. Lorenzo Dec. at ¶ 16.   It is Plaintiff's position that the current request differs from what was ruled on by Court, which is discussed below.

Within the last week, Plaintiff discovered an additional similar joke used on the Conan show. The joke's premise is regarding the University of Alabama Birmingham's football team.  Plaintiff published a joke on his blog on December 2, 2014 at 2:24 p.m. which read:

> "The University of Alabama Birmingham is shutting down its football program. To which the Oakland Raiders said; "Wait, so you can do that?"

A similar joke appeared on the Conan show the next day December 3, which read:

> "University of Alabama-Birmingham has decided to discontinue its football team... When they heard this news, New York jets' fans said wait, can you do that?"

The only real difference was the change in the name of the football team. Plaintiff provided a supplemental disclosure on August 4, 2016.  Plaintiff provided a

supplemental disclosure on August 4, 2016. Lorenzo Dec. at ¶ 17. (**Exh. K**). Plaintiff seeks production of documents related to this day as well.

## II.

## ARGUMENT

### A. The Requested Documents are not Encompassed by RFP Nos. 6-8

Plaintiff firstly maintains that Plaintiff's RFP Nos. 6-8 ask for different documents than those requested at Ms. Weisberg's deposition.  RFP Nos. 6-8 ask for only jokes which Josh Comers, Brian Kiley, and Rob Kutner submitted for use on the Conan monologue. In contrast, the requested documents at Ms. Weisberg's deposition include e-mails between her and the three writers which include all general correspondence. So, one narrowly seeks all joke submissions, while the other seeks e-mail communications between the writers and Weisberg, which has been amended to six key days. Because these are different requests, this motion should not be denied on the grounds that a decision has already been made on Request for Production Nos. 6-8.

### B. The Requested E-mails from Six Different Dates are Relevant

The threshold requirement for discoverability under the Federal Rules of Civil Procedures is whether the information sought is "relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The relevance standard is commonly recognized as one that is necessarily broad in scope. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 251 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman,* 329 U.S. at 507. A court may limit the scope of any discovery method if it determines that "the discovery sought

is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or the "proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Sys., Inc.,* 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.,* 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

In this motion, Plaintiff is asking for all e-mails exchanged between Ms. Weisberg and the three writers on six different dates; the four dates of the jokes at issue, the date of the first of two Delta Airlines Flight jokes, and the date of a University of Alabama Birmingham joke. The dates are limited to December 3, 2014, January 13, 2015, January 14, 2015, February 3, 2015, February 17, 2015 and June 9, 2015.  These e-mails between Ms. Weisberg and the three writers involved in the jokes at issue, Josh Comers, Brian Kiley, and Rob Kutner are relevant to Plaintiff's cause of action for copyright infringement because the e-mails establish the daily routine, timing, processes, policies, and procedures of Conaco, LLC when it is creating and preparing jokes for use on the Conan show monologue. As Plaintiff will discuss below, any daily routines, processes, policies, and procedures implemented by Conaco, LLC which are related to the submission of jokes are key to this case because they relate to the timing of the jokes submitted, the circumstances regarding the submission of jokes on certain days, and ultimately the elements of "access", "intent," and "copying" in this litigation.

i.    The Information Requested Establishes Defendants' Routine, Process, Policies and Procedures on the Six Different Dates

Through the depositions of Mike Sweeney, Brian Kiley, Rob Kutner, and Danielle Weisberg, Plaintiff has obtained information regarding some of the processes of how and when writers submit jokes for use on the Conan show. For example, the deponents all testified that there are multiple batches of jokes which are submitted by

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION AT THE DEPOSITION OF DANIELLE WEISBERG

the writers to Conan O' Brien throughout the day for use on the show.  These batches are created at certain times throughout the day. They also testified that there are certain daily meetings which take place at certain times. These communications take place by email.  Lorenzo Dec. at ¶ 18

Brian Kiley and Rob Kutner have confirmed that they send batches of jokes to Ms. Weisberg. These batches of jokes are all assembled by Ms. Weisberg, and Ms. Weisberg disseminates information via e-mail on a daily basis. Ms. Weisberg is the writing assistant who acts as the liaison between the writers, Mr. Sweeney, Mr. O'Brien, and others on the team when it comes to joke submissions, as well as the person who notifies the writers of various meetings throughout the day which involve joke submissions.  Lorenzo Dec. at ¶ 19

