1   Jayson M. Lorenzo, Esq. SBN 216973
    Attorney at Law
2   2794 Gateway Road, Suite 116
    Carlsbad, CA 92009
3   Tel. (760) 517-6646
    Fax (760) 520-7900
4
    Attorney for Plaintiff
5   ROBERT ALEXANDER KASEBERG

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT ALEXANDER KASEBERG,        )   Case No.: 15-CV-01637-JLS-DHB
                                      )
12                                    )   Hon. Janis L. Sammartino
                                      )
13              Plaintiff,            )   **PLAINTIFF ROBERT ALEXANDER**
                                      )   **KASEBERG'S MEMORANDUM OF**
14       vs.                          )   **POINTS AND AUTHORITIES IN**
                                      )   **SUPPORT OF OPPOSITION TO**
15                                    )   **DEFENDANTS' MOTION FOR**
                                      )   **SUMMARY JUDGMENT AND/OR**
16  CONACO, LLC; TURNER               )   **PARTIAL SUMMARY JUDGMENT**
    BROADCASTING SYSTEM; TIME         )   **OR, IN THE ALTERNATIVE,**
17  WARNER, INC.; CONAN O' BRIEN;     )   **SUMMARY ADJUDICATION**
    JEFF ROSS; MIKE SWEENEY; and      )
18                                    )   **[PUBLIC VERSION]**
    DOES 1-100, Inclusive,            )
19                                    )   DATE:          April 6, 2017
                                      )   TIME:          1:30 PM
20              Defendants.           )   COURTROOM:     4A
                                      )
21  _____)

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page. No.

I.    INTRODUCTION.............................................................................1

II.   STATEMENT OF FACTS.................................................................1

III.  LEGAL STANDARD......................................................................5

IV.   ARGUMENT...................................................................................6

    A.    Kaseberg's Jokes Were All Registered In Accordance With
        17 U.S.C. § 411.......................................................................6

    B.    An Issue Of Material Fact Exists As To Copyright Infringement.............7

        1.    Kaseberg Need Not Present Evidence of Direct Copying...........7

        2.    Kaseberg Can Establish Access....................................7

            a.    An Issue of Material Fact Exists As To The Delta
                And Washington Monument Jokes..........................7

            b.    Kaseberg Can Establish A Triable Issue Of Fact
                As To Access.......................................................9

                i.    Strikingly Similar...................................10

                ii.   Chain Of Events.....................................11

                iii.  Widely Disseminated..............................13

        3.    An Issue Of Material Fact Exists As To Whether The
            Jokes Are Substantially Similar..............................15

            a.    Substantial Similarity Exists At The Extrinsic Stage.......16

            b.    Defendants Have Misconstrued The Extrinsic Test
                As Applied To The Instant Case..........................17

                i.    Kaseberg's Works Must Be Viewed As A
                Whole, Are Fiction, And Are Entitled To
                Protection............................................18

            c.    The Intrinsic Test For Substantially Similar Or
                Virtually Identical Is One For The Jury....................20

i

C.     Independent Creation Is An Issue For The Jury…………………………23

D.     An Issue Of Material Fact Exists As Willfulness…… …………………24

V.     CONCLUSION…………………………………………………………………25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page. No.

*Amini Innovation Corp. v. Anthony Cal., Inc.,*
    439 F. 3d 1365 (Fed. Cir. 2006)……………………….………... 23

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ………………………………………….……...5

*Apple Computer, Inc. v. Microsoft Corp.,*
    35 F. 3d 1435 (9th Cir. 1994) …………………………………17, 19, 20

*Baxter v. MCA, Inc.,*
    812 F. 2d 421 (9th Cir. 1987) ……………………………..……..9, 10

*Berkic v. Crichton,*
    761 F. 2d 1289 (9th Cir. 1985)……………………………..……..19

*Bernal v. Pardigm Talent & Lit. Agency,*
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ……………………………10

*British Airways v. Boeing Co.,*
    585 F. 2d 946, 951 n.6 (9th Cir. 1978) …………………..………..…5, 6

*Cavalier v. Random House, Inc.,*
    2002 WL 1042182, slip op. (9th Cir. May 21, 2002)………………….……19

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp..,*
    606 F. 3d 612 (9th Cir. 2010) ……………………………..……………6

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,*
    109 F. 3d 1394 (9th Cir. 1997)……………………………………………17

*Ets-Hokin v. Skyy Spirits, Inc.,*
    323 F. 3d 763 (9th Cir. 2003) ……………………………….………………21

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*
    462 F. 3d 1072 (9th Cir. 2006)……………………………………………6

*Granite Music Corp. v. United Artists Corp.,*
532 F. 2d 718 (9th Cir. 1976) ………………………………………………23

*Kouf v. Walt Disney Pictures & Television,*
16 F. 3d 1042 (9th Cir. 1994) ……………………………………15, 16, 19

*L.A. Printex Indus., Inc. v. Aeropostale,*
676 F. 3d 841 (9th Cir. 2012) ……………………………...……...…...13, 14

*Mattel, Inc. v. MGA Entertainment, Inc.*
616 F. 3d 904 (9th Cir. 2010) ……………………………….……….20, 21

*Metcalf v. Bochco,*
294 F. 3d 1069 (9th Cir. 2002) ……………………………………. 19, 20

*Miller v. Miramax Film Corp.,*
2001 U.S. Dist. LEXIS 25967 (C.D. Cal. 2001)…………………………23

*Narrell v. Freeman,*
872 F. 2d 907 (9th Cir. 1989) …………………………………………15

*Rice v. Fox Broadcasting. Co.,*
330 F. 3d 841 (9th Cir. 2002) …………………………...…………15, 17

*Rose v. Connolly,*
38 F. Supp. 52 (S.D.N.Y. 1941) …………………………………………16

*Satava v. Lowry,*
323 F. 3d 805 (9th Cir. 2003) ………………………………………….21

*See v. Durang,*
711 F. 2d 141 (9th Cir. 1983)…………………………………………19

*Shaw v. Lindheim,*
919 F. 2d 1353 (9th Cir. 1990) ………………………………..16, 17, 19, 22

*Swirsky v. Carey,*
376 F. 3d 841 (9th Cir. 2004) ……………………………………...15, 16

*Three Boys Music Corp. v. Bolton,*
212. F. 3d 477 (9th Cir. 2000) …………………………………...……9, 10

iv

*Tufenkien Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*

    338 F. 3d 127 (2d Cir. 2003) ……………………………….……20, 21

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,*

    715 F. 2d 1327 (9th Cir. 1983) ………………………………….15, 16

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.,*

    704 F. 3d 668 (9th Cir. 2012) ……………………………...…24, 25

## FEDERAL STATUTES

17 U.S.C. § 411 ……………………………………………..…………6

17 U.S.C. § 504(c)(2) ………………………………………..………24

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(a) …………………………………….……………5

## OTHER AUTHORITIES

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][3][a]
(Matthew Bender Rev. Ed.)……………………………………….………6

