UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ALEXANDER KASEBERG,<br><br>         Plaintiff,<br><br>v.<br><br>CONACO, LLC; TURNER BROADCASTING SYSTEM; TIME WARNER, INC.; CONAN O'BRIEN; JEFF ROSS; MIKE SWEENEY; DOES 1–10, inclusive,<br><br>         Defendants. | Case No.: 15-CV-1637 JLS (DHB)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND (2) DISMISSING DEFENDANTS' NINTH AND TENTH AFFIRMATIVE DEFENSES**<br><br>(ECF Nos. 165, 167) |

   Presently before the Court is Plaintiff Robert Alexander Kaseberg's Motion for Judgment on the Pleadings and/or Partial Summary Judgment as to Defendants' Fraud on the Copyright Office and Unclean Hands Affirmative Defenses ("Mot.," ECF No. 167). Also before the Court are Defendants' Opposition to ("Opp'n," ECF No. 169) and Plaintiff's Reply in Support of ("Reply," ECF No. 171) the Motion. The Court vacated oral argument on the Motion and took the matter under submission without oral argument. ECF No. 170. After considering the Parties' arguments and the law, the Court **GRANTS** Plaintiff's Motion.

/ / /

# BACKGROUND

On July 22, 2015, Plaintiff filed a Complaint against Defendants for copyright infringement, alleging that Defendants featured on the *Conan* show jokes authored by Plaintiff without Plaintiff's consent. *See generally* ECF No. 1. Plaintiff alleged that "copyright registration [wa]s being sought" for each of the jokes at issue. *Id.* ¶ 26. The operative First Amended Complaint, filed October 3, 2016, *see generally* ECF No. 58, contains an identical allegation. *See id.* ¶ 29.

Only one of the five jokes in Plaintiff's Complaint is at issue for purposes of this Motion: the "Tom Brady joke." Mr. Lorenzo filed an application on Plaintiff's behalf to register the Tom Brady joke in September 2015 (the "September 2015 Application").[1] Am. Ans., ECF No. 165, ¶ 49; *see also* Request for Judicial Notice in Support of Motion ("RJN"), ECF No. 167-3, Ex D.[2]

On March 24, 2016, Defendant Conaco served discovery requests on Plaintiff, requesting all documents relating to Plaintiff's efforts to register the jokes and "all facts relating to YOUR ownership of the copyrights related to the JOKES AT ISSUE." Am. Ans. ¶¶ 52–53. Although Plaintiff agreed to produce all documents relating to his registration efforts, he did not produce registration certificates for the Tom Brady joke. *Id.* ¶ 52. Further, Plaintiff's interrogatory response, signed by Mr. Lorenzo, represented that Plaintiff "has registered copyrights for the jokes created." *Id.* ¶ 53.

---

[1] Although the public catalog provides a date of September 11, 2015, *see* RJN Ex. C, the parties refer to a September 3, 2015 application. *See, e.g.*, Mot. at 13; Opp'n at 9. The precise date of the application is not material to the determination of this Motion.

[2] The Court may take judicial notice of the printouts from the copyright catalog provided by Plaintiff. *See, e.g.*, *Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003), *as amended on denial of reh'g* (Mar. 9, 2004) ("[A] copyright registration . . . is the sort as to which judicial notice is appropriate.") (citing Fed. R. Evid. 201(b)(2)); *see also Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 808 (7th Cir. 2009) (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)). The Court may consider matters subject to judicial notice without converting the motion into one for summary adjudication. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

The Office initially refused registration for the September 2015 Application on July 20, 2016, stating that there was not the requisite minimum amount of original authorship. *Id.* ¶ 49; *see also* Declaration of Jayson M. Lorenzo in Support of Plaintiff's Motion ("Lorenzo Decl."), ECF No. 167-4, ¶ 3 & Ex. 2.[3] Shortly thereafter, on August 10, 2016, Mr. Lorenzo filed a second application on Plaintiff's behalf, this time seeking registration of multiple works published on February 2, 2015, including the previously rejected Tom Brady joke (the "August 2016 Application"). Am. Ans. ¶ 50; *see also* RJN Ex. C. Mr. Lorenzo did not disclose to the Office the July 20, 2016 refusal of the Tom Brady joke. Am. Ans. ¶ 50; *see also* Plaintiff's Response to Defendants' Material Facts in Opposition to Plaintiff's Motion ("Pl.'s Resp."), ECF No. 171-2, ¶ 8.

