PATRICIA L. GLASER - State Bar No. 55668
pglaser@glaserweil.com
THOMAS P. BURKE JR. - State Bar No. 288261
tburke@glaserweil.com
JUSTIN P. THIELE - State Bar No. 311787
jthiele@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ALEXANDER KASEBERG,<br><br>             Plaintiff,<br><br>v.<br><br>CONACO, LLC; TURNER BROADCASTING SYSTEM; TIME WARNER, INC.; CONAN O'BRIEN; JEFF ROSS; MIKE SWEENEY; DOES 1–50, inclusive,<br><br>             Defendants. | CASE NO.: 15-CV-01637-JLS-MSB<br><br>Hon. Janis L. Sammartino<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* NO. 1 FOR SEPARATE TRIALS ON THE ISSUES OF LIABILITY AND DAMAGES OR, IN THE ALTERNATIVE, FOR AN ORDER CLOSING THE COURTROOM AND SEALING DOCUMENTS DURING TESTIMONY ABOUT DEFENDANTS' CONFIDENTIAL FINANCIAL INFORMATION**<br><br>Date:        April 11, 2019<br>Time:       1:30 p.m.<br>Courtroom: 4D |

Defendants Conaco, LLC; Conan O'Brien; Jeff Ross; Mike Sweeney; Turner Broadcasting System, Inc.; and Warner Media, LLC as successor-in-interest to Time Warner Inc. (collectively "Defendants") hereby submit this memorandum of points and authorities in support their Motion *in Limine* No. 1 for Separate Trials on Liability and Damages or, in the Alternative, to Seal Documents and Close the Courtroom During Presentation of Confidential Material as follows:

Under the strong protective order entered by this Court, *see* ECF No. 48, Defendants have produced dozens of pages of highly confidential financial information to Plaintiff. This is especially true for Defendants Conaco and Turner (collectively the "Corporate Defendants"): indeed, these Corporate Defendants have produced financial records that are confidential even to each other. Public dissemination of this financial information would cause considerable harm to the Corporate Defendants' competitive standing by allowing their competitors to access sensitive, nonpublic information regarding revenues, costs, profitability, and advertisers. Accordingly, Defendants' interest in maintaining the confidentiality of this nonpublic financial information would likely outweigh the common law right to public access to judicial proceedings, necessitating the closure of the courtroom and sealing of documents and transcripts.

Before reaching the question of closing the courtroom, however, Defendants propose, and move for an order, separating the liability and damages phases of the trial scheduled for May 28, 2019. Under Federal Rule of Civil Procedure 42, the Court has the discretion to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize …." While Rule 42 "confers broad discretion upon the district court to bifurcate a trial," *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002), all three factors listed in Rule 42 favor bifurcation in this case.

Regarding convenience, as discussed above, the financial information underlying the damages calculations in this case is highly confidential. The courtroom would likely need to be closed during any testimony about damages. *See Kamakana*

*v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to … release trade secrets." (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978))). Of course, if the trial is bifurcated, this administrative headache could be avoided altogether in the event of a defense verdict. Even in the event that Plaintiff prevails on some causes of action, bifurcation would provide for a streamlined process: Defendants anticipate that nothing would need to be sealed or closed during the liability portion, and damages could be tried in a consolidated sealed proceeding afterward—likely requiring only one or two days of testimony, as opposed to closing and opening the courtroom multiple times during a unified trial, each instance of which is likely to be a time-consuming distraction.

On prejudice, bifurcation may also help avoid prejudice to the Defendants. Under 17 U.S.C. § 504, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Defendants anticipate that Plaintiff will seek disgorgement of profits for at least the Tom Brady Joke and Washington Monument Joke. Plaintiff's own purported financial expert, John H. Reith, has opined that the revenues attributable to each of the Jokes at Issue are in the range of mid-four figures.[1] *See* Declaration of Thomas P. Burke, Jr. ("Burke Decl."), ¶ 3. Defendants, meanwhile, counter that it is impossible to attribute *any* particular amount of revenue to the Jokes at Issue, given that Plaintiff cannot offer any evidence that any of

---

[1] Given the sensitive and highly confidential nature of the underlying data, Defendants do not cite the exact figures calculated by Reith at this time, though if determined to be material to the outcome of this Motion, Defendants can make Reith's report available for *in camera* inspection or under seal.

