1  Jayson M. Lorenzo (SBN 216973)
2  Ryan J. Altomare (SBN 306581)
   J. LORENZO LAW
3  2292 Faraday Ave., Ste. 100
   Carlsbad, CA 92008
4  Telephone: (760) 560-2515
5  Facsimile: (877) 520-7900

6
   Attorneys for Plaintiffs
7  ROBERT ALEXANDER KASEBERG

8

9            UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA

11

12 ROBERT ALEXANDER KASEBERG,      ) Case No.:  15cv01637JLSDHB
                                    )
13          Plaintiff,              ) PLAINTIFF ROBERT
14                                  ) ALEXANDER KASEBERG'S
                                    ) OPPOSITION TO DEFENDANTS'
15     vs.                          ) MOTION IN LIMINE NO. 1 FOR
16                                  ) SEPARATE TRIALS ON THE
   CONACO, LLC; TURNER             ) ISSUES OF LIABILITY AND
17 BROADCASTING SYSTEM; TIME        ) DAMAGES OR, IN THE
   WARNER, INC.; CONAN O'BRIEN;     ) ALTERNATIVE, FOR AN
18 JEFF ROSS; MIKE SWEENEY; DOES 1  ) OTDER CLOSING THE
19 – 10, inclusive,                 ) COURTROOM
                                    )
20                                  )
           Defendants.              )
21                                  )
                                    )
22                                  ) Date:   April 11, 2019
23                                  ) Time:  1:30 PM
                                    ) Dept:  4D
24 _____      )

25

26

27

28

PLAINTIFF ROBERT ALEXANDER KASEBERG'S OPPOSITION TO DEFENDANTS' MOTION IN
LIMINE NO. 1 FOR SEPARATE TRIALS ON THE ISSUES OF LIABILITY AND DAMAGES OR, IN THE
ALTERNATIVE, FOR AN ORDER CLOSING THE COURTROOM

# I.    INTRODUCTION

Defendants' Motion to Bifurcate the issues of liability and damages should be denied in its entirety for the following reasons.

# II.    ARGUMENT

## A.    Legal Standard

The party seeking bifurcation bears "the burden of proving that bifurcation is justified given the facts in [the] case." Spectra-Physics Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992). Bifurcation is the exception, not the norm. See, e.g., Clark v. IRS, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) ("Bifurcation, however, is the exception rather than the rule of normal trial procedure."); Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) ("[B]ifurcation remains the exception rather than the rule.").  In general, a single proceeding will be a more efficient and reasonable means of resolving the action.  Gravity Defyer Corporation v. Under Armour, Inc. WL 12138987, 2 (C.D. Cal. 2013).

Pursuant to Fed. R. Civ. P. 42(b), for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.

The factors considered by the court on a motion for separate trials include:

-   Convenience: Whether separate trials would be in furtherance of convenience

-   Prejudice: Whether separate trials would avoid prejudice;

-   Judicial economy: Whether separate trials would be "conducive to expedition and economy;"

-   Lessen the risk of confusion: Whether separate trials would simplify the issues for the jury and reduce the danger of unnecessary jury confusion;

-   Separable issues: Whether the issues are clearly separable.

Jones and Rosen, et al., <u>Rutter Group Practice Guide: Federal Civil</u>
<u>Trials and Evidence</u> ¶ 4:492 (The Rutter Group 2018).

### 1. Convenience

To begin with, there would be no convenience for bifurcating the liability
portion of the trial from the damages portion of the trial. Defendants claim that
because the "financial information underlying the damages calculations is highly
confidential, ...the courtroom would likely need to be closed during any
testimony about damages." The idea is that all of this would be avoided by a
defense verdict at the liability phase.