Ms. Weisberg confirmed this during her deposition. She testified that e-mails are exchanged between her and the three writers throughout the day, which may include the proposed jokes, timing of meetings, when jokes are due to be submitted, and premises that may be suggested among other things. However, none of these e-mails between them, besides the actual joke submissions for the days of the jokes at issue, have been produced.  Ms. Weisberg also testified that the date of January 14, 2015 was a "weird" day because Mr. O'Brien did not review jokes at one point in the day, and a certain document that was usually generated was not created.  Plaintiff is entitled to discover if there are any emails or correspondence which detail why this day might have been "weird".  This would apply for all other days when similar jokes appeared.  There may exist emails that show for whatever reason, the day was weird or unusual.  If days were normal, Plaintiff would expect that the emails to which the deponents have testified to would confirm this and that none of the emails or timing of things during the day were "weird" or unusual.  Lorenzo Dec. at ¶ 20

   a. <u>Emails on December 3, 2014, January 14, 2015, February 3, 2015,  February 17, 2015 and June 9, 2015</u>

Plaintiff needs documents to review and confirm the daily routine and process that has already been testified to by Mr. Sweeney, Ms. Weisberg, Mr. Kiley and Mr. Kutner.  The deponents testified to the daily process, and admitted that emails related to this process are sent everyday and typically around the same time each day.  There is no way that Plaintiff can verify that routines, processes, policies, and procedures are in place with respect to joke submissions if Plaintiff is not granted access to the e-mails between Ms. Weisberg and the three writers which they all testified to. Plaintiff is informed and believes that the only evidence of the existence of a routine of submitting jokes in batches during the days of the jokes at issue would exist in the form of e-mails between Ms. Weisberg and the three writers.  They have all testified to their daily routine and processes, which appear to be documented in email, yet no emails other than the joke submissions alone, have been produced.  Additionally, anything unusual about a given day could be documented in the emails.

Finally, with respect to the December 3, 2014 joke, because it was recently discovered in the last few days, Plaintiff requests, in addition to the normal correspondence, all joke submissions related to this joke.

b.   Emails on January 13, 2015

On January 13, 2015, the following joke appeared on the Conan show:

"Yesterday, a Delta flight from Cleveland to New York took off with just two passengers –on the whole flight two passengers. And get this, they lost their luggage."

The next day, on January 14, 2015, the day Plaintiff alleged his joke was stolen, the Conan show used this joke:

"On Monday, a Delta flight from Cleveland to New York took off with just two passengers.  Two passengers on the whole plane. Yet somehow they spent the whole flight fighting over the arm rest."

The "Conan" show used the same premise on back to back days and coincidentally the second joke they used was substantially similar to Plaintiff's joke.

Plaintiff is seeking to discover what correspondence or documents exists between Ms. Weisberg and the writers on January 13, 2015, that might lead to discovery of admissible information regarding why the same premise was used the following day on January 14, 2015.  Again, the emails would tend to show if there was anything odd or unusual about the daily routine that the deponents testified to on January 13, 2015. Additionally, Plaintiff does not know who wrote or submitted the January 13, 2015 joke and if that person is who wrote the joke on January 14, 2015.

To be clear, Plaintiff is not asking for any more e-mails than those which were exchanged on the six different dates listed above.  The request now is narrowed as to time and limited to 6 days where similar jokes appeared on the show and one day where the "Conan" show used an identical premise.

ii.    The Information Requested is Relevant to Access, Copying and Intent

The documents are also relevant to proving "access" and "copying" of Plaintiff's protected work. In proving both "access" and "copying" of Plaintiff's protected work, the timing of joke submissions by the writers to Ms. Weisberg is extremely important. While it is true that Defendants have already produced e-mails which allegedly document the time upon which jokes were submitted by the three writers to Ms. Weisberg, this is one piece of evidence which lacks context in light of the routine and procedures that each deponent testified to. Plaintiff needs, at the very least, any and all other e-mail correspondence between the writers and Ms. Weisberg for the days requested to establish the background, timing of meetings/correspondence, and circumstances regarding the submission of the allegedly infringing jokes for use on the Conan show on each day. These e-mails would tend to prove whether or not the timing of the writers' submission of jokes is verifiable and if there was anything "weird" regarding the occurrences of each day, which may lead to the discovery of admissible evidence. As verified timing of the writers' submission of the jokes at issue will have an

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG

impact on whether or not Defendants had access to Plaintiff's work and/or copied his work, these e-mails are relevant.

### iii.   Credibility

It is important to remember that what Plaintiff seeks are company emails which were generated during work hours.  Plaintiff is not seeking personal or private emails.