3 Nimmer, supra, at § 12.10[B][2][b]……………………………….23

3 Nimmer, *supra,* at § 12.11[D][1] ………………………….………23

4 Nimmer, *supra,* at § 13.02[A] …………………………….………7

4 Nimmer, *supra,* at § 13.02[B] ………………………………...……10

4 Nimmer, *supra,* at § 13.03[B][1][a] ……………………………….22

Plaintiff ROBERT ALEXANDER KASEBERG ("Kaseberg") respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment or, in the Alternative, Summary Adjudication.

## I.  INTRODUCTION

Plaintiff Robert Alexander Kaseberg ("Kaseberg") has been a freelance writer and comedy writer for over 20 years. (PUF 130). He has written articles and/or jokes that have appeared in publications including "The Chicago Tribune", "The New York Times", "The Orlando Sentinel", "The Washington Post", "The Louisville Courier Journal", "The Seattle Times", "The San Francisco Chronicle", "The Los Angeles Times", "Time" magazine, "Sports Illustrated" and locally, "The San Diego Union Tribune" and "North County Times" as well as radio. (PUF 131). Most notably, as a freelance comedy writer, Kaseberg for over the last 20 years has worked with an independent production company through which he has had over a thousand jokes used by Jay Leno. (PUF 132). For over 15 years, he has maintained a blog called http://thordoggie.blogspot.com/ where he has been regularly posting jokes, commentary and other writings since February, 2002. (PUF 133). He has also been a member of twitter since March, 2009, where is also posts jokes as well as other commentary. (PUF 133). He has tweeted over 13,000 times over that time period, has over 2000 followers and follows over 2000 accounts. (PUF 133).

## II.  STATEMENT OF FACTS

First, Kaseberg disputes many of Defendants' facts including *Conan's* creation process.  Those are listed in Plaintiff's Separate Statement of Undisputed and Disputed Facts filed herewith. (hereinafter "PUF")

On at least five occasions beginning in December 2014, Kaseberg wrote and published jokes on his personal online blog, which later appeared on the "Conan" show which had never happened before. ████████████████████████████████████ ████████████████████████████████████ (PUF 72, 134). Kaseberg is 58 years old, is a fan of a number of comedians and late night hosts but is neither obsessed

nor infatuated with Mr. O'Brien as Defendants attempt to suggest. (PUF 134). In all the years he has watched the Conan show he had never had a joke he posted on his blog or twitter appear on the Conan show. (PUF 135). That all changed in late 2014 and early 2015.

On December 2, 2014 at approximately 2:24 p.m., Kaseberg published the following literary work on his personal online blog: "The University of Alabama-Birmingham is shutting down its football program. To which the Oakland Raiders said; "Wait, so you can do that?"" (Joke #1) (PUF 136). The same joke later appeared on the "Conan" show monologue that aired on or about December 3, 2014. The joke from the monologue was, "University of Alabama-Birmingham has decided to discontinue its football team. Yeah. When they heard this news, New York jets' fans said wait, you can do that?" (PUF 137). The joke was allegedly written by Brian Kiley. (PUF 56). ████████████████████████████████████████████████████████████ ████████ (UF 138, 139).

On or about January 14, 2015 at approximately 4:14 p.m., Kaseberg published the following literary work on his personal online blog: "A Delta flight this week took off from Cleveland to New York with just two passengers. And they fought over control of the armrest the entire flight." ("Joke #2) (PUF140). The same joke later appeared on the "Conan" show monologue that aired on or about January 14, 2015. The joke from the monologue was, "Yesterday, a Delta flight from Cleveland to New York took off with just 2 passengers. Yet somehow, they spent the whole flight fighting over the armrest." (PUF 141). The joke was allegedly written by Josh Comers. (PUF 44). ████████████ ████████████████████████████████████████████████████████████ (PUF 142, 143).

Kaseberg was suspicious of the initial coincidence and on January 16, 2105, on a long shot, he sent a tweet to the head writer of the Conan show, Defendant Sweeney, asking if he could possibly contribute jokes to the show. He was not angry and thought it was worth a shot seeing if he could contribute to the show. (PUF 144). He received no

response which was not a surprise to him. ████████████████████████████████
████████████████████████ (PUF 145).

On or about February 3, 2015 at approximately 9:02 a.m., Kaseberg published the following literary work on his personal online blog: "Tom Brady said he wants to give his MVP truck to the man who won the game for the Patriots. So enjoy that truck, Pete Carroll." ("Joke #3) (PUF 146). This joke later appeared on the *Conan* show monologue that aired on or about February 4, 2015. The joke from the monologue was, "Tom Brady says he wants to give the truck he was given as the Super Bowl MVP to the guy that won the Super Bowl for the Patriots. So, Brady is giving that truck to Pete Carroll." (PUF 147). The joke was allegedly written by Brian Kiley. (PUF 63). ████████████████████████ ████████████████████████████████████████████████ (PUF 148, 149).

Kaseberg was again suspicious and on February 6, 2015, on a long shot, he sent a tweet to another writer on the Conan show, Andres de Bouchet. Again, he was not angry and thought it was worth a shot seeing if he could contribute to the show. (PUF 150). He received no response which again was not a surprise to him. ████████████████████████ ████████████████████████████████████████████████. (PUF 151). ████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████. (PUF 151).

On or about February 17, 2015, at approximately 11:20 a.m., Kaseberg published the following literary work on his personal blog: "The Washington Monument is ten inches shorter than previously thought. You know the winter has been cold when a monument suffers from shrinkage." ("Joke #4") (PUF 152). This joke later appeared on the "Conan" show monologue that aired on or about February 17, 2015. The joke from the monologue was, "Yesterday, surveyors announced that the Washington Monument is ten inches shorter than what's been recorded. Of course, the monument is blaming the shrinkage on the cold weather." (PUF 153). The joke was allegedly written by Brian Kiley. (PUF 49). ████████████████████████████████████████████████████████ ████████████. (PUF 154, 155). Kaseberg reached out to Defendant Sweeney by phone

on February 18, 2015, and surprisingly was able to reach him. The purpose of the call was not to cause trouble, but rather for Kaseberg to suggest that if he was writing jokes so similar to theirs, then maybe he should be contributing jokes to the show. (PUF 156). During the call, Sweeney angrily and loudly denied the jokes were of Kaseberg's creation. (PUF 156). During the call, Kaseberg was ridiculed, dismissed, and treated with scorn. (PUF 156). Sweeney admitted that he had received Kaseberg's message, went on his blog and saw the jokes, but inexplicably denied that the jokes were even the same. (PUF 156).