On October 19, 2016, Mr. Lorenzo filed a First Request for Reconsideration of the July 20, 2016 refusal for the September 2015 Application with the Office, which again refused registration on the basis of originality in March 2017. Am. Ans. ¶ 51; *see also* Lorenzo Decl. Ex. 2.

On February 3, 2017, Defendants filed a motion for summary judgment, partial summary judgment, or summary adjudication. Am. Ans. ¶ 55; *see also* ECF No. 70. In their motion, Defendants argued, among other things, that Plaintiff "failed to produce any evidence proving that he registered the Tom Brady" joke and that Plaintiff's "monologue-style jokes are . . . only entitled to thin copyright protection." *See* ECF No. 70-1 at 8–9, 13–15; *see also* Am. Ans. ¶ 55.

Plaintiff's opposition, filed February 24, 2017, appended copies of the September 2015 and August 2016 Applications. *See* ECF No. 97-2 Ex. 8; *see also* Am.

---

[3] In addition to the pleadings and matters of judicial notice, the Court also may consider documents incorporated by reference in the pleadings without converting the Motion into one for summary adjudication. *See Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 668 n.2 (9th Cir. 2018). A document is incorporated by reference if its "authenticity is not contested and the complaint relies on" it. *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 764 (C.D. Cal. 2015) (citing *Lee*, 250 F.3d at 688). The Court concludes that it properly may consider Exhibits 2 and 3 to the Lorenzo Declaration because their authenticity is not contested and they are integral to Defendants' ninth and tenth affirmative defenses.

Ans. ¶ 56. The registrations for the Tom Brady joke were not produced to Defendants until after Defendants had filed their motion for summary judgment, Am. Ans. ¶ 56; *see also* Pl.'s Resp. ¶ 9, and the correspondence with the Office was not produced until May 2017. Am. Ans. ¶ 56; *see also* Pl.'s Resp. ¶ 10. The Court therefore ordered the parties to submit supplemental briefing as to whether Plaintiff's failure timely to disclose the applications should be outcome-determinative. Am. Ans. ¶ 57; *see also* ECF Nos. 122, 126, 127.

On May 12, 2017, the Court granted in part and denied in part Defendants' motion for summary judgment. Am. Ans. ¶ 58; *see also* ECF No. 131. As to the registrations, the Court determined that Plaintiff's failure timely to disclose them to Defendants should not be outcome-determinative because "reopening discovery and permitting a late-filed dispositive motion—if warranted—sufficiently neutralizes any potential prejudice Defendants may have suffered." ECF No. 131 at 8–10. As to "the amount of protection Plaintiff's works should be afforded," *id.* at 18, the Court wrote that, "[i]n the present case, there is little doubt that the jokes at issue merit copyright protection." *Id.* at 21 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903)). Ultimately, however, the Court "conclude[d] that Plaintiff's jokes are entitled to only 'thin' copyright protection." *Id.*

On May 30, 2017, Mr. Lorenzo filed a Second Request for Reconsideration of the September 2015 Application, noting that "[t]he basis for this second reconsideration is that the Court ruled at Summary Judgment on May 9, 2017, that 'there is little doubt that the jokes at issue merit copyright protection.'" Am. Ans. ¶ 60; *see also* Lorenzo Decl. Ex. 2 (quoting ECF No. 131 at 21:7–13). He concluded the letter by noting that, "[i]n light of the Court's that [*sic*] [his] client's material has met the originality requirements for copyright protection, and the previous joke registrations, [his] client respectfully requests that the work . . . be allowed to register." *Id.* A full copy of the Court's May 12, 2017 Order was attached as Exhibit A to the letter. *See* Lorenzo Decl. Ex. 2.

The Office registered the August 2016 Application—including the Tom Brady joke—in June 2017. Am. Ans. ¶ 62. As for the September 2015 Application, by letter

dated July 17, 2017, the Review Board of the Office (the "Board") found on *de novo* review that the Tom Brady joke "exhibit[ed] copyrightable authorship and thus may be registered." Lorenzo Decl. Ex. 3; *see also* Am. Ans. ¶ 63. The letter explained that "[t]he Board base[d] its finding on the 'minimal degree of creativity' required by the U.S. Supreme Court in *Feist*," and that "[c]ourts and the Copyright Office both have found copyright protection for jokes when the jokes are sufficiently creative." Lorenzo Decl. Ex. 3 (citing *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995)). The Board "caution[ed] that . . . the copyright in the Work is 'thin,'" and "note[d] its decision is consistent with a decision in the Southern District of California, finding that this work merits thin copyright protection." *Id.* (citing ECF No. 131 at 21).