*Conan*'s estimated revenue[2] streams were enhanced by the alleged infringement. Regardless, the overall conclusion remains that we are not dealing with large damages figures. However, should Plaintiff attempt to elicit testimony from Conaco or Turner of gross revenues or budgets for the show, the large figures involved could irreversibly prejudice the jury in a unified trial. Avoidance of this potential prejudice favors bifurcation.

And regarding economy, a bifurcated trial is likely to be conducive to expedition and economy. Of course, in the event of a complete defense verdict, there will be no need to conduct the damages portion of the trial. But even in the event that Plaintiff is able to prove infringement for some or all of the Jokes at Issue, the damages portion of the trial still may not be necessary—such a verdict on liability would likely drive settlement of the damages portion. Even if a damages trial does take place, however, the issues may be narrowed so that the damages evidence can be presented more quickly, and be more clearly understood, than in a unified trial. For example, only one of the Jokes at Issue (the Jenner Joke) is eligible for statutory damages. It is possible that the jokes remaining for a damages trial will only be eligible for actual damages and disgorgement of profits, on the one hand, or statutory damages, on the other. If only one computation of damages is available, that would streamline the testimony greatly.

Finally, the issues of liability and damages are clearly separable in this case. *See Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) (including "separability of the issues" as a factor be considered when determining whether to bifurcate a trial) (citing William W. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 16:160.4). The liability phase will be marked by testimony from Plaintiff,

---

[2] As Defendant Turner explained in its Second Amended Supplemental Interrogatory Responses, it can only provide estimates of its revenues and profits "as TBS does not keep episode-specific information sufficient to arrive at precise revenue and profit figures in the ordinary course of business." Burke Decl., ¶ 2, **Ex. 1** at 6.

from the writers of the Jokes at Issue, from the named individual Defendants, and possibly from expert witnesses David Barsky and Elayne Boosler (for Plaintiffs, and the subject of Defendants' Motions *in Limine* Nos. 2 and 3) and Jeffrey Kinrich (for Defendants). The issues of access and independent creation are likely to predominate—and these do not overlap with damages issues. On Plaintiff's side, likely the only repeated witness in a damages trial would be the Plaintiff himself— and then, only for the limited purpose of proving up his actual damages. Plaintiff's expert John H. Reith is concerned exclusively with damages issues. And Defendants' witnesses are likely to include testimony from a corporate representative of Conaco, along with rebuttal expert testimony from Kinrich. While some witnesses *may* be required to appear and testify twice, it is relatively few, and the subjects of their testimony are easily separable. Accordingly, this factor favors bifurcation.

Additionally, as a matter of practicality and scheduling, the key witness designated as "person most knowledgeable" for Defendant Turner, Ayesha Kardar, will be unavailable to testify during the dates currently scheduled for trial in this matter due to a planned leave of absence for maternity leave. *See* Declaration of Ayesha Kardar, ¶ 3. Bifurcation will relieve the Court and the parties from the burden of either having to accommodate Kardar's availability or relieve Defendant Turner from the burden of designating and preparing a substitute witness.

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and order separate trials on the issues of liability and damages or, in the alternative, issue an order closing the courtroom and sealing all documents and transcripts during testimony related to Defendants' nonpublic financial information.

DATED: March 7, 2019

Respectfully submitted,

GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP

By: */s/ Thomas P. Burke Jr.*
PATRICIA L. GLASER
THOMAS P. BURKE JR.
JUSTIN P. THIELE
   *Attorneys for Defendants*