There are a few major flaws in this reasoning. First, it completely ignores
this Court's statements at the pretrial conference. The Court is only going to have
each witness called to testify once. This was expressly stated. The following
witnesses are expected to provide testimony regarding both liability and
damages:

*Robert Alexander Kaseberg* – He will testify to both the events involving
the use of his jokes, communications with Defendants, his background as a
freelance comedy writer and the amount he is paid for jokes;

*Mike Sweeney* – He will testify to his conversations with the Conaco staff,
and with Plaintiff, his participation in the joke writing process, and will also
testify to his bonuses and compensation attributable to the jokes which relate to
Plaintiff's claim for disgorgement of revenues and profits;

*Conan O'Brien* – He will testify to his conversations with his staff, his
participation in the joke writing process, the jokes at issue, his shows policy and
procedures and will also testify to his bonuses and compensation attributable to
the jokes which related to Plaintiff's claim for disgorgement of revenues and
profits;

*Jeff Ross* - He will testify to the alleged infringement and discussions with
the staff, his participating in the joke writing process, policies and procedures of

the show, as well as his bonuses and compensation attributable to the jokes which related to Plaintiff's claim for disgorgement of revenues and profits.

*Conaco, LLC Person Most Knowledgeable* – This individual will testify to the alleged infringement, documents produced by Conaco, LLC, responses to discovery, as well as Conaco, LLC's revenues and profits related to the shows that contained the jokes at issue.  Plaintiff is informed and believes that the person will likely be Defendant Ross on behalf of Conaco, LLC.

*Jeffrey Kinrich* - Mr. Kinrich is both Defendants' probability expert and damages expert.  Mr. Kinrich will testify during the liability phase and will need to recalled during the damages portion.

If the motion to bifurcate is granted, each and every one of these individuals will have to testify two times, on different dates, at trial. This is exactly what this Court wanted to avoid. This can hardly be considered fostering convenience for the Court, parties and witnesses.

Defendants also claim that the person most knowledgeable for Defendant Turner Broadcasting System ("TBS"), Ayesha Kardar, will be unavailable to testify during the dates currently scheduled for trial in this matter due to a maternity leave.  First, Ms. Kardar was deposed strictly as a witness as to TBS' revenues and profits related to the jokes at issue.  Her deposition lasted 59 minutes.  While Plaintiff certainly understands this conflict, Plaintiff has already taken Ms. Kardar's deposition and is willing to use her deposition testimony in lieu of her testimony at trial.  Defendant TBS also produced documents listing gross revenue and profits as well as interrogatory responses listing the same.  In sum, Ms. Kardar's presence is not necessary. As such, her scheduling conflict is not an issue for this case.

## 2. Avoiding Prejudice

Defendants claim that should Plaintiff attempt to elicit testimony from Conaco or Turner of gross revenues or budgets for the show, the large figures

involved could irreversibly prejudice the jury in a unified trial.   This does not qualify as prejudice and in fact the gross revenues related to the jokes at issue are undoubtedly relevant to Plaintiff's damage claim.  Defendants' alleged prejudice cuts both ways.  Mr. Kaseberg will have to testify how much he earns for his jokes and Defendant's will likewise have to discuss the revenues they receive for jokes.

Plaintiffs and large corporations are involved in lawsuits regularly, and their financial information is both disclosed to juries regularly.   Model Jury Instruction 4.1 states "All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party." The jury will be instructed accordingly. Ninth Circuit Model Jury Instruction 4.1 (2018).   In fact, in Dallas v. Goldberg, Defendant made a similar argument advanced by Defendants in this case. 143 F. Supp. 2d 312 (S.D.N.Y. 2001). Defendants offered nothing to justify bifurcation other than generalized assertions that the punitive damages phase of a trial should be separated from the liability and compensation phases thereof, and that bifurcation would obviate any prejudice that could accrue to Defendants from the exposure of financial evidence during the liability phase of a trial.  Dallas, 143 F. Supp. 2d at 315. Defendants did not identify the financial information they intend to proffer or explain how that evidence would be prejudicial with respect to liability. Id. The Court noted cases denying motion to bifurcate liability and damages phases of the trial where moving party failed to present particular factors to distinguish potential prejudice from that which is normally dealt with through an appropriate charge and curative instructions.  Id. at 316.  In sum, the way to deal with potential prejudice is through an instruction.   If Mr. Kaseberg must testify on how much he makes on a joke, then Defendant's should have to do the same.  The rules do not apply differently to large corporations nor should they.