It is well established that credibility is always an issue. Ms. Weisberg, Mr. Sweeney, Mr. Kiley, and Mr. Kutner all testified to the daily process and routines related to the monologue joke writing process.  They all testified to the use of their business emails as part of the process each day.  Plaintiff should be entitled to discover documents inclusive of the business emails on the six dates mentioned which have a relationship to the claims asserted by Plaintiff, in order to verify testimony given at deposition.

## III.

## CONCLUSION

In sum, the depositions revealed there is allegedly a routine or process in place for the submission of jokes on the Conan show that is followed every day, yet there have been no documents produced to support this contention. The e-mails exchanged between Ms. Weisberg and the three writers on the six dates discussed above would establish whether or not there was in fact a routine or process that was testified to, whether it was adhered to, and if there was anything "weird" or unusual during any of the dates. These e-mails are relevant because they shed light on the happenings of the day and puts the submission of the jokes in context instead of in a vacuum which at this stage should at least be discoverable. For the foregoing reasons, Plaintiff requests that this Court compel production of e-mails between Danielle Weisberg, Josh Comers, Brian Kiley, and Rob Kutner limited to six dates: December 3, 2014, January 13, 2015, January 14, 2015, February 3, 2015, February 17, 2015 and June 9, 2015.

1

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Plaintiff's request to compel production of all emails between Danielle Weisberg and Brian Kiley, Josh Comers, and Rob Kutner on the six dates identified by Plaintiff should be denied, as the requests are outside the permissible scope of discovery under Fed. R. Civ. P. 26. *First*, the requests are grossly overbroad on their face, and are duplicative of requests this Court has already held to be overbroad, unduly burdensome, and not likely to lead to admissible evidence. *Second*, Plaintiff's requests are not limited in subject matter such that they are plainly relevant to his infringement claim, and the meandering and conclusory arguments set forth in his Motion only further demonstrate their lack of relevance to this case. *Third*, production of documents pursuant to this request would be incredibly burdensome to Defendants. Such burden is unwarranted here, where the requests are unlikely to lead to the discovery of admissible evidence given their obvious overbreadth and lack of relevance to the Plaintiff's lone infringement claim. Thus, this Court should deny Plaintiff the relief sought in this Motion.

17

18

19

20

21

22

23

24

25

26

27

Moreover, this Motion is yet another example of Plaintiff's abuse of the discovery process. As part of his overall strategy to burden and harass defendants with needless discovery and motion practice, Plaintiff has continually exceeded the bounds of what is permissible or necessary discovery. In doing so, Plaintiff has served *twenty-seven separate sets* of written discovery, filed two discovery motions, served another three, disclosed four experts, and stated an intention to take fifteen depositions. All this has served to accomplish is to constrict the parties' ability to complete *meaningful* and *necessary* discovery before the cut-off, and needlessly drive up the costs imposed on both sides. Plaintiff's latest overzealous effort to seek discovery that is wholly irrelevant to this action should not be tolerated.

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG

## II.   RELEVANT BACKGROUND

On March 14, 2016 Plaintiff served his first set of Requests for Production ("RFPs") on Defendant Conaco, LLC ("Conaco").  RFPs 6-8 ask for any and all documents, including emails, regarding any jokes submitted for use on the "Conan" show monologue over the last three years by Josh Comers, Rob Kutner, and Brian Kiley – the monologue writers who independently created the jokes at issue.  Declaration of Nicholas Huskins ("Huskins Decl."), Ex. A.  In response, Defendants agreed to produce, and subsequently did produce, all documents and emails concerning the jokes at issue and the aforementioned monologue writers.  Huskins Decl., Ex. B.  Nevertheless, Plaintiff moved to compel production of the documents requested beyond Conaco's reasonable limitation.  ECF No. 38.  On July 26, 2016, this Court issued an Order (the "Order") denying Plaintiff's request outright.  ECF No. 47.

On June 15, 2016, Plaintiff served a Second Amended Notice of Deposition for Danielle Weisberg (the "Notice").  Huskins Decl., Ex. C.  The Notice was accompanied by three document requests, each seeking "all email correspondences" between Danielle Weisberg and the three monologue writers between January 1, 2013 and December 31, 2015.  *Id*.  Defendants served responses to those requests at Ms. Weisberg's deposition, again objecting to the requests as overbroad, unduly burdensome and irrelevant, and further noting the requests are largely duplicative RFPs 6-8 to Conaco.  Huskins Decl., Ex. D.  During the deposition, Plaintiff's counsel sought to meet and confer on the issue, and ultimately requested a teleconference with the Court.  At the conclusion of the teleconference, the Court denied, without prejudice, Plaintiff's request to compel the requested documents, noting that Plaintiff's counsel had failed to sufficiently demonstrate how the requested documents may be relevant to Plaintiff's claim.  *Id*., ¶ 3.