During the call, Kaseberg informed Defendant Sweeney that he had jokes appear on "The Tonight Show with Jay Leno" for over 20 years. (PUF 157). Kaseberg stated he was seeking an opportunity to contribute jokes to the *Conan* show because the jokes appeared to be a great example of shared sensibilities. (PUF 157). The call ended with no resolution. (PUF 157). In fact, the next day, Kaseberg sent a tweet to Defendant Sweeney saying he didn't mean to sound accusatory and only wanted an opportunity to contribute jokes to the show. (PUF 158). ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. (PUF 145, 151, 156).

On or about March 11, 2015, a letter was sent to Defendant Conaco, LLC, regarding the jokes and letters were exchanged over a couple of months, with no resolution. (PUF 159). ███████████████████████████████████████████ (PUF 160).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████. (PUF 161). █████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████. (PUF 162). █████████████████

█████████████████████████████████████████". ████████████████

████████████████████████████████████████████████████████████.

Then, on June 9, 2015, at approximately 11:05 a.m., Kaseberg published the following literary work on his personal blog: "Three towns, two in Texas, one in Tennessee, have

streets named after Bruce Jenner and now they have to consider changing them to Caitlyn. And one will have to change from a Cul-de-Sac to a Cul-de-Sackless." ("Joke #5") (UF 163). This joke later appeared on the "Conan" show monologue that aired on or about June 9, 2015. The joke from the monologue was, "Some cities that have streets named after Bruce Jenner are trying to change the street's names to Caitlyn Jenner. And if you live in Bruce Jenner Cul-de-Sac, it will now be called a Cul-de-No-Sac." (UF 164). The joke was allegedly written by Rob Kutner. (PUF 68). ██████████████████

███████████████████████████████████████████████

█████████. (PUF 165, 166).

     With 20 years of comedy writing experience, Kaseberg reached out politely first on twitter twice to see if there was any way he could submit jokes to the show after noticing the initial similarities. When he got no response he finally got a hold of Defendant Sweeney and expected to have a civil conversation but instead was ridiculed, yelled at and treated with scorn. (PUF 157). Formal correspondence took place between Conaco, LLC which ensued for a couple of months. Thereafter, there is no dispute Defendants knew who Kaseberg was and his concerns with the similarity of the jokes, another of Kaseberg's jokes was on the show. Only after the last joke and way he was treated did Kaseberg decide to file suit on July 22, 2015. (PUF 157).

## III.   LEGAL STANDARD

     The court must find there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law," to grant summary judgment. Fed. R. Civ. P 56(a). Summary judgment is a drastic remedy and is therefore to be granted cautiously: "Neither do we suggest that the trial courts should act other than with caution in granting summary judgment . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In opposing a motion for summary judgment, the opposing party must set forth specific material facts showing a genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56(a), (c)(1) (emphasis added). The reviewing court must view the evidence and

inferences therefrom in the light most favorable to the nonmoving party. *British Airways Bd. v. Boeing Co.,* 585 F. 2d 946, 951 n. 6 (9th Cir. 1978)

## IV.  ARGUMENT

Kaseberg agrees with the standard that the Defendants copied protected elements of an original work and that copying can be established through direct copying or showing access and "substantial similarity". *See Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006)

### A.  Kaseberg's  Jokes Were All Registered In Accordance With 17 U.S.C. § 411

It is common for copyright infringement to occur as to an unregistered work. *See generally* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][3][a] (Matthew Bender Rev. Ed.). When this occurs, the copyright owner may then register the work and immediately seek judicial redress. *Id.* The statute specifically provides that "the effective date of the copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received. *Id.*  The Ninth Circuit adopts the "application" approach in determining when a work of art has been registered for purposes of an infringement action. *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.,* 606 F. 3d 612 (9th Cir. 2010). Receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a). *Id.* at 621.  It is well established that so long as applications have been submitted the court has jurisdiction, Kaseberg has standing and the case should proceed.

Here, Kaseberg submitted applications to the Copyright Office for all of the "Jokes at Issue." Three of the five jokes are currently registered. Two are currently pending. As stated in Kaseberg's First Amended Complaint at ¶26, applications are pending with the U.S. Copyright Office.  Prior to the First Amended Complaint being filed, on August 10, 2016, Kaseberg sent an application to the Copyright Office for "text, Text of blog and six (6) jokes posted on December 2, 2014." (PUF 52, 53). This application was for

6

Kaseberg's UAB joke. This application is currently pending.  On September 3, 2015 and

August 10, 2016, Kaseberg  sent applications to the Copyright Office for " Single joke

written and posted on Blog on February 3 regarding Tom Brady" and "text, Text of three

(3) jokes posted on February 3, 2015 at 9:02 a.m." (UF 60) This application was for

Kaseberg's Tom Brady Joke. These applications are currently pending.    Because

Kaseberg has received registrations and has filed applications for the remaining jokes

(UAB and Tom Brady), he has "registered" his works in accordance with the Copyright

Act and has standing.

### B.    An Issue Of Material Fact Exists As To Copyright Infringement

#### 1.    Kaseberg Need Not Present Evidence of Direct Copying

As Nimmer on Copyright discusses:

... it is virtually impossible to offer direct proof of copying, so it is often
impossible for a plaintiff to offer direct evidence that defendant (or the person
who composed defendant's work) actually viewed or had knowledge of
plaintiff's work.   Such viewing will ordinarily have occurred, if at all, in a
private office or home outside the presence of any witnesses available to the
plaintiff.   For this reason, it is clear that even if evidence is unavailable to
demonstrate actual viewing, proof that the defendant had an opportunity to
view (when combined with probative similarity) is sufficient to permit the
trier to conclude that copying as  factual matter has occurred -- in other words,
the factfinder has discretion to reject even the uncontradicted testimony of the
writer of defendant's work that he had never in fact viewed plaintiff's work.
But this result is often reached through the court's reasoning that the
opportunity to view creates an inference of access, which in turn creates an
inference of copying. 4 Nimmer, *supra*, at §13.02[A], 13-16.