The letter also addressed the August 2016 Application, explaining that, "[b]ecause previously registered material, including material that has been submitted for registration but has not been registered yet, is unclaimable in subsequent registrations, the registration for Three Jokes Work must be corrected to exclude the content covered in the registration for" the Tom Brady joke. *Id.*; *see also* Am. Ans. ¶ 64. The letter noted that on July 5, 2017, John R. Riley, an Attorney-Advisor with the Office, had contacted Mr. Lorenzo and that Mr. Lorenzo "agreed that, if the Board granted registration of [the Tom Brady joke], the registration record for Three Jokes Work would need to be corrected to exclude the text comprising the single [Tom Brady] joke." Lorenzo Decl. Ex. 3.

On November 11, 2015, Defendants filed a motion for leave to file an amended answer to Plaintiff's First Amended Complaint "to include the affirmative defenses of (1) fraud on the Copyright Office and (2) unclean hands, in light of Plaintiff['s] . . . and his counsel's misconduct before the Copyright Office and this Court." ECF No. 154-1 at 1. The Court granted the motion on April 13, 2018, *see generally* ECF No. 164, finding that justice required granting the motion and that Plaintiff could file a "dispositive motion regarding the affirmative defenses, if Plaintiff deems one is appropriate." *Id.* at 6.

Defendants filed their amended answer on April 18, 2018, *see generally* ECF No. 165, adding a Ninth Affirmative Defense for Fraud on the Copyright Office, *see id.* ¶¶ 45–

68, and a Tenth Affirmative Defense for Unclean Hands. *See id.* ¶¶ 69–78. The instant Motion followed on May 9, 2018. *See generally* ECF No. 167.

## LEGAL STANDARD

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

The Federal Rules of Civil Procedure are generally liberal with respect to pleading, instructing courts that "[p]leadings must be construed so as to do justice." Federal Rule of Civil Procedure 8(e); *see also Mut. Creamery Ins. Co. v. Iowa Nat. Mut. Ins. Co.*, 427 F.2d 504, 507–08 (8th Cir. 1970) ("It is settled law that pleadings must be construed liberally in order to prevent errors in draftsmanship or the like from barring justice to litigants. Such pleadings must be construed favorably to the pleader and judged by substance rather than form."); *Lomartira v. Am. Auto. Ins. Co.*, 245 F. Supp. 124, 129 (D. Conn. 1965), *aff'd* 371 F.2d 550 (2d Cir. 1967) ("[C]ases should be decided upon their merits, rather than upon technical deficiencies in the pleadings."). Further, the Court observes "the 'strong policy favoring a trial on the merits.'" *See Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1423 (Fed. Cir. 1997).

## ANALYSIS

Plaintiff moves for judgment on the pleadings as to Defendants' ninth affirmative defense of fraud on the Copyright Office and tenth affirmative defense of unclean hands.

## I. Ninth Affirmative Defense: Fraud on the Copyright Office

"[N]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made." 17 U.S.C. § 411(a) ("Section 411"); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (a copyright holder must register its copyright in a work with the United States Copyright Office before filing suit for infringement). "A certificate of registration satisfies the requirements of [Section 411(a),] regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and [¶] (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. §§ 411(b)(1)(A) & (B).[4] "As with all allegations of fraud, claims of fraud on the Copyright Office must be pled with particularity pursuant to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 558 (D. Md. 2013).