Further, regardless of whether financial information is disclosed, the Defendants are large corporations and the jury will already know that. Just because the dollar figures may be large does not entitle Defendants to a bifurcated trial. Plaintiff in principle has no issue with measures being taken to protect privacy and confidentiality. However, Plaintiff opposes bifurcation and specifically Defendants' arguments that they will be prejudiced by hearing large numbers.

### 3. Judicial Economy

Defendants next claim that the bifurcation would cause judicial economy because in the event of a defense verdict, a damages trial would not be necessary and also because if liability was found, the settlement negotiations would ensue.

Both of these arguments are speculative at best. To begin with, anyone can make the statement that if that party wins at the liability phase, the damages trial will not be necessary.  That is the case in 100% of civil matters and if that were the case every civil case should be bifurcated. This bare assertion has no relationship to the facts of this specific case. Furthermore, the idea of a liability decision in favor of Plaintiff driving settlement negotiations is also speculative. This case has dragged on for almost four years and two settlement conferences with no resolution.   In order for there to be a settlement it must agreed to by both parties. It is not one sided assertion. Therefore, what Defendants believe will happen if Plaintiff prevails on liability is pure speculation.

Additionally, the necessity of bringing at least five witnesses back to testify a second time at the damages trial does not foster judicial economy.  In fact, there are only two witnesses who would not need to testify if the case is bifurcated.  Those would be Plaintiff's damages expert Mr. Reith and Ms. Kardar, who can be offered through deposition testimony.  Plaintiff anticipates Plaintiff's expert will be offered for no more than an hour to explain his opinion and how gross revenues for the jokes at issue have been calculated. Ms. Kardar will be the

same or even less than an hour. In sum, if the case is bifurcated, the Court and parties would be saving at most 2 to 3 hours of time and would have to drag, Mr. O'Brien, Mr. Sweeney, Mr. Ross, Mr. Kaseberg, Conaco, LLC's representative and Mr. Kinrich back. Their testimony on revenues and profits will be short and should be dealt with at the same time they testify during the liability phase.

Defendants also claim that the concept of closing the courtroom during certain phases of the trial when certain financial information is disclosed could be burdensome and that this would be avoided by bifurcation. This argument is flawed because it assumes that this procedure would occur expediently. Plaintiff anticipates only asking a few questions of each witness who is testifying to damages/financial information. Closing the courtroom for these few questions, if the Court so chooses, would not cause any great inconvenience and far outweighs, bringing back 5 witnesses and saving at most a few hours of time.

### 4. Risk of Confusion

There is nothing to suggest that a jury will be confused with having the liability and damages aspects of this case tried together. To the contrary, it is more likely that a jury could become confused by a witness being called back to testify a second time when there appears to be no reason why all of the questions were not asked the first time.

### 5. Separable Issues

While it is true that the issues of "infringement" and "damages as a result of the infringement" are separable, it appears that this is the only factor weighing towards bifurcation. However in almost every civil case damages and liability are separable.

## IV.    CONCLUSION

Defendants cannot meet their burden for bifurcation. As stated above, 4 of the 5 factors weigh in favor of ruling against bifurcation. There are at least five witnesses who will testify in the liability portion who also have information

related to damages.  Those five witnesses would need to be brought back to Court should the case be bifurcated.  Ms. Kardar's testimony can be offered through deposition if she is unavailable which should take less than an hour.  Plaintiff's damages experts will testify for at most an hour in Plaintiff's case.  Saving a few hours and recalling five witnesses is hardly worth the additional burden of having two trials.  At most, the Court and the parties would be saving a few hours of time by bifurcating the matter.  This does not justify the added time and expense of recalling witnesses, having a jury deliberate twice and all the other matters that would have to be done again should the case be bifurcated. Any perceived prejudice can be dealt handled with the appropriate instruction as the law indicates.

Plaintiff does not oppose measures taken by the Court to protect the privacy of Parties such as an appropriate order closing the courtroom when necessary.  However, a bifurcation is unnecessary and the elements required to order bifurcation have not been met.

Respectfully Submitted.


J. LORENZO LAW


Date: March 21, 2018              */S/ RYAN J. ALTOMARE*
                                  JAYSON M. LORENZO
                                  RYAN J. ALTOMARE
                                  Attorneys for Plaintiff

- 8 -