Plaintiff subsequently offered to limit the requests to five dates: January 13, 2015, January 14, 2015, February 3, 2015, and February 17, 2015.  Huskins Decl., Ex. E.  The parties met and conferred further on the issue on July 18, 2016, but were unable to reach

a resolution.  Huskins Decl., ¶ 2.  In follow-up correspondence dated July 19, 2016,
Defendants' counsel outlined Defendants' objections to Plaintiff's proposed limitation,
noting that while the proposal limited the requests as to time, Plaintiff's counsel made no
attempt to "identify any specific, relevant subject matter" sufficient to limit the scope of
the overbroad and irrelevant requests.  *Id*., Ex. F.  Plaintiff then waited two and a half
weeks before serving this motion with two other discovery motions on August 7, 2016.
*Id*., Ex. G.  Plaintiff requested all three motions be returned one week later, on August
12, 2016.  *Id.*

## III.  **LEGAL STANDARD**

Rule 26 allows discovery only as to "any nonprivileged matter that is relevant to
any party's *claim* or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).  While the
scope of permissible discovery is broad, the "right of a party to obtain discovery is not
unlimited." *Epstein v. MCA Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).  Indeed, "district
courts need not condone the use of discovery to engage in 'fishing expeditions.'"
*Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted).  Under Rule
26, all discovery requests must, at a minimum, meet the threshold relevance requirement
that the information sought appear to be "reasonably calculated to lead to the discovery
of admissible evidence." *Marsh v. County of San Diego*, 2007 WL 1994058, at *2 (S.D.
Cal. April 13, 2007).

"[W]hen the relevancy of propounded discovery is not apparent, as here, its
proponent has the burden to show the relevancy of the discovery request." *MGA
Entm't, Inc. v. Nat'l Prods. Ltd.*, 2011 WL 4550287 at *3 (C.D. Cal. Oct. 3, 2011)
(denying motion to compel production of documents where moving party failed to
demonstrate how its requests for production, which appeared irrelevant on their face,
was relevant or would lead to the discovery of admissible evidence); *see also Mathis v.
County of Lyon*, 2012 WL 1574816 at *3 (D. Nev. May 3, 2012) ("[W]hen a request for
discovery is overly broad on its face or when relevancy is not readily apparent, the party

seeking the discovery has the burden to show the relevancy of the request.").

## IV.   ARGUMENT

### A.   Plaintiff's Requests Are Overbroad On Their Face

Plaintiff's disputed requests are a blatant end-run around the Court's Order denying Plaintiff's request to compel further responses to RFPs 6-8 to Conaco.  But in attempting to distinguish the disputed document requests from RFPs 6-8, Plaintiff is forced to acknowledge that the disputed requests are even broader.  Mot. at 6.  Indeed, where RFPs 6-8 to Conaco concerned only documents and emails containing jokes submitted for use on the monologue, the requests at issue in this Motion seek "all email correspondences" without any limitation as to subject matter.

During the parties' meet and confer, Defendants' counsel repeatedly asked Plaintiff's counsel to provide *any* relevant basis sufficient to narrow the scope of the severely overbroad requests.  Huskins Decl., ¶ 2.  In response, Plaintiff's counsel stated that he couldn't provide any categorical boundary, as he won't know why the requested emails are relevant until he sees them.  *Id*.  This is precisely the sort of "fishing expedition" that is outside the bounds of permissible discovery, and the sort of discovery request the Ninth Circuit has declined to compel.  *Rivera,* 364 F.3d at 1072; *see also United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984) (affirming the district court's refusal to allow a parties sweeping request for documents even though some of the documents sought might have been relevant).