#### 2.    Kaseberg Can Establish Access

##### a.    An Issue Of Material Fact Exists As To The Delta And Washington Monument Jokes

Defendants contend that Kaseberg cannot prove the element of access to two of the

five "jokes at issue" because the Defendants purportedly created the jokes prior to

Kaseberg. However, the taping for the Conan show starts at 4:30 p.m. (PUF 33). Kaseberg

published his Delta Airlines joke at 4:14 p.m., before the taping began. (PUF 91). ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████. (PUF 33, 34, 167). █████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████. (PUF 167).

Defendants claim to have written Joke #2 first, but there exists a triable issue of fact as to this issue. Kaseberg wrote his Joke #2 after watching the *Conan* show publish another Delta airlines joke the previous day. (PUF 168). The Conan joke was, "Yesterday, a Delta flight from Cleveland to New York took off with just two passengers on the whole flight two passengers. And get this, they lost their luggage."(PUF 168). Kaseberg had watched the show and thought it was great joke and wanted to try and write a different but equally good joke. (PUF 168). After Kaseberg wrote Joke #2 on his blog, the *Conan* show ended up using Joke #2 notwithstanding that the show had already aired an already good joke the day before. Kaseberg had watched Conan for some time and had never seen *Conan* use premises like that on back to back days, which caused his initial suspicion when he heard the joke he wrote aired. (PUF 168).

Further, after conducting discovery, Defendants produced two emails that purportedly shows Comers wrote the joke at 11:33 a.m., before Kaseberg. However, time stamps for the e-mails do not match. One email reveals Comers wrote his email at 11.33 a.m. and another reveals 11:32 a.m. (PUF 44, 191). Additionally, in the two emails, the 11:33 a.m. email lists another joke submitted after Joke #2 as, "She's fine, but an Ohio State cheerleader was nearly trampled by the football team as they left the field. Someone noticed her when the cheerleader said, "Give me an E, give me an M ... give me a T!". However, in the 11:32 a.m. email, the joke after Joke #2 reads, " She's fine, but an Ohio State cheerleader was nearly trampled by the football team as they left the field. Someone noticed her when". The last portion of the joke was cutoff for no apparent reason. (PUF 44, 191). The two documents that allegedly prove Comers wrote and submitted the jokes

contradict themselves and raise a triable issue of fact. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████" (PUF 22, 44). All of these alleged "coincidences" do not add up and there exists a triable issue of fact as to whether Defendants did in fact write Joke #2 first.

With respect to the Joke #3, Defendants claim that Kaseberg first published his joke on February 17, 2015, but the Defendants aired a joke about the Washington Monument, which had the same concept and punchline as Kaseberg's joke, over a year before. An issue of material fact exists as to whether the video aired by Defendants is the same joke as Kaseberg's. First, Defendants' joke was a video. In the video, O' Brien states, "The east coast is starting to warm up, that's the good news, but it got very cold there for a while, especially in Washington DC. Record low temperatures. Check out this time lapse footage of the cold front hitting the Washington Monument. Incredible." After O'Brien speaks, a time lapse video shows the Washington Monument shrinking over a period of time in cold weather. (PUF 51). Defendants' joke was a video clip. Notwithstanding the fact that the jokes are different in form, the jokes are still different because Kaseberg's joke is based on a news article reporting that the Washington Monument is shorter than previously thought. Defendants' joke is based on the general assertion that it had been cold for quite some time in Washington DC. The setups for the jokes are different because there is no reference to the surveyor report or 10 inches shorter in Defendants joke. There is a triable issue as to whether Conan's team independently created the combination of the surveyor's report combined with the cold weather and shrinkage or was it taken from Kaseberg. Defendants video joke was only a shrinkage reference with cold weather. The pattern of five jokes creates a triable issue as well.

      b.   <u>Kaseberg Can Establish a Triable Issue of Fact as to Access</u>

To prove access, plaintiff must show that the defendants had a "reasonable opportunity or "reasonable possibility" of viewing plaintiff's work prior to the creation

of the infringing work. *Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 482 (9th Cir. 2000); *Baxter v. MCA, Inc.,* 812 F. 2d 421, 423 (9th Cir. 1987). Reasonable access is shown in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to the work (such as through dealings with a publisher or record company), or (2) the plaintiff's work has been widely disseminated. *Three Boys Music Corp.,* 212 F. 3d at 482. However, there is also "strikingly similar" standard which cannot be ignored.

i.    Strikingly Similar

This Court need not even have to analyze the two prongs of access listed above because it is well settled that the "strikingly similar" doctrine applies in the Ninth Circuit. Specifically, in the absence of any proof of access, a copyright plaintiff can make out a case of infringement by showing that the works were "strikingly similar." *Id.* at 485 (internal citations omitted)). This case is cited by Defendants in their own moving papers which they neglected to mention. "What is required is that the similarities in question be so striking as to preclude the possibility that the defendant independently arrived at the same result. In other words, as a matter of logic, the only explanation for the similarities between the two works must be copying rather than... coincidence, independent creation, or prior common source." 4 Nimmer, at § 13.02[B] (citing *Bernal v. Paradigm Talent & Lit. Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)). Here we have 5 of the same jokes in a six-month period when it never happened before.

Here, there exists an issue of material fact as to whether Kaseberg's and Defendants' jokes are so "strikingly similar" as to presume access. ███████

██████████████████████████████████████████████████████████

███████████████████████████████████████. (PUF 138, 139, 142, 143, 148, 149, 154, 155, 165, 166). ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████    ████████████████████████████████████████████

[REDACTED]

Kaseberg's jokes also do not qualify as "coincidence, independent creation, or prior common source." The striking similarity and the number and timing relating to when Kaseberg published his jokes precludes the possibility that the Defendants independently arrived at the same result. Defendants have offered a limited sample size of allegedly similar jokes by others. (SUF 114-121). Kaseberg has objected to the admissibility of these alleged similar jokes. However, if these similar occurrences are found to be admissible, how many of the others came up with 2 of the 5 jokes, 3 of the 5 jokes or all of the 5 jokes? The answer is none. If Kaseberg's jokes were so commonplace, why is that out of the entire online universe, Kaseberg was the only person who came up with all five same jokes as Defendant? [REDACTED]

[REDACTED]

### ii.   Chain of Events

Additionally, an issue of material fact also exists as to whether there was a "chain of events" showing access. Kaseberg's blog is maintained through blogger.com. (PUF 133). [REDACTED]

[REDACTED]. (PUF 171). [REDACTED]