Defendants have alleged that Plaintiff knowingly committed fraud on the copyright office through the following acts:

> a. [Plaintiff] failed to disclose to the Copyright Office the July 20, 2016 rejection of the [September 2015 A]pplication with the [August 2016 Application];
>
> b. [Plaintiff] failed to disclose to the Copyright Office the March 23, 2017 second refusal of the [September 2015 Application] until after Defendants informed [Plaintiff]'s counsel of their intent to assert a Fraud on the Copyright

---

[4] The Court notes that, "[i]n any case in which inaccurate information described under [Sections 411(b)(1)(A) & (B)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). But "[b]efore asking the Register whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (quoting Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010). Consequently, should the Court determine that there is no misstatement of fact, it need not refer the issues of materiality or reliance to the Register.

|   |   |
|---|---|
|   | Office affirmative defense because of this material omission; . . . |
| c. | [Plaintiff] failed to disclose to the Copyright Office, at any point, the prior publication of the Tom Brady Joke on Twitter before its subsequent publication with two other jokes on [Plaintiff]'s blog claimed on the [August 2016 Application]; and |
| d. | [Plaintiff] mischaracterized the holding in the Court's May 12, 2017 summary judgment order in correspondence to the Copyright Office, omitted key facts and details which led the Review Board to issue the registration. |

Am. Ans. ¶ 65; *see also id.* ¶ 66.

Plaintiff argues that he is entitled to judgment on the pleadings or, alternatively, partial summary judgment because (1) his correspondence with the Office was not "information . . . included on the application for copyright registration" as required under Section 411(b)," *see* Mot. at 6–7; (2) he did not give "inaccurate information" to the Office or intend to defraud the Office because the Court's May 12, 2017 Order was attached to the second reconsideration letter, *see id.* at 7–8, and the copyrightability of the Tom Brady joke was an issue adjudicated by the Court, *see id.* at 8–11; and (3) any alleged inaccuracies concerning the August 2016 Application are "irrelevant" because the registration that issued for the August 2016 Application "no longer contains any Tom Brady information."[5] *Id.* at 12–14. The Court addresses each of Plaintiff's arguments in turn.

### A.   *Inaccuracies in Subsequent Correspondence*

Plaintiff first argues that, although "it is [not] appropriate to commit fraud during a reconsideration or appeal, . . . the law [of the defense of fraud on the Copyright Office is such] that [the alleged inaccuracies] must be on the application." Reply at 4. Plaintiff

---

[5] Plaintiff also argues that any alleged inaccuracies in the September 2015 application were not material because it is clear from the Board's letter that it had read the Order and "nowhere d[id it] state [it was] 'relying on' or 'following' . . . the Court's decision." *See* Mot. at 11–12. This Court cannot resolve the issue of the materiality of the alleged inaccuracies because that is an issue for the Register. *See* 17 U.S.C. § 411(b)(2); *see also supra* note 4.

purports to base this argument on the plain language of section 411(b)(1)(A), which provides that "[a] certificate of registration satisfies the requirements of this section and section 412 regardless of whether the certificate contains any inaccurate information, unless . . . the inaccurate information **was included on the application for copyright registration with knowledge that it was inaccurate**." *See, e.g.*, Mot. at 4–5 (quoting 17 U.S.C. § 411(b)(1)(A)) (emphasis in original). Plaintiff claims that this language would necessarily exclude "arguments made in a reconsideration/appeal related to a valid copyright application that contains no inaccuracies or indicia of fraud." *Id.* at 5.

The Court is not persuaded that fraud on the Copyright Office encompasses only statements contained in the application form itself, and not those contained in subsequent registration materials, including requests for reconsideration and other correspondence with the Office. Section 409 of the Copyright Act specifies that "[t]he application for copyright registration . . . shall include . . . any other information regarded by the Register of Copyrights as bearing upon . . . the existence, ownership, or duration of the copyright." 17 U.S.C. § 409(10). Correspondence with the Register seeking reconsideration of a refusal of registration would appear to fit within the plain language of this definition. As explained in the Code of Federal Regulations, "[a] request for reconsideration must include the reasons the applicant believes registration was improperly refused, including any legal arguments in support of those reasons and any supplementary information." 37 C.F.R. §§ 202.5(b)(1), (c)(1). Importantly, the Office (in the case of a first reconsideration) or the Board (in the case of a second) "*will base its decision on the applicant's written submissions*." *Id.* (emphasis added). A request for reconsideration is therefore "other information regarded by the Register of Copyrights as bearing upon . . . the existence . . . of the copyright." *See* 17 U.S.C. § 409(10).