Moreover, courts routinely hold that document requests seeking all correspondence without an appropriate subject matter limitation are necessarily overbroad.  *See e.g., Moss v. Blue Cross and Blue Shield of Kansas, Inc.,* 241 F.R.D. 683 (D. Kan. 2007) ("requesting defendant to supply plaintiff with all correspondence of any kind sent either to or from plaintiff, as sought in Request No. 2, is overly broad on its face."); *Clubcom, Inc. v. Captive Media, Inc*. 2009 WL 454919 (W.D. Pa. Feb. 24, 2009) (denying motion to compel where disputed requests sought all

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG

communications between certain individuals within a specific period of time with no subject matter limitation); *C&R Forestry, Inc. v. Coonsol. Human Res. AZ, Inc.*, 2008 WL 190634 (D. Idaho 2008) (holding requests for "all correspondence" without subject matter limitation were overbroad, as they would necessarily require production of materials unrelated to plaintiff's claim); *In Re Subpoena Duces Tecum Directed To RCA Group*, 2006 WL 3844791 (D. Kan. 2006) (holding that document request seeking "all correspondence" and only limited in time was "overly broad on its face"); *Benham v. Rice*, 238 F.R.D. 15, 19 (D.D.C. 2006) ("All correspondence would by necessity include correspondence that is not relevant to a claim or defense. The request is overbroad.").

These cases demonstrate that requests for all emails or correspondence without any limitation as to subject matter are facially overbroad.  Courts in this district have denied motions to compel where the disputed requests were overbroad on their face. *See, e.g., Century Sur. Co. v. Master Design Drywall, Inc.*, 2010 WL 2231890, *2 (S.D. Cal. June 2, 2010) (denying motion to compel document requests because they were "overbroad and burdensome on their face"); *Vestin Realty Mortg. II, Inc. v. Klaas*, 2010 WL 4259946, *2 (S.D. Cal. Oct. 25, 2010) (same).  Thus, the lack of any limitation as to the subject matter of the disputed requests is sufficient on its own to warrant denial of the relief Plaintiff seeks in this Motion.

### B.   Plaintiff's Requests Are Not Relevant To His Infringement Claim And Not Reasonably Calculated To Lead To Admissible Evidence

Here, Plaintiff's disputed requests call for "all e-mail correspondences" between Danielle Weisberg and the three monologue writers on the six dates identified by Plaintiff.  The requests contain absolutely no limitation as to subject matter, much less any *relevant* subject matter.  As such, it cannot be the case that the relevance is apparent on the face of the requests.  Accordingly, it is Plaintiff's burden to demonstrate their relevancy. *See MGA Entm't*, 2011 WL 4550287 at *3; *Mathis v. County of Lyon*, 2012 WL 1574816 at *3.  Plaintiff cannot meet his burden here.

### 1.  Plaintiff's Assertion That The Disputed Emails Will Establish Routine, Procedures, Policies And Process Is Not Relevant

Plaintiff argues in his Motion that the requested documents are relevant because the "e-mails establish the daily routine, processes, policies, and procedures of Conaco, LLC when it is creating and preparing jokes for use on the 'Conan' show monologue." Mot. at 7.  But Plaintiff's Motion entirely fails to establish how routine, processes, policies, and procedures are relevant to his infringement claim, and as such, discoverable.  Fed. R. Civ. P. 26(b)(1) (limiting discovery to items relevant to party's claim or defense).

Moreover, Plaintiff is not forthcoming about the documents produced in this action that relate to the process of joke submissions for the "Conan" show.  In addition to every email that concerned the jokes at issue, Defendants have produced every monologue document generated on the days the alleged infringement occurred.  Huskins Decl., ¶ 4.  These documents, and how they fit into the daily schedule of the monologue writers, were discussed exhaustively at the depositions of Mike Sweeney, Danielle Weisberg, Brian Kiley, and Rob Kutner.  *Id.*  Between the testimony of these witnesses and documents produced, Plaintiff has more than enough information to establish a clear timeline concerning the routine of the monologue writers, the process of joke submissions, and the formation of the final monologue.  Indeed, Plaintiff acknowledges that all of these witnesses testified to the daily routine, process, and policy (Mot. at 9), but makes no argument that any of the witnesses' testimony, or any of the relevant documents already produced, contradict the established timeline and routine such that additional discovery would be warranted.  Even if this were the case, which it is not, Plaintiff's Motion does not explain how hundreds of emails, the vast majority of which would be limited to joke submissions entirely irrelevant to this case, would help clear up any ambiguity as to the schedule and routine of the monologue writers and the process of creating the final monologue.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION AT THE DEPOSITION OF DANIELLE WEISBERG

Plaintiff's conclusory argument that he is entitled to the discovery requested so that he can ascertain whether anything "weird" or "unusual" happened on any of the days at issue is similarly unavailing.  Plaintiff again fails to even attempt to explain why a break from the normal routine and schedule of the show is at all relevant to his infringement claim.  And again, Plaintiff advances no argument that would explain how hundreds of emails consisting of joke submissions would help determine whether or not a particularly day was "weird" or "unusual."  Thus, Plaintiff's argument is without merit, and his request should be denied.