[REDACTED] (PUF 172). Kiley allegedly wrote Joke #1, #3 and #4. [REDACTED]

[REDACTED]. (PUF 35). Well before the lawsuit being filed, Kaseberg followed, Comers, Kiley, O'Brien as well as other writers on the *Conan* staff. (PUF 93, 192). When someone is followed on twitter, an email notification is sent to the account holder of the person following them. Additionally, the person who is being followed has a link in their profile page or home page that will show how many followers they have and who they are. (PUF 93, 192). All of the writers in this case received a notification Kaseberg was following them well before the lawsuit, and the writers easily could have accessed Kaseberg's twitter

and blog simply going to their "followers" link on their homepage.  Kaseberg maintains a twitter account which he has had since March, 2009.  On his twitter page, contains a link to his blog http://thordoggie.blogspot.com/. (PUF 133) ████████████

████████████████████████████████████████████████████████████

████████ (PUF 174). Kaseberg's and Comers' twitter accounts appear together on a public twitter list called "funny" created by an "RB Anthony".   The description of the list states "They make me laugh - usually :-)" (PUF 175).  Kaseberg's and Kutner's twitter accounts appear together on a public twitter list called "humor" created by an "Smack of Ham". (PUF 176). Kaseberg's, Kutner's and Comers' twitter accounts appear together on a public twitter list called " My favstar.fm list" created by an " Wynne McLaughlin". The description of the list states " My favorite tweeters, curated with help from http://favstar.fm" (PUF177).

A list is a curated group of Twitter accounts users create. (PUF 178). When a twitter account holder is added on a public list, the account holder receives a notification that they have been added to the list and have the ability to click on the list. (PUF 178). Josh Comers and Rob Kutner would have received a notification that were added to a list and would have the opportunity to view the list which Kaseberg was also added to by going to their list tab and click "Member of".  (PUF 178) ████████████████

████████████████████████████████████████████████████████████

████ . (PUF 179). ████████████████████████████████████████████

(PUF 180) Kaseberg recalls Comers following him on twitter at some point in the past. (PUF 181). Rick G. Rosner (@dumbassgenius), Elayne Boosler (@ElayneBoosler) and Keith Powell (@KeithPowell) all follow Kaseberg and Kutner on Twitter.  Kutner also follows Rosner, Boosler and Powell.  Thus, they share a common connections on twitter. If either Rosner, Boosler or Powell, re-tweeted any of Kaseberg's tweets, Kaseberg would have shown up on Kutner's home timeline.  (PUF 182). Thus, even if Kunter is not following Kaseberg, if Rosner, Boosler, or Powell "like" any of Kaseberg's tweets, those could also show up on Kutner's home timeline based on twitter's algorithm.  (PUF 186).

Rosner was a writer for Jimmy Kimmel Live!, a contestant on Who Wants to Be a Millionaire, and has been called "The World's Second-Smartest Man". Boosler is a comedian, writer and actress who has been on The Jimmy Fallon Show, David Letterman, The Cosby Show, Night Court, Hollywood Squares, Celebrity Jeopardy. Powell is an actor and writer who has been on 30 Rock, NCIS Los Angeles, About a Boy as well as a number of other shows. (PUF 183). Jocelyn Plums (@FilthyRichmond) and Wendy Liebman (@wendyliebman) follow Comers and Kaseberg. Comers follows them as well. (PUF 184). Thus, they share a common connection on twitter. If either Plums or Liebman re-tweet any of Kaseberg's tweets, Kaseberg would have shown up on Comers' home timeline. Even if Comers is not following Kaseberg, if Plums or Liebman "like" any of Kaseberg's tweets those could also show up on Comers home timeline based on twitters algorithm. (PUF 186). Jocelyn Plums is a twitter account with national notoriety. Wendy Liebman is an actress, writer and comedian who has appeared on Carson, Letterman, Leno, Fallon, Kimmel, Ferguson and Hollywood Squares. (PUF 185). Rick Rosner, Jocelyn Plums, and Wendy Liebman have all either liked or re-tweeted Kaseberg's tweets in the past. (PUF 187).

Clearly, a material issue of fact exists as to whether the writers had a reasonable possibility to access Kaseberg's jokes. A reasonable juror could find that the chain of events started when Comers and Kaseberg were both blogging, ████████ ████████, when Kaseberg followed the writers on twitter, when a common twitter user liked or re-tweeted Kaseberg's tweet, when the writers received a notification that Kaseberg was following them, or when Kaseberg contacted some of the individually named Defendants on Twitter regarding the jokes at issue.

### iii. Widely Disseminated

An issue of material fact also exists as to whether Kaseberg's work is "widely disseminated." The Ninth Circuit has held that the local sale of more than 50,000 yards of fabric to convertors over a four-year period sufficed to create a reasonable possibility

to view the design on the fabric. *Id.* (citing *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F. 3d 841 (9th Cir. 2012)).

Kaseberg has maintained an online blog for over 15 years where he posts jokes. (PUF 133). He has posted 5383 blog posts since February 2012. (PUF 169). Since 2012 has had over 345,000 page views to his blog and has averaged between 3000 to 4000 page views per month. (PUF 170). Since July 2010, 12141 viewers accessed Kaseberg's blog through a link from www.google.com. In that same time period, 12120 accessed Kaseberg's blog through a link from halife.com/daily/laughs.html. halife.com was a website involving comedy that is no longer in existence but a site which had links to Kaseberg's blog. Josh Comers was active on the site halife.com. (PUF 173). Both Kaseberg's twitter page and blog are open to the public and anyone can access the pages with an internet connection. (PUF 133). Kaseberg has tweeted approximately 13,500 times and he currently has over 2000 accounts following him and follows approximately 2000 accounts. (PUF 133). Kaseberg follows and has followers who are also comedians and comedy writers. (PUF 133). Common followers of Kaseberg, Comers, and Kutner have liked or re-tweeted Kaseberg's tweets. (PUF 187). Kaseberg has been published nationally in newspapers and magazines. (PUF 131)

Additionally, missing entirely from Defendants' brief is any discussion regarding the power of social media, especially twitter. Defendants' brief focuses on the fact that Kaseberg allegedly only received a handful of likes for all of the jokes at issue, as well as the fact that Kaseberg's jokes were rarely retweeted. Kaseberg's expert stated in her deposition that she has a twitter account and that even if you have 3 followers or 5 re-tweets 500 to 1,000,000 could have seen your tweet because you can't control who re-tweets or sees your material. (PUF 190). A reasonable juror could find that likes and retweets do not define the standard for a work being "widely disseminated." This Court should consider account for the fact that social media is a broad and overlapping platform which allows for individuals to become interconnected at the touch of a button or click of a mouse. ██████████████████████████████████████████

Kaseberg's material was entirely accessible through twitter and his blog. In essence, Kaseberg and Defendants were all within the same twitter/online universe. Kaseberg's burden is merely to show that any one of them had a reasonable opportunity to access Kaseberg's materials. Comers and Kutner both followed people who followed Kaseberg. (PUF 182, 184). Those common followers liked or re-tweeted Kaseberg. (PUF 187). There is no dispute Kaseberg showed up on Comers and/or Kutner's homepage timeline. (PUF 186).