This conclusion is bolstered by the statutory scheme for the registration process. The Register issues a registration only "[w]hen, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements

of this title have been met." 17 U.S.C. § 410(a). "This examination process often involves a dialogue between the Copyright Office and the applicant." Brief for the United States as *Amicus Curiae*, *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571, 2018 WL 2264108, at *3 (U.S. May 16, 2018). "For example, an examiner may 'discover[] that the applicant failed to provide sufficient information in a particular field or space of the application or elsewhere in the registration materials, or [that] the applicant otherwise failed to meet the registration requirements.'" *Id.* (quoting *Compendium* § 605.3(B)). "In the course of such correspondence, an owner can clarify the scope of his application or may withdraw or otherwise abandon his claim." *Id.* (citing *Compendium* §§ 605.3(B), 605.7, 605.9).

Such a conclusion is also borne out by the legislative history. According to *Nimmer*, "[t]he legislative history for the PRO IP Act explains that the amendment aims to close the loophole whereby 'intellectual property thieves' argue 'that a mistake *in the registration documents*, such as checking the wrong box on the registration form, renders a registration invalid and thus forecloses the availability of statutory damages.'" 2 Nimmer on Copyright § 7.20 (2018). It would appear that Congress intended fraud on the Copyright Office to encompass more than just the application form itself, but also the additional registration materials. *See, e.g.*, Copyright Registration Practice § 4:25 (2018) (explaining that "the application, the deposit copy(ies), the filing fee, all other material that has been submitted to the Office, and all communications between the applicant and the Office relating to the registration of the claim . . . are collectively known as the 'registration materials'") (footnote omitted).

Further, to conclude that the reconsideration requests were not part of the "application" for registration for purposes of fraud on the Copyright Office would subvert the policies underlying the defense. As Defendants note, *see* Opp'n at 13 (citing 2 Howard B. Abrams, Law of Copyright § 16:11 (2017); *Campinha-Bacote v. Rearden*, No. 3:10-CV-00139-JDR, 2011 WL 1343343, at *3 (D. Alaska Apr. 8, 2011)), one of the justifications of the fraud on the Copyright Office defense is that "there is a duty of candor

when communicating with the Copyright Office." Another is that "the official public record of claims to copyright is full and accurate." Opp'n at 13 (citing U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 602.1 (3d ed. 2017)). Allowing an applicant to lie with impunity in subsequent registration materials so long as she is candid in the application form itself would defeat these policies and eviscerate the defense.

Finally, Plaintiff's cases do not stand for the proposition that "a misstatement [must] be made in the application for registration." *See* Reply at 3. Plaintiff cannot extrapolate from cases in which the defense was predicated on misstatements made in the application form that the defense can *only* be predicated on misstatement made in the application form. *See, e.g.*, Mot. at 5 ("Plaintiff has been unable to locate any authority supporting Defendants['] claim that there can be fraud on the copyright office related to argument made in a reconsideration/appeal."). The Court therefore concludes that Plaintiff is not entitled to judgment on the pleadings on the ground that the alleged inaccuracies were communicated to the Office outside of the application form. *See, e.g.*, *SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc.*, No. CV-15-01856-PHX-BSB, 2017 WL 6420464, at *12 (D. Ariz. June 9, 2017) (alleged inaccuracies in email and affidavit sent to Office after submitting application), *reconsideration denied*, 2017 WL 6415370 (D. Ariz. July 11, 2017).

### B. *Inaccuracies Concerning the September 2015 Application*

Having concluded that Defendants' defense may be predicated upon alleged inaccuracies in the reconsideration letters, *see supra* Section I.A, the Court turns to the alleged inaccuracies concerning the September 2015 Application. Defendants' allegations are predicated on Plaintiff's "mischaracteriz[ation of] the holding in the Court's May 12, 2017 summary judgment order in correspondence to the Copyright Office, [and] omi[ssion of] key facts and details which led the Review Board to issue the registration." Am. Ans. ¶ 65(d). In particular, Defendants allege that, in his second reconsideration request, Plaintiff "falsely stat[ed] that '[t]he basis for this second reconsideration is that the Court ruled at Summary Judgment on May 9, 2017, that "there is little doubt that the jokes at

issue merit copyright protection,'" and that, "[i]n light of the Court's [sic] that my client's material has met the originality requirement for copyright protection, and the previous joke registrations, my client respectfully requests that the work listed above be allowed to register," *id.* ¶ 60, whereas "the Court's summary judgment order made no such determination." *Id.*

The issue therefore is whether the Court "ruled" that the Tom Brady joke merited copyright protection, as Plaintiff claims and represented to the Office, or whether these statements were "dicta," as Defendants contend, rendering Plaintiff's representation inaccurate. Some would say that "no satisfactory definition [for 'holding'] has yet to emerge." Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 958 (2005). Messrs. Abramowicz and Stearns suggest that "[a] holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a proposition stated in a case counts as dicta." *Id.* at 1065; *see also* Opp'n at 6.