## 2.   Plaintiff's Requests Are Not Relevant To Access, Copying, Or Intent

Plaintiff further argues that the requested documents are relevant to access, copying, and intent.  However, Plaintiff's only argument in support of this conclusion is that the emails he seeks in the disputed discovery requests will be relevant to the "timing" of the joke submissions by writers to Ms. Weisberg.  Mot. at 10. But Plaintiff's argument is nonsensical.  Plaintiff acknowledges that emails demonstrating the time the jokes at issue were submitted have already been produced.  Mot. at 10.  Indeed, the times the jokes were submitted have been further corroborated through witness testimony, the establishment of a consistent timeline through evidence produced in this case, and screenshots from Conaco's email archive system.  Yet, Plaintiff confusingly argues that the only way to verify the time of the emails is through the production of hundreds of other irrelevant emails, which would seemingly be no more "verifiable" than those already produced.  It simply does not follow that hundreds of emails sent throughout the course of a day will somehow assuage Plaintiff's concerns about the timing of the emails already produced and authenticated through deposition testimony and additional documents.

Moreover, in its Order, the Court expressly stated that Plaintiff's RFPs 6-8 to Conaco "are not specifically tailored to the issue of access, and thus are not likely to

lead to relevant evidence." ECF No. 47 at 17. Here, Plaintiff's disputed requests are no more narrowly tailored than RFPs 6-8. In fact, they are broader, and less tailored to any relevant subject matter, as discussed in detail below. If Plaintiff believes that emails beyond those relating to the jokes at issue are relevant to the issues of access, intent, and copying, Plaintiff should have served requests specifically concerning subject matter that would be pertinent to these issues. He did not.

Accordingly, Plaintiff has provided no basis for his conclusory assertions that the emails sought in the disputed requests are at all relevant to his copyright infringement claim, nor how they are likely to lead to admissible evidence. Thus, the Court should deny Plaintiff's request.[1]

### C.   Plaintiff's Requests Are Unduly Burdensome

Defendants have already produced emails and documents responsive to Plaintiff's requests to the extent they relate to the jokes at issue in this case. The Ninth Circuit has held that such limitations on discovery are reasonable and appropriate. *See e.g., Surfvivor Media, Inc. v. Survivor Prod.*, 406 F.3d 625, 635 (9th Cir. 2005) (limiting discovery to the infringing products alleged in plaintiff's complaint). Moreover, this Court has already denied Plaintiff's requests to compel production of the wide swath of irrelevant emails he sought in RFPs 6-8 to Conaco. Plaintiff's attempts to make an end-run around the Court's ruling through subsequent discovery requests and this Motion should not rewarded. The fact remains that despite bringing two different discovery motions seeking hundreds of emails unrelated to the issues of this case, Plaintiff has failed to demonstrate the relevance of his requests. Given the immense burden producing the hundreds of potentially responsive emails would impose on Defendants, and the minimal likelihood the gratuitously overbroad requests would lead to any

---

[1] Plaintiff briefly argues that "it is well established that credibility is always an issue" as further support for the relevance of the disputed requests. Again, there is no tie to his infringement claim in this purported justification.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG

relevant evidence, Plaintiff's requests must be denied.  Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. (b)(2)(C)(iii) (District court has discretion to deny or limit discovery where "the burden of expense of the proposed discovery outweighs its likely benefit"); *Hydroelectric L.P. v. Pac. GA & Elec.*, 981 F.2d 429, 438 (9th Cir. 1992) (affirming denial of motion to compel based on lack of specific showing that the burden of production would be minimal and that the requested documents would lead to relevant evidence).  Accordingly, this court should deny Plaintiff's request.

## V.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff the relief sought in this Motion.

Date: 8/12/2016                    By:____/jlorenzo/_____
                                         JAYSON M. LORENZO
                                         Attorney for Plaintiff
                                         ROBERT ALEXANDER KASEBERG

DATED:  August 12, 2016           GLASER WEIL FINK HOWARD
                                         AVCHEN & SHAPIRO LLP

                                         By:  /s/ Erica J. Van Loon
                                         PATRICIA L. GLASER
                                         ERICA J. VAN LOON
                                         NICHOLAS E. HUSKINS
                                         BRITTANY ELIAS
                                         *Attorneys for Defendants*

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DOCUMENT PRODUCTION
AT THE DEPOSITION OF DANIELLE WEISBERG