The burden has been met and a triable issue of fact exists as to access. A reasonable juror could find that Kaseberg's works were widely disseminated and that there is a reasonable possibility that his material was shared and accessed by the writers

3. <u>An Issue Of Material Fact Exists As To Whether The Jokes Are Substantially Similar</u>

Substantially similariry, in the Ninth Circuit applies a two-part test consisting of extrinsic and intrinsic components. *Rice v. Fox Broadcasting Co.,* 330 F. 3d 1170, 1174 (9th Cir. 2002). The extrinsic test involves an objective comparison of the two works. *Id.* The Court must consider "whether the works share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky v. Carey*, 376 F. 3d 841, 845 (9th Cir. 2004). For summary judgment, only the extrinsic test is important. *Kouf v. Walt Disney Pictures & Television*, 16 F. 3d 1042, 1045 (9th Cir. 1994). Because the intrinsic test relies on the subjective judgment of the ordinary person, it must be left to the jury. *Swirsky,* 376 F. 3d, at 845, So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of the ... elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied." *Id.* at 849.

Granting summary judgment on the issue of substantial similarity is highly disfavored. *Narrell v. Freeman*, 872 F.2d 907, 909-10 (9th Cir. 1989). Where reasonable minds could differ on the issue of substantial similarity... summary judgment is improper. *Twentieth Century-Fox Film Corp. v. MCA, Inc.* 715 F.2d 1327, 1329-30 (9th Cir.1983).

Granting summary judgment for defendant is appropriate where works are so dissimilar that a claim of infringement is without merit. *Id.* (citing *Rose v. Connelly*, 38 F. Supp. 52, 55-56 (S.D.N.Y. 1941)). More particularly, when the issue is whether two works are substantially similar, summary judgment is appropriate if "no reasonable juror could find substantial similarity of ideas and expression," viewing the evidence in the light most favorable to the nonmoving party. *Shaw v. Lindheim*, 919 F. 2d 1353, 1355 (9th Cir. 1990).

### a. Substantial Similarity Exists at the Extrinsic Stage

Again, at summary judgment, only the extrinsic test is important. *Kouf v. Walt Disney Pictures & Television*, 16 F. 3d 1042, 1045 (9th Cir. 1994). The extrinsic test is an objective one that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Id.* at 1045 (9th Cir. 1994) On their face one would be hard pressed to deny that all of the jokes "share a similarity of ideas and expression." ████████████████████████████████████████

████████████ PUF 138, 139, 142, 143, 148, 149, 154, 155, 165, 166) ████████████

████████████████████████████████████████████████████████

████████████████████████████████████ So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of the ... elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied." *Swirsky,* 376 F. 3d, at 849. Kaseberg has done so there is no further need for additional analysis under the law.

However, if the Court finds the need to go through the analysis, there is a triable issue of fact that the plot, theme, dialogue, mood, setting, characters, and sequence of events are all the same. In Joke #1, the joke involves the same UAB Football team discontinuing its football program and a professional sports team asking if you can do that. In Joke #2, the joke involves the same two passengers on an otherwise empty plane and the same two passengers then deciding to sit next two each other even though there were plenty of seats, and fighting over an armrest. In Joke #3, the joke involves Tom

Brady deciding to give his truck away that he won as Super Bowl MVP, and the same decision to give it to the coach of the opposing team, Pete Carroll. In Joke #4, the joke involves the same study that the Washington Monument is shorter than reported and the same Washington Monument shrinking as a result of cold weather (a male genitalia joke). In Joke #5, the joke involves cities considering changing street names named after Bruce Jenner to Caitlyn Jenner and then one city actually deciding to change the name from a cul-de-sac to removing the sac. All the jokes have the same specific plot, same theme, same mood, same setting, same pace, same characters and same sequence of events. The works are all similar, the same, and/or identical. Clearly the extrinsic test has been satisfied.

b.   <u>Defendants Have Misconstrued the Extrinsic Test as Applied to the Instant Case</u>

Defendants have attempted to cut and paste single lines out of numerous cases to create a patchwork argument that there should be a finding of no similarity or protection. The cases Defendants have cited do not directly deal with jokes. *Apple Computer* was a software copyright case, *Shaw* involved a television pilot script, *Rice* involved the copyright to a magician type character who appeared in a television series, and *Dr. Suess* involved mainly the copyright to "The Cat in the Hat" and a book "The Cat NOT in the Hat!" The analyses in those cases do not directly apply to the facts of the instant case. What can be gathered through the case law is that the extrinsic test for substantial similarity at least at it relates to literary works is an objective measure of the "articulable similarities between the plot, theme, dialogue, mood, setting, pace, characters and sequence of events." *Rice,* 330 F. 3d at 1174. This has been discussed above and cannot be denied. ███████████████████████

Sorting through all of Defendants citations and purported analysis, Defendants argument is simple. They conveniently argue the jokes should be dissected so no protection is found. Since the premise of each joke is based on a current event or fact there should be no copyright protection to the first portion of the joke. They then go on

17

to argue that the punchlines "rely exclusively on idea" and is not an expression, thus the punchlines are unprotectable elements. They continue by arguing that if the Court finds the punchlines are expressive elements, the punchlines are "ordinary phrases" that are not entitled to copyright protection either. Essentially Defendants argue there should be no copyright protections whatsoever in these types of jokes because neither the premise or punchline is protectable through dissection.