Ultimately, the Court agrees with Plaintiff: "There can be no [ruling as to] 'thin' or 'broad' protection . . . unless [the Court first] reach[es] the threshold issue of whether the material merits copyright protection." Reply at 10. Here, the level of copyright protection to which Plaintiff's jokes are entitled was clearly before the Court, with Defendants arguing in their motion for summary judgment that, "to the extent that Kaseberg's jokes are entitled to any copyright protection, such protection is 'thin.'" ECF No. 70-1 at 15. The Court agreed with Defendants, "conclud[ing] that Plaintiff's joke are entitled to only 'thin' copyright protection." ECF No. 131 at 21. A necessary intermediate conclusion was that "the jokes at issue merit copyright protection." *See id.* (citing *Feist*, 499 U.S. at 345; *Bleistein*, 188 U.S. at 251). Implied in this finding, and in the parenthetical to the citation to *Feist*, was the conclusion that the jokes met the originality requirements for copyrightability.

Consequently, Plaintiff's counsel did not mischaracterize dicta in the Court's May 12, 2017 Order as a holding or ruling. Could Plaintiff's counsel have been more

forthright with the Office by clarifying in his letter that the Court concluded that the jokes were entitled only to thin protection? Certainly. Should Plaintiff's counsel have included that in his letter? Perhaps.

Even if omission of the Court's ultimate conclusion that the jokes were entitled only to thin copyright protection were misleading, however, the Court would have to conclude that there was no intent to defraud here. It is undisputed that Plaintiff's counsel attached a copy of the Court's full Order to the letter to the Office. *See* Lorenzo Decl. Ex. 2, ECF No. 167-4 at 10–51. Had Plaintiff been attempting to pull a fast one on the Office by misrepresenting the Court's Order, he would not have provided the Office with a means of verifying that deception. Defendants' affirmative defense for Fraud on the Copyright Office therefore fails to the extent it is predicated upon the alleged inaccuracies concerning the September 2015 Application.

### C. *Inaccuracies Concerning the August 2016 Application*

Regarding the August 2016 Application, Defendants claim that Plaintiff failed to disclose: (1) the July 20, 2016 rejection of the September 2015 Application; (2) the March 23, 2017 second refusal of the September 2015 Application; or (3) the prior publication of the Tom Brady joke on Twitter. *See* Am. Ans. ¶ 65(a)–(c).

Plaintiff counters that the registration that issued on the August 2016 Application "no longer contains any Tom Brady information," and therefore Defendants "are attempting to invalidate and/or render unenforceable a registration that has nothing to do with this case." Mot. at 13. "Further, any allegation of intent to defraud related to this application has no merit" because "[t]here is no dispute that Plaintiff's counsel spoke to Ted Hirakawa of the Copyright Office in August 2015, [at which time Plaintiff's counsel] was advised a single application and collective work application could be submitted for the same joke." *Id.* (citing Lorenzo Decl. ¶ 7). And "on April 21, 2017, . . . Plaintiff sent a letter to the copyright office advising the Copyright Office of the pending lawsuit, the application history of the Tom Brady joke, as well as the collective work application filed on August 10, 2016." *Id.* (citing Lorenzo Decl. ¶ 8 & Ex. 6).

In their Opposition, Defendants do not argue that this conduct amounts to fraud on the Copyright Office, but rather that these "other instances of inequitable conduct by Kaseberg . . . before the Copyright Office" support their affirmative defense of unclean hands. *See* Opp'n at 9. Under Ninth Circuit precedent, the Court therefore considers Defendants to have abandoned their affirmative defense of fraud on the Copyright Office to the extent it is predicated upon any of the alleged inaccuracies concerning the August 2016 Application. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the plaintiff forfeited her right to raise an issue on appeal because her opposition to a motion to dismiss failed to suggest a continuing interest in pursuing the claim and therefore "effectively abandoned" it).