Defendants argument defies the very basic notion of the protection of copyrightable expression. What is amazing is that Defendant Conaco, LLC employs a team of four writers to search for stories, facts or other events each day and to come up with creative, unique and humorous jokes based on those events. One has to assume the writers make a very good living off the work they do, yet what Defendants are suggesting is there should be no copyright protection in their works either. If what Defendant is advancing is true, anyone can intentionally go online copy a monologue joke and change a few words here and there and it would be completely lawful because there is nothing protectable about the premise or punchline. Why have a writing team? ███████████ ████████████████ (PUF 138)

    i. <u>Kaseberg's Works Must be Viewed as Whole, are Fiction and are Entitled to Protection</u>

Kaseberg is not claiming copyright over the setup or facts/news events that start the joke. Nor is he claiming copyright on the punchline by itself. The Jokes Kaseberg created have no meaning without the other. What he is claiming copyright on is his idea that has been expressed in a written medium which was to select and write certain news events and combine that news event with a fictional, creative, unique and humorous take. The fact is, the punchlines are all pure fiction and when combined with the premise, none of what Kaseberg wrote actually took place, which is an entirely new work. In Joke #1, a professional sports team did not say "wait can you do that?" after hearing the UAB news. In Joke #2, the two passengers never sat next to each other and never fought over the armrest. In Joke #3, Tom Brady never gave his Super Bowl truck to Pete Carroll. In

Joke #4, the Washington Monument did not lose 10 inches because of the cold weather. And finally in Joke #5, there is no such thing as a street named cul-de-sac and no street names were changed to remove the "sac".

Kaseberg's position that the combination of ideas that are expressed are protectable is well established in the 9th Circuit. *See Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002). The Metcalf court held that the combination of unprotectable elements are entitled to protection and meet the extrinsic test. *Id.* at 1074. The plaintiff in *Metcalf* correctly argued that copyright law protects a writer's expression of ideas, but not the ideas themselves. *Id.* at 1074 (citing *Kouf*, 16 F.3d at 1045). "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Id.* (citing *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.1985)). Nor does copyright law protect "scenes a faire," or scenes that flow naturally from unprotectable basic plot premises. *Id.* (citing *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983)). Instead, protectable expression includes the specific details of an author's rendering of ideas, or "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* (citing Berkic, 761 F.2d at 1293.)

In *Metcalf*, the Ninth Circuit acknowledged that the similarities were not protectable when considered individually. However, the presence of so generic similarities and the common patterns in which they arise do help the Plaintiff satisfy the extrinsic test." *Id.* The particular sequence in which an author strings unprotectable elements can itself be a protectable element. *Id.* Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection. A common "pattern [that] is sufficiently concrete ... warrant[s] a finding of substantial similarity." *Id.* (citing *Shaw*, 919 F.2d at 1363.)

This is exactly Kaseberg's position in the instant case. The protectable element is not the pieces, but the joke as a whole. *Metcalf* held that neither "*Apple Computer, Inc. v. Microsoft Corp...* nor *Cavalier v. Random House, Inc...* hold otherwise; nor could they, as Shaw was the law of the circuit when they were decided. In Apple Computer, we held

that the basic ideas of a desktop metaphor in a computer's operating system—windows on the computer screen, icons representing familiar office objects, drop-down menus and objects that open and close—were not individually protectable.... However, consistent with Shaw, we also held that infringement can "be based on original selection and arrangement of unprotected elements." *Id.*

Under *Metcalf*, Kaseberg's works are protectable and should and not be dissected to find no protectable expression. If poetry is protectable, which it is, surely jokes should be as well.

c.    The Intrinsic Test For Substantially Similar Or Virtually Identical Is One For The Jury

The "standard for infringement-substantially similar or virtually identical-***determined*** at the "extrinsic" stage is applied at the "intrinsic" stage. There we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)." *Mattel, Inc. v. MGA Entertainment, Inc.* 616 F. 3d 904, 914 (9th Cir. 2010) (citing *Apple Computer*, 35 F. 3d at 1443) (emphasis added).

Now that the extrinsic test has been satisfied, the Court must determine which of the substantially similar or virtually identical tests will be applied at the intrinsic stage **for the jury**. Kaseberg is aware of no case law, cited by Defendants, ruling that virtually identical is applied at the extrinsic stage. The prevailing Ninth Circuit cases which have been discusdded decided on summary judgment have been under an extrinsic similarity test leaving the intrinsic substantially similar or virtually identical standard to the jury. To reiterate, Defendants argument is that Kaseberg's works are not entitled to protection because the premise and the punchline by themselves are not entitled to protection. The *Metcalf* case has already dismissed this notion holding that the combination of unprotectable elements are entitled to protection and that is precisely what Kaseberg is advancing. There is no dispute that creative works often draw from facts or things in the public domain. However, if a Plaintiff has modified a work that is in the public and the

defendant copies the work, liability may ensue. *Tufenkien Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 136 (2nd Cir. 2003).

The only real authority Defendants have cited on when and how a virtually identical standard should be applied is *Mattel, Inc*.  In *Mattel, Inc*. the court wrote, "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe." *See Mattel, Inc.,* 616 F. 3d at 913-914 (9th Cir. 2010) (internal citations omitted)).  This proposition has been referred to as the merger doctrine. When applying the merger doctrine, the Ninth Circuit has focused its attention on pictorial, graphic, and sculptural works. It has particularly found that there are only so many ways depict a jellyfish in a glass container, or to depict an image of a Skyy vodka bottle. *See generally Satava v. Lowry*, 323 F. 3d 805, 812 (9th Cir. 2003); *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F. 3d 763, 766 (9th Cir. 2003).

Kaseberg's jokes do not follow the same pattern as these pictorial, graphic, and sculptural works. If an audience knew exactly what was going to be said after a particular set-up or premise, there would be nothing funny about the jokes. Kaseberg's expert will opine, "after reviewing the jokes at issue and the premises for each of the jokes, it is my opinion that for each of the premises, there are numerous and different ways to write punch lines for each of the jokes at issue. None of the premises for the jokes in this case would result in only a limited number of ways to write a humorous punch line based on the premises." (PUF 189). Supporting this opinion is the fact that Kaseberg was able to come up with a different joke than Defendants' with respect to the Delta premise. The day before Kaseberg's Delta joke was published, Defendants aired a joke based on that premise with the punchline claiming that the passengers still lost their luggage. (PUF 168)

As far as the thin argument, Defendants have conceded that the premises incorporated into Kaseberg's jokes are part of Kaseberg's "protected material" based on the fact that Defendants made the effort to painstakingly compare the words of premises for the "jokes at issue" in their brief (Defendant SJM at pg 15-20). Indeed, Defendants did not limit their comparison to solely the punchlines of the jokes. However, Defendants nonetheless ask this Court to apply a "virtually identical" standard to the jokes at issue in part because the premises are based on news stories, and essentially are facts. ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ No plagiarist can excuse the wrong by showing how much of his work he did not pirate. *See Shaw*, 919 F. 2d at 1362. "If substantial similarity is found, the defendant will not be immunized from liability by reason of the addition in his work of different characters or additional and varied incidents, nor generally by reason of his work proving more attractive or saleable than the plaintiff's." 4 Nimmer at § 13.03[B][1][a] (citations omitted).