In any event, the Court concludes that the alleged inaccuracies concerning the August 2016 Application do not arise to fraud on the Copyright Office. The alleged inaccuracies Defendants have identified in the August 2016 Application are in the form of omissions. It is true that intentional, material omissions may support a defense of fraud on the Copyright Office, *see, e.g.*, *Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1454 (N.D. Cal.) (quoting *Eckes v. Card Prices Update,* 736 F.2d 859 (2d Cir. 1984)), *on reconsideration*, 779 F. Supp. 133 (N.D. Cal. 1991), *aff'd*, 35 F.3d 1435 (9th Cir. 1994); however, Defendants have failed to identify, and the Court has not found, any authority imposing on Plaintiff a duty to disclose to the Copyright Office the prior publication of the Tom Brady joke on Twitter or the prior refusals of the September 2015

/ / /

/ / /

/ / /

Application.[6] *See, e.g.*, *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1141 (S.D. Cal. 2016) ("In order to state a claim of fraudulent omissions under the UCL/FAL, CLRA, or as a claim of common law fraud, a plaintiff must allege facts either showing that the alleged omissions are 'contrary to a representation actually made by the defendant, or showing an omission of a fact the defendant was obliged to disclose.'").

It is clear that Plaintiff is under no obligation to disclose everything related to the Tom Brady joke to the Office. For example, Plaintiff is required to include, among other things, "the year in which creation of the work was completed" and, "if the work has been published, the date and nation of its first publication." *See* 17 U.S.C. §§ 409(7)–(8). Plaintiff is not required, however, to provide the geographical coordinates for where he composed the work, what he ate for breakfast that morning, or what color underwear he was wearing at the time, *see generally* 17 U.S.C. § 409, unless that is "information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright." 17 U.S.C. § 409(10). As with the September 2015 Application, *see supra* Section I.B, it is possible that Plaintiff's counsel could have been more forthcoming with the Office by taking it upon himself to inform the Office of the prior rejections of the September 2015 Application. In the absence of any authority imposing upon Plaintiff's counsel a duty to disclose those rejections, however, the Court must conclude that they do not arise to fraud on the Office.

The Court therefore **GRANTS** Plaintiff's Motion for Judgment on the Pleadings and **DISMISSES** Defendants' Ninth Affirmative Defense for Fraud on the Copyright Office.[7]

---

[6] As to the "prior publication," it appears from the parties' prior summary judgment briefing that the Tom Brady joke was first published on Twitter on February 3, 2015, at 8:49 a.m., and subsequently published on Plaintiff's blog that same day thirteen minutes later, at 9:02 a.m. *See* Sep. Stmt., ECF No. 97-1, ¶ 59. The Date of Publication and Nation of First Publication on Plaintiff's registration therefore appear accurate, *see* Lorenzo Decl. Ex. 4, ECF No. 167-4 at 56, despite the fact that the Tom Brady joke was first "published" thirteen minutes earlier on Twitter.

[7] The Court declines to convert Plaintiff's Motion into one for summary judgment; however, the additional evidence introduced by Plaintiff but inappropriate for consideration on a motion for judgment on the pleadings would further support dismissal of Defendant's ninth affirmative defense on the alternative

## II. Tenth Affirmative Defense: Unclean Hands

"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (quoting *Survivor Productions LLC v. Fox Broadcasting Co.*, No. CV01-3234 LGB (SHX), 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)). "The application of the unclean hands doctrine is generally a fact intensive inquiry," *Morfin-Arias v. Knowles*, No. 16-CV-06114-BLF, 2018 WL 1710369, at *8 (N.D. Cal. Apr. 9, 2018), and the "defense is recognized only rarely." 4 Nimmer on Copyright § 13.09 (2018) (citing *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990 (9th Cir. 2009); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992)).