The Defendants are quick to point out that the Defendants' jokes as aired on the Conan show have subtle differences to Kaseberg's jokes. However, the fact that Defendants have ad-libbed words in Defendant O'Brien's presentation of the jokes on the show are immaterial. ████████████████████████████████████████ ███████████████████████████████████████ (PUF 42, 47, 54, 61, 66). Conan later ad-libbed them on the show. ██████████████████████ ████████████████████████████████████████████████████████████████████ (PUF 138, 142, 148, 154, 165). These submissions should also be considered in the Court's analysis. In conclusion, any and all evidence from Defendants' brief discussing the purported additions which Defendant O'Brien makes to the jokes do not change the fact that the jokes are the same.

Kaseberg's original expression is combining what he found to be factual events and creating a new expression in the form of a fictional event that never happened, to create

22

a humorous joke. There are numerous ways to write a joke of each of the premises as Kaseberg's expert has opined. The virtual identical standard should not apply in the instant case under the standard set forth in *Mattel, Inc.* Further, if the Court finds that virtually identical is the standard, that test is applied at the intrinsic stage which is reserved for the jury. It would be error for the district judge to engage in intrinsic analysis on a motion for summary judgment. *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1370. (Fed. Cir. 2006).

## C. Independent Creation Is An Issue For The Jury

Defendants cite one case for the proposition that this Court can decide the issue of independent creation at the summary judgment stage. However, that case was not decided on summary judgment. *See Granite Music Corporation v. United Artists Corporation*, 532 F. 2d 718 (9th Cir. 1976). In fact, it would appear that courts should caution against deciding the issue of independent creation at summary judgment. Nimmer states, "No matter how credible such a claim is, and even absent any contrary evidence, a court should not grant summary judgment on that (independent creation) basis." 3 Nimmer, at § 12.10[B][2][b]. Nimmer goes on to state, "without necessarily ascribing willful perjury to defendants, if a plaintiff shows access plus probative similarity, and the only evidence of independent creation is the self-interested testimony of those on the defense side, then summary judgment for defendant is inappropriate." 3 Nimmer, at § 12.11[D][1] at fn. 99.5. A recent Central District of California case has adopted Nimmer's position in holding that "to avoid making an inappropriate credibility determination at summary judgment, and in accordance with . . . Nimmer, the Court declines to grant summary judgment for the defendants based on evidence of independent creation." *Miller v. Miramax Film Corp.*, 2001 U.S. Dist. LEXIS 25967, at *31-32 (C.D. Cal. 2001).

To the extent that Defendants' argument is based on the contention that they nor and Conaco writers have never visited Kaseberg's website or Twitter page, and that they did not copy his jokes, this information qualifies as "self-interested testimony," permitting this Court to deny summary judgment on these grounds entirely.

23

To the extent that Defendants' argument is based on the contention that they created some of their works prior to Kaseberg creating his, this is also "self-interested testimony" and Kaseberg submits that there is a triable issue of fact as to this issue as already discussed above.  To the extent that Defendants' argument is based on the contention that "parallel thought" exists in the joke writing industry, Kaseberg submits that there is also a triable issue of fact as to this issue.  Kaseberg's probability expert has already prepared a report on the improbability of independent creation. (PUF 188). He states:

> The clustering of the four "overlapped" jokes published by the Plaintiff in a relatively short period time surrounded by stretches where there are no "overlapped" jokes makes their having been independently conceived by the writers for Conan such a probabilistically unlikely event; I estimate the probability of there having been no more than one "overlapped" joke in the combined 41 preceding and 41 following (which is the case) to be on the order of 1/3 of 1%.  Even after taking into account the existence of one more "overlapped" joke half a year later, it still is unlikely that the writers were independently developing the same jokes as the Plaintiff; if the jokes had been written independently, the estimated probability of seeing no "overlapped" jokes in the period May 7, 2014 through November 20, 2014 (which is the case) is still less than 3/4% of 1%.

With respect to the alleged similar posts, none of the posts are from people who allegedly posted other similar jokes. (PUF 114-121). Furthermore, as discussed above, Kaseberg has objected to the admissibility of these documents. Kaseberg was the only one who was "5 for 5" in hitting on the same jokes as Defendant.  Assuming that these jokes lend themselves to parallel thought, it is clear that parallel thought is merely a factor that a jury must weigh in determining whether or not the defense of independent creation is valid.

## D.     An Issue Of Material Fact Exists As To Willfulness

The parties agree on the standards for willfulness set forth in 17 U.S.C 504(c)(2) and *Washington Shoe Co.* Plaintiff must show either (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of

"reckless disregard for, or willful blindness to, the copyright holder's rights." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.,* 704 F. 3d 668, 674 (9th Cir. 2012)

Defendants claim that Kaseberg has no evidence establishing that Defendants were aware of Kaseberg's jokes prior to O'Brien's performances. This is not true. Defendants failed to mention the tweets which Kaseberg sent to Sweeney, after the jokes at issue were aired, as well as Kaseberg's discussion with Mike Sweeney prior to the fourth and fifth joke airing as well as the letter sent prior to Joke#5. (PUF 144, 145, 150, 151, 156, 158, 159). ████████████████████████████████████████████████████ (PUF 151). Defendants were on notice of Kaseberg's potential infringement claim as early as January 16, 2015. Because of this, summary judgment is improper because there is evidence that Defendants knew about Kaseberg at least after Joke #2.

Kaseberg was getting yelled at and was ridiculed, dismissed and treated with scorn when he spoke to Sweeney. (PUF 157). ██████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████ (PUF 161). If a reasonable juror could find that Kaseberg's material was accessed by Defendants prior to Kaseberg publishing any of his material, a reasonable juror most certainly could also find that the Defendants willfully infringed Kaseberg's work after learning of the accusations and after Sweeney spoke to Kaseberg and notified his writers. A triable issue of fact exists as to the willful conduct after Defendants were placed on notice of Kaseberg's allegations.

## V.    CONCLUSION

For the foregoing reasons, Kaseberg respectfully asks that this Court deny Defendants' Motion for Summary Judgment and/or Summary Adjudication in its entirety.

Date: February 24, 2017

By:____/s/ Jayson M. Lorenzo_____

JAYSON M. LORENZO
Attorney for Plaintiff
ROBERT ALEXANDER KASEBERG