In addition to the allegations underlying their fraud on the Copyright Office affirmative defense, *see* Am. Ans. ¶ 70, Defendants' unclean hands affirmative defense is premised upon alleged inequitable conduct related to discovery in this case. *See id.* ¶¶ 73–74. Specifically, Defendants allege that Plaintiff: (1) "repeatedly and knowingly withheld

---

grounds that, even if there were actionable omissions in the August 2016 Application, there was no prejudice to Defendants or intent to defraud the Office. Under Ninth Circuit precedent, "[t]he case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement."). Whichever of those two standards applies, it is not met here. First, Defendants do not—and cannot—claim prejudice as a result of the alleged inaccuracies in or omissions from the August 2016 Application, particularly given that the August 2016 Application no longer has any direct bearing on the instant litigation. Further, in August 2015, Plaintiff's attorney, Jayson Lorenzo, spoke with Ted Hirakawa of the United States Copyright Office ("Office"), who informed Mr. Lorenzo that a single application and a collective work application could be submitted for the same joke. Lorenzo Decl. ¶ 7. This is what Mr. Lorenzo did on Plaintiff's behalf. *See* Am. Ans. ¶¶ 49–50. Absent any authority imposing upon Mr. Lorenzo a duty to disclose the rejections of the single application, the Court must conclude that Plaintiff and Mr. Lorenzo—although less forthcoming that they could have been—lacked an intent to defraud the Office.

responsive, relevant documents and information directly related to the validity of his asserted copyrights," *id.* ¶ 73; and (2) "attempted to hide the withheld documents . . . by knowingly providing inaccurate information in response to an interrogatory request." *Id.* ¶ 74.

Plaintiff argues that, to the extent Defendants' unclean hands defense is premised upon the same allegations as their fraud on the Office defense, Defendant's unclean hands defense must fail for the same reasons. *See* Opp'n at 14–15. With respect to the alleged discovery misconduct, Plaintiff argues that "[a]ny alleged inequitable conduct has been addressed" because Plaintiff has "produced all information after the Summary Judgment Order" and the "Court ruled as Summary Judg[]ment that Defendant would be permitted to reopen discovery and bring another dispositive motion on the issue of fraud on the copyright office." *Id.* at 15.

It is true that, generally speaking, "a defense of unclean hands may not be based on discovery misconduct." *Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2007 WL 420184, at *5 (N.D. Cal. Feb. 6, 2007) (citing *Ellison Educ. Equip., Inc. v. Chen*, No. SACV02-1184-JVS(ANX), 2004 WL 3154592 at *20 (C.D. Cal. Dec. 21, 2004) ("To the extent [intervenor]'s unclean hands are caused by alleged discovery abuses, . . . the proper remedy is a motion to compel or a motion for sanctions"); *X-It Products, L.L.C. v. Walter Kidde Portable Equip., Inc.,* 155 F. Supp. 2d 577 (E.D. Va. 2001) (striking unclean hands defense to the extent based on litigation misconduct and holding that the "appropriate remedy is . . . a motion to compel and/or a motion for sanctions")). This is because a party aggrieved by discovery abuses may seek relief under Federal Rule of Civil Procedure 37. *See, e.g.*, *Ellison Educ. Equip., Inc.*, 2004 WL 3154592, at *20. There is a line of cases, however, suggesting that the unclean hands defense may be available where the other party engaged in discovery misconduct to conceal fraud concerning the underlying intellectual property rights at issue in the litigation. *See McCormick v. Cohn*, No. CV 90-0323 H, 1992 WL 687291, at *4 (S.D. Cal. July 31, 1992) (reversing judgment on grounds on unclean hands where "plaintiffs have made clear

misstatements regarding their ownership of the copyright before and during litigation and have violated a court order involving discovery that was highly relevant to the defense of the copyright claims"), *aff'd*, 17 F.3d 395 (9th Cir. 1994); *see also Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1077 (C.D. Cal. 2009) (summarily adjudicating non-infringement of patent based on unclean hands where plaintiff misrepresented ownership of patent and "failed to produce the forged assignments or disclose their existence during the court of discovery in this case"), *aff'd*, 404 F. App'x 496 (Fed. Cir. 2010).

The Court need not attempt to reconcile these authorities, however, because it has found that Plaintiff's conduct does not rise to the level of fraud on the Office. Consequently, the Court must agree with Plaintiff that Defendants' only recourse for the claimed discovery misconduct is under Rule 37. Accordingly, the Court **GRANTS** Plaintiff's Motion and **DISMISSES** Defendants' Tenth Affirmative Defense for Unclean Hands.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Judgment on the Pleadings (ECF No. 167) and **DISMISSES** Defendants' Ninth Affirmative Defense for Fraud on the Copyright Office and Tenth Affirmative Defense for Unclean Hands. The parties **SHALL FILE** a proposed schedule of pre-trial dates within fourteen (14) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: November 15, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge