UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ALEXANDER KASEBERG,

Plaintiff,

v.

CONACO, LLC; TURNER BROADCASTING SYSTEM; TIME WARNER, INC.; CONAN O'BRIEN; JEFF ROSS; MIKE SWEENEY; DOES 1–10, inclusive,

Defendants.

Case No.: 15-CV-1637 JLS (MSB)

**ORDER: (1) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, (2) GRANTING IN PART AND DENYING IN PART MOTIONS *IN LIMINE*, AND (3) SETTING HEARING ON PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

(ECF Nos. 191–95, 197–98, 200, 202)

Presently before the Court are Plaintiff Robert Alexander Kaseberg's Motion to Amend Scheduling Order and Motion for Leave to Amend[] Plaintiff's First Amended Complaint ("Mot. to Amend," ECF No. 195), as well as Defendants Conaco, LLC; Conan O'Brien; Jeff Ross; Mike Sweeney; Turner Broadcasting System, Inc.; and Time Warner, Inc.'s (ECF Nos. 191, 192, 193, 194) and Plaintiff's (ECF Nos. 197, 198, 200, 202) Motions *in Limine*, filed pursuant to the schedule set at the February 21, 2019 final pretrial conference. *See* ECF No. 188. The Court heard oral argument on April 11, 2019. *See* ECF No. 240. Having reviewed the Parties' arguments and the law, the Court rules as follows.

## MOTION TO AMEND

### I. Legal Standard

"After a scheduling order has been issued setting a deadline to amend the pleadings, and a party moves to amend the pleadings after the deadline, the motion amounts to one to amend the scheduling order and thus is properly brought under Rule 16(b)." *U.S. Bank Nat'l Ass'n v. Wayman*, No. 13-CV-02203-BAS BLM, 2015 WL 5772730, at *5 (S.D. Cal. Sept. 30, 2015) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 605, 608 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy[,] which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. As part of this inquiry,

> the movant may be required to show . . . : (1) that she was diligent in assisting the Court in creating a workable Rule 16 order . . . ; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference . . . ; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order . . . .

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). "If th[e moving] party was not diligent, the inquiry should end." *Id.*

If, however, the moving party shows good cause, the party must then demonstrate that amendment is proper under Rule 15(a). *Id.* at 608 (quoting *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). Under Rule 15(a), leave to amend is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**II. Analysis**

"Plaintiff seeks to amend his complaint to include a claim for Vicarious Copyright Infringement against Defendant[] Turner Broadcasting System." Mot. to Am. at 3. Plaintiff explains that "[t]his is simply an alternate theory of copyright liability arising from the same set of facts[] that still hinges on direct infringement" and, "during the course of . . . reviewing the specific jury instructions that could be offered at trial, Plaintiff came upon the vicarious infringement instruction and found that it might also apply." *Id.* at 6. Alternatively, Plaintiff indicates his intention to move to conform to proof pursuant to Federal Rule of Civil Procedure 15(b). *Id.* at 6–7.

In their Opposition (ECF No. 214), Defendants contend that "Plaintiff cannot demonstrate "good cause" to amend the scheduling order under Rule 16 because he has not been diligent in seeking leave to file his second amended complaint." *Id.* at 2 (emphasis omitted). Defendants also argue that "Plaintiff's proposed amendment to his complaint should not be allowed under Rule 15 because Plaintiff has already amended once, and further amendment would prejudice Defendants," *id.* at 5 (emphasis omitted), and "Plaintiff's proposed amendment is futile because he has not alleged—and cannot prove—facts sufficient to support a claim for vicarious copyright infringement." *Id.* at 7 (emphasis omitted). Finally, "Plaintiff should not be permitted to move to conform the pleadings to the evidence at trial because Defendants do not consent to a trial on vicarious infringement." *Id.* at 10 (emphasis omitted).

In his Reply (ECF No. 227), Plaintiff appears to concede that he cannot demonstrate good cause. *See id.* at 3 ("Plaintiff respects Defendants['] good cause argument as it relates to modifying the scheduling order. . . . Other th[a]n the good cause argument to amend the scheduling order, there is no reason Plaintiff should not be allowed to amend."). The Court must agree. This action was filed on July 22, 2015. *See generally* ECF No. 1. The deadline

to amend the pleadings was April 22, 2016. *See generally* ECF No. 29. By stipulation, Plaintiff filed a First Amended Complaint on October 3, 2016, *see generally* ECF No. 58, days before fact discovery closed on October 7, 2016.[1] *See generally* ECF No. 57. Plaintiff's failure to research all theories of liability prior to filing his Complaint or his First Amended Complaint "is not compatible with a finding of diligence and offers no reason for a grant of relief." *See Johnson*, 975 F.2d at 609. The Court therefore **DENIES** Plaintiff's Motion to Amend.[2]

## MOTIONS *IN LIMINE*

### I. Legal Standards

#### *A. Motions* in Limine

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "In the case of a jury trial, a court's ruling . . . gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *Id.* at 1111–12. Any ruling on a motion *in limine*, however, is necessarily tentative in nature; a "district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

/ / /

---

[1] Fact discovery as to the application and/or registration of the Tom Brady joke was later reopened until October 30, 2017. *See* ECF No. 146 at 7.

[2] Plaintiff indicates that he reserves the right to move to amend the pleadings to conform to proof. *See* Mot. to Am. at 7. Because such a motion is premature, the Court declines to rule on it at this juncture. As the Court indicated at the hearing, the trial will be governed by the operative pleadings. *See* ECF Nos. 58, 165. Defendants, of course, are free to object to the introduction of Plaintiff's proposed evidence at trial.

### ***B. Motions to Exclude Expert Testimony***

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 598 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 169 (9th Cir. 1994)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

On the other side of the equation, "[u]nder *Daubert [v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)], the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)). *Daubert* requires scientific evidence to be both reliable and relevant. 509 U.S. at 590–91, 597. The party seeking to submit expert testimony bears the burden of proving admissibility. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

/ / /

Another district court in the Ninth Circuit summarized *Daubert*'s reliability prong as follows.

> Reliable testimony must be grounded in the methods and procedures of science and signify something beyond "subjective belief or unsupported speculation." The inferences or assertions drawn by the expert must be derived by the scientific method. In essence, the court must determine whether the expert's work product amounts to "'good science.'" In *Daubert*, the Supreme Court outlined factors relevant to the reliability prong, including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community." The Supreme Court emphasized the "flexible" nature of this inquiry. As later confirmed in *Kumho Tire*, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather the law grants a district court the same broad latitude when it decides how to determine reliability as [the court] enjoys in respect to its ultimate reliability determination."

*Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011) (citations omitted). "The relevance prong under *Daubert* means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Henrickson v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) (citing *Daubert*, 509 U.S. at 591–92).

## II. Analysis of Defendants' Motions *in Limine*

### *A. Defendants' First Motion* in Limine

In their First Motion *in Limine* (ECF No. 191), Defendants request that the Court "order separate trials on the issues of liability and damages or, in the alternative, issue an order closing the courtroom and sealing all documents and transcripts during testimony related to Defendants' nonpublic financial information." *Id.* at 4. Although "Plaintiff does not oppose measures taken by the Court to protect the privacy of the Parties[,] such as an appropriate order closing the courtroom when necessary . . . [,] bifurcation is unnecessary and the elements required to order bifurcation have not been met." ECF No. 211 at 8.

Under Federal Rule of Civil Procedure 42, the Court has the discretion to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Rule 42 "confers broad discretion upon the district court to bifurcate a trial." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

The Court concludes that the Rule 42 factors do not favor bifurcation here, as bifurcation is not likely to further judicial economy or convenience. The Court also concludes that Defendants have not established that bifurcation is necessary to avoid prejudice. Accordingly, the Court **DENIES** Defendants' First Motion *in Limine* to the extent it seeks bifurcation but **GRANTS** the Motion to the extent Defendants request the courtroom closed and documents sealed during testimony related to Defendants' confidential, nonpublic financial information.[3]

***B. Defendants' Second Motion* in Limine**

In their Second Motion *in Limine* (ECF No. 192), Defendants request that the Court exclude the testimony of Plaintiff's expert, David Barsky, Ph.D., who would be offered "to examine the pattern of jokes published by the Plaintiff that appeared in Conan monologues, and specifically whether this pattern suggested that this might be a chance occurrence," *see* Barsky Report at 1, under Federal Rule of Evidence 702. *See* Defs.' MIL No. 2 at 6. Specifically, Defendants contend that Dr. Barsky's opinion is the product of an unreliable method because Dr. Barsky limits his opinion to an improper time period; gives no criteria for the standard of "similarity" for jokes; and relies on additional improper or baseless assumptions, such as the fact that Plaintiff's joke-writing output is "relatively constant," that a single new event may only inspire one possible joke, or that his definition of

[3] Defendants indicate for the first time that Defendant Turner Broadcasting System's designated person most knowledgeable, Ayesha Kadar, will be unavailable to testify during the dates currently scheduled for trial because she will be taking a leave of absence and does not plan to return to work until September 2019. Defs.' 1st MIL at 4; *see also* Declaration of Ayesha Kadar, ECF No. 191-2, ¶ 3. Defendants contend that "[b]ifurcation will relieve the Court and the parties from the burden of having to accommodate Kardar's availability or relieve Defendant Turner from the burden of designating and preparing a substitute witness." Defs.' 1st MIL at 4. Because the Court **DENIES** Defendants' request for bifurcation, the Court expects Defendants will make the necessary arrangements to designate and prepare a substitute witness.

similarity encompasses jokes that could be independently created by Defendants. *Id.* at 2–6. Plaintiff counters in his Opposition (ECF No. 212) that "[t]here is nothing unreliable about Dr. Barsky's methodology" and, in any event, "those issues go to weight for the jury to decide." *Id.* at 11.

In assessing the reliability of Dr. Barsky's opinion, the Court starts with Defendants' contention that Dr. Barsky adopts wholesale Plaintiff's allegations in determining the universe of jokes that are "similar" for purposes of his report. In *Daubert II*, the Ninth Circuit acknowledged that "[o]ne very significant fact to be considered [as part of the reliability analysis] is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *see also Munoz v. Orr*, 200 F.3d 291, 301–02 (5th Cir. 2000) ("[The expert] relied on the plaintiffs' compilations of data, which gives rise to a 'common-sense skepticism' regarding the expert's evaluation . . . , and did not seek to verify the information presented to him.") (citation omitted); *Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983) ("[T]he statistics on which [the expert] relied were prepared strictly in anticipation of litigation and were based on information received from a sister company. . . . These facts standing alone do not suffice to impugn the reliability of the statistics, but do properly signal a trial judge to make a critical review of their bases."); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2012 WL 3116355, at *6 (N.D. Cal. July 31, 2012) ("[The expert]'s lack of an articulated methodology for choosing which sources to rely upon is particularly troubling, in light of evidence that the sources consulted may have been systematically skewed towards demonstrating [the desired result]. . . . [He] rel[ied] primarily on documents that he had on hand or that were sent to him by Plaintiffs' counsel . . . . [T]his is precisely the type of methodology that is 'biased toward a particular conclusion' and therefore does not 'comport[] with the dictates of good science.'") (quoting *Daubert II*, 43 F.3d at 1317).

/ / /

Here, it is undeniable that Dr. Barsky's opinions were based on evidence furnished by Plaintiff's counsel and prepared for litigation and that Dr. Barsky's statistical model was prepared for the purpose of testifying. *See generally* Barsky Report. While this weighs against reliability, his testimony may still be admissible if Plaintiff "come[s] forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert II*, 43 F.3d at 1317–18.

But there exist additional problems with Dr. Barsky's analysis and identified by Defendants. For example, Defendants contend that Dr. Barsky's opinion relies on "multiple, baseless assumptions." Defs.' 2d MIL at 4. Without question, it is problematic, for example, that Dr. Barsky's "analysis assumes a relatively constant rate of joke-writing by the Plaintiff throughout the period June 2014 through June 2015," *see* Barsky Report at 1, where the analysis of Defendants' expert revealed that Plaintiff's joke output on Twitter ranged from fourteen to 120 jokes per week during that period. *See* Kinrich Report ¶¶ 21–23. Although Plaintiff points to his testimony that he "average[d] seven or eight" jokes per day, *see* Opp'n to Defs.' 2d MIL at 7, Plaintiff also testified at his deposition that his daily joke output "varies." Kaseberg Tr. at 134:5–10. Accordingly, one of Dr. Barsky's assumptions was proven untrue, which Dr. Barsky himself conceded would impact his mathematical model. *See* Barsky Tr. at 58:1–16.

Additionally, Dr. Barsky's analysis is based on five "similar" or "overlapping" jokes, *see* Barsky Report at 1, whereas only three remain at issue in this case. *See generally* ECF No. 131. Dr. Barsky also conceded that a change in the number of "overlapped joke[s]" would change his analysis and the resulting probabilities. *See* Barsky Tr. at 51:1–52:5. Although Dr. Barsky "reserve[d] the right to modify []his opinion as may be necessary if additional facts bec[a]me known," *see* Barsky Report at 5, he never did so, and the Ninth Circuit has precluded as unreliable the testimony of experts whose analysis "rests on unsupported assumptions," particularly those later contradicted by discovery. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988); *see also Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010) (affirming district court's exclusion

of expert where "[the expert]'s comparative analysis depended on unsupported assumptions"); *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (affirming district court's exclusion of expert whose assumptions were disproven by discovery because "expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported"); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all."). Proper assumptions are particularly important to statistics, "[t]he usefulness of [which] depends on the surrounding facts and circumstances." *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 263 (4th Cir. 2005) (quoting *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) (citing *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 340 (1977))); *see also Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) ("[T]his court and others have treated skeptically statistics that fail to account for other relevant variables.") (collecting cases).

Most problematic, however, "there is simply too great an analytical gap between the data and the opinion proffered." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Although Dr. Barsky purports to "examine the pattern of jokes published by the Plaintiff that appeared in Conan monologues, and specifically whether this pattern suggested that this might be a chance occurrence," Barsky Report at 1, ultimately, Dr. Barsky opines that "it . . . is unlikely that the [*Conan*] writers were independently developing the same jokes as the Plaintiff; if the jokes had been written independently, the estimated probability of seeing no 'overlapped' jokes in the period of May 7, 2014 through November 20, 2014 (which is the case) is still less than ¾ of 1%." *Id.* at 4. This leap from a pattern of "similar jokes"—defined by Dr. Barsky at his deposition as "a joke that was previously on Mr. Kaseberg's blog and that was then featured in the [*Conan*] monologue," Barsky Tr. at 39:11–13—to "independent[] develop[ment]" is not supported by Dr. Barsky's underlying data or analysis. Indeed, it is unclear what relevance the "pattern" Dr. Barsky was asked to evaluate holds: jokes published on Plaintiff's blog and later appearing on the *Conan* monologue do not necessarily correlate with infringement on the part of Defendants or rule

out the possibility of their independent development. This issue is only compounded by Dr. Barsky's apparent assumption—based on the limited data furnished by Plaintiff that formed the basis of his Complaint—that there were no other "overlapping jokes" during the arbitrarily defined periods examined, a fact neither tested nor verified by Plaintiff or Dr. Barsky.

Ultimately, Dr. Barsky's opinion is not only unreliable, but also irrelevant. Accordingly, the Court **GRANTS** Defendants' Third Motion *in Limine*. *See, e.g.*, *Shalaby v. Newell Rubbermain, Inc.*, 379 F. App'x 620, 622 (9th Cir. 2010) (affirming exclusion of expert report excluded as irrelevant); *see also In re C.F. Bean L.L.C.*, 841 F.3d 365, 370 (5th Cir. 2016) (same); *Anderson*, 406 F.3d at 263 ("[T]he district court did not abuse its discretion in excluding [the expert]'s testimony based on his statistical analysis. The analysis was based on comparisons that were not relevant to [the plaintiff]'s claims.").

### *C. Defendants' Third Motion* **in Limine**

In their Third Motion *in Limine* (ECF No. 193), Defendants ask the Court to exclude Plaintiff's expert Elayne Boosler, who would be offered to opine as to the substantial similarity of the Jokes at Issue,[4] under Rule 702. *See id.* at 6. Defendants argue that Ms. Boosler's testimony is not helpful to the trier of fact because "[t]he jury does not need an expert to tell them whether the Jokes are similar or not," *id.* at 3, and, in any event, it is not the product of reliable principles and methods because Ms. "Boosler performs none of the analytical dissection that is the hallmark of the extrinsic test." *Id.* (citing *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). In his Opposition (ECF No. 213), Plaintiff counters that "it is helpful for an experienced comedian[,] such as Ms. Boosler, [to] explain the types of jokes at issue," *id.* at 4, and "her opinion that the jokes are the same objectively, based on the fact [they have] the same premise and same punchline." *Id.* at 6.

---

[4] Although initially retained to offer additional opinions, including access to jokes; the proliferation of joke-stealing in the industry; and the customs, practices, and standards in the comedy industry, *see generally* Boosler Report, Plaintiff clarified in his Opposition that Ms. Boosler is being offered at trial to testify only as to "whether the jokes at issue are similar, the same and/or identical." Opp'n to Defs.' 3d MIL at 2.

Plaintiff argues that such evidence is permissible. Pl.'s 1st MIL at 3. That may be; however, "in the Ninth Circuit[,] expert testimony is not a *requisite* for a copyright infringement case." *Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)). "Whether expert testimony should be allowed in a particular case remains a matter committed to the discretion of the trial court under Federal Rule of Evidence 702 if such testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* "[W]here, as here, the subject matter is not complex or technical . . . , expert testimony will seldom be *necessary* to determine substantial similarity." *Id.* (collecting cases).

Ultimately, the Court concludes that such evidence is neither necessary nor helpful to the trier of fact in this case. Plaintiff maintains that "it is helpful for an experienced comedian[,] such as Ms. Boosler, [to] explain the types of jokes at issue." Opp'n to Defs.' 3d MIL at 4. Not only can such testimony easily be obtained from other parties—including Plaintiff and Mr. O'Brien—but Ms. Boosler ultimately is not being offered to testify to the *types* of Jokes at Issue; rather, Ms. Boosler is being offered for her expertise concerning their *substantial similarity*. Although the Court recognizes that Ms. Boosler is undoubtedly an expert comedienne, Defendants are correct that her conclusion that the Jokes at Issue "are the same, identical and/or substantially similar," *see* Boosler Report at 3, "performs none of the analytical dissection that is the hallmark of the extrinsic test." Defs.' MIL No. 3 at 3 (citing *Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2018); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Apple Computer, Inc.*, 35 F.3d at 1442; *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). "[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008); *see also Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (recognizing that "an ultimate conclusion with no analysis is meaningless" and thus is not helpful to the factfinder). Accordingly, the Court **GRANTS** Defendants' Third Motion *in Limine*.

***D. Defendants' Fourth Motion* in Limine**

In their Fourth Motion *in Limine* (ECF No. 194), Defendants request that the Court exclude aggregate information about views or hits to Plaintiff's blog as a whole or followers of his Twitter account generally as offered to prove widespread dissemination of the Jokes at Issue. *Id.* at 4. Defendants contend that "the focus must be on the works at issue: in this case, the individual blog posts or Tweets containing Plaintiff's jokes." *Id.* Consequently, the evidence offered by Plaintiff "is irrelevant to the question of whether the Jokes at Issue were widely disseminated at the time of the alleged infringement," *id.* at 4, and, "should Plaintiff produce some evidence—any evidence—purporting to show the distribution that the Jokes at Issue obtained during the relevant access windows, that evidence must be excluded as untimely and prejudicial under Federal Rules of Civil Procedure 26 and 37." *Id.* In his Opposition (ECF No. 215), Plaintiff contends that Defendants' Motion is an improper motion for summary adjudication and thinly maintains that his evidence is relevant because "it is evident that the fact that Plaintiff's blog had a certain number of page visits and that the Twitter posts had a certain number of likes and/or retweets is relevant to Plaintiff's claim for widespread dissemination." *Id.* at 3.

Plaintiff's relevance argument misses the mark. The Court agrees with Defendants that the relevant window for widespread dissemination here is necessarily constrained by both (1) the Jokes at Issue, and (2) the narrow interval between Plaintiff's publication and the *Conan* writer's submission of, at the very latest, Defendants' broadcast of, the Jokes at Issue. *Loomis v. Cornish*, No. CV 12-5525 RSWL JEMX, 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013) ("[P]laintiff may still show access by 'showing that the plaintiff's work has been widely disseminated.'") (quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)), *aff'd*, 836 F.3d 991 (9th Cir. 2016); *see also Art Attacks*, 581 F.3d at 1145 (limiting analysis of widespread dissemination on website to "the copyrighted . . . material"). Further, any attempt to remedy the issue would prove too little, too late, as Plaintiff appears to concede by declining to oppose Defendants' argument under Rules 26 and 37. Accordingly, the Court **GRANTS** Defendants' Fourth Motion *in Limine*.

## III. Plaintiff's Motions *in Limine*

### *A. Plaintiff's First Motion* in Limine

In his First Motion *in Limine* (ECF No. 197), Plaintiff requests that the Court "prevent[] Defendants . . . from introducing certain third-party evidence of jokes alleged to be similar to the jokes at issue in this case[] pursuant to Federal Rules of Evidence 4[01], 403, and 404." *Id.* at 1. In their Opposition (ECF No. 216), Defendants counter that the evidence is "all relevant to the defense of independent creation," relying on *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718 (9th Cir. 1976). *Id.* at 1. Defendants dismiss Plaintiff's character evidence argument as "puzzling," *id.* at 4, and add that "the jury will [not] be . . . confused, misled, or having their emotions inflamed." *Id.* at 6.

In *Granite Music Corporation*, the Ninth Circuit noted that "[e]vidence of similar musical phrases appearing in prior works is also logically relevant to rebut the inference of copying. Such evidence demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great." 532 F.2d at 720. The Ninth Circuit explicitly limited its relevance determination in *Granite Music Corporation* to works existing *prior* to publication of the plaintiff's composition. *See id.* This may be because subsequent works could have been influenced by the plaintiff's—or the defendant's—work. In any event, the Court limits itself to the Ninth Circuit's express holding of *Granite Music Corporation*, which should leave Defendants adequate examples for trial. Under *Granite Music Corporation*, therefore, the Court concludes that evidence of similar jokes predating publication by Plaintiff of the Jokes at Issue is relevant to Defendants' independent creation defense. The Court therefore **GRANTS IN PART** Plaintiff's Motion to the extent he seeks to exclude evidence of third-party jokes published after Plaintiff himself published the Jokes at Issue.

The Court also **GRANTS IN PART** Plaintiff's Motion to the extent he seeks to exclude evidence of third-party jokes similar to the UAB and Delta Jokes. The Court understands Defendants' position that the jokes remain relevant because "they were the first jokes chronologically—they started the alleged chain of infringements, so to speak."

Pl.'s 1st MIL Opp'n at 1. Nonetheless, the Court concludes that the jokes are properly excluded under Rule 403 on the basis that litigation of the jokes removed from this action will confuse the issues, waste time, and prove cumulative of other evidence of independent creation. Plaintiff's First Motion *in Limine* is otherwise **DENIED**.

***B. Plaintiff's Second Motion* in Limine**

In his Second Motion *in Limine* (ECF No. 198), Plaintiff seeks to exclude "certain jokes published by Defendants and Plaintiff other than the jokes at issue[ and] alleged to be similar[] pursuant to Federal Rules of Evidence 401, 403, and 404." *Id.* at 1. Defendants argue in their Opposition (ECF No. 218) that "[t]his evidence is highly relevant to the defense of independent creation because it demonstrates the ability of Defendants to independently create monologue jokes like the Jokes at Issue[] and shows overlapping comedic sensibilities between Plaintiff and *Conan*'s writers." *Id.* at 1.

The Court must agree. For the same reason that Court denied in part Plaintiff's First Motion *in Limine*, the Court **DENIES** Plaintiff's Second Motion *in Limine*.

***C. Plaintiff's Third Motion* in Limine**

In his Third Motion *in Limine* (ECF No. 200), Plaintiff asks the Court to enter "an order preventing Defendants . . . from introducing certain third-party evidence of jokes alleged to be similar to other jokes[] pursuant to Federal Rules of Evidence 4[01], 403, and 404." *Id.* at 1. According to Plaintiff, his Motion encompasses three categories of jokes: "1. Similar jokes between Plaintiff and third-parties unrelated to the jokes at issue in this case; [¶] 2. Similar jokes between Defendant and third-parties unrelated to the jokes at issue in this case and; [¶] 3. Similar jokes between third parties and other third parties unrelated to the jokes at issue in this case." *Id.* In their Opposition (ECF No. 219), Defendants contend that "[t]his evidence is relevant to the defense of independent creation because it shows that anyone, including Defendants, could independently create monologue-style jokes like the Jokes at Issue." *Id.* at 1.

Again, the Court must agree with Defendants that the evidence is relevant. At the hearing, Defendants agreed to limit themselves to no more than five examples relevant to

each of Plaintiff's first through third motions *in limine* to assuage the Court's concerns under Rule 403 that such evidence, if excessive, could confuse the issues and ultimately prove cumulative. Accordingly, the Court **DENIES** Plaintiff's Third Motion *in Limine*.[5]

### *D. Plaintiff's Fourth Motion* **in Limine**

In his Fourth Motion *in Limine* (ECF No. 202), Plaintiff "asks that Exhibits IV and IW from Defendants' Exhibit List be excluded as untimely."[6] *Id.* at 1. Exhibit IV/731 was produced to Plaintiffs on August 17, 2018. *See* Declaration of Jayson M. Lorenzo, ECF No. 202-1, ¶¶ 4–5. Exhibit IW/732 was produced to Plaintiffs on January 24, 2019. *See id.* ¶¶ 6–7. Plaintiff claims that this evidence could have been produced much sooner and that it is untimely and cumulative. *See* Pl.'s 4th MIL at 3.

In their Opposition (ECF No. 220), Defendants note that "Plaintiff does not even bother to allege that he has been harmed or prejudiced by the purportedly 'untimely' production of Exhibits IV and IW." *Id.* at 1. "Moreover, the evidence produced by Defendants as Exhibits IV and IW consisted primarily of public information gathered from Plaintiff's blog and Twitter account, public social media profiles, and late-night monologues," *id.*, meaning "this is not a case where Defendants have hidden information known exclusively to them and sprung it on Plaintiff at the last minute." *Id.* at 2. And "the disclosure of the documents that make up Exhibits IV and IW is harmless: these documents support the defense of independent creation that Defendants have asserted and pleaded from the very beginning. The allowance of these documents would not require Plaintiff to respond to any new theories and would create no delays." *Id.*

/ / /

---

[5] Plaintiff argues that, if Defendants are allowed to introduce evidence of third-party jokes, he "should be permitted also to introduce evidence of third party 'jokes.'" Pl.'s 3d MIL at 10. Plaintiff quotes to a particular Top 10 List from the *Late Show with David Letterman*. *See id.* Defendants object to this exhibit on the grounds of relevance and indicate that, if Plaintiff introduces the exhibit at trial, they intend to object. Because this issue is not properly before the Court at this time, the Court need not reach it.

[6] To conform with the Court's instructions, Exhibits IV and IW were subsequently renumbered Exhibits 731 and 732, respectively. *See* ECF No. 234 at 36.

The Court must agree with Defendants that any failure to disclose in this instance is harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)). Plaintiff received Exhibit IV/731 at least nine months before trial. Although Plaintiff received Exhibit IW/732 only four months before trial, many of these jokes had already been produced, *see* Declaration of Thomas P. Burke, Jr., ECF No. 220-1, ¶ 5, and Plaintiff has made no credible claim of prejudice. In his Reply (ECF No. 231), Plaintiff claims that he "cannot conduct any discovery regarding these documents" and that the "document dump" has resulted in "additional work." *Id.* at 2. Plaintiff, however, identifies no necessary discovery he is unable to obtain,[7] and the Court concludes that Plaintiff's claims concerning the burden of reviewing the production are hyperbolic.[8] Accordingly, the Court **DENIES** Plaintiff's Fourth Motion *in Limine*.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's Motion to Amend (ECF No. 195). Further, the Court **GRANTS IN PART AND DENIES IN PART** the Parties' Motions *in Limine* as follows:

1. The Court **GRANTS IN PART AND DENIES IN PART** Defendants' First Motion *in Limine* (ECF No. 191); specifically, the Court **DENIES** Defendants' First Motion *in Limine* to the extent it requests that the Court order separate trials on the issues of liability and damages but **GRANTS** it to the extent Defendants request that the Court close the courtroom and seal all documents and testimony related to Defendants' nonpublic financial information;

/ / /

[7] Plaintiff argued at the hearing that he is unable to depose the declarant for Exhibit 732. Nonetheless, Plaintiff did not identify any specific information that he required from the deposition of Autumn MacIntosh.

[8] Although the exhibit produced nine months before trial contained over 70 pages, the more recently produced exhibit contained only ten pages, some of which had been produced previously—hardly a "document dump" on the eve of trial.

2. The Court **GRANTS** Defendants' Second Motion *in Limine* (ECF No. 192) to exclude the testimony of Dr. Barsky;

3. The Court **GRANTS** Defendants' Third Motion *in Limine* (ECF No. 193) to exclude the testimony of Ms. Boosler;

4. The Court **GRANTS** Defendants' Fourth Motion *in Limine* (ECF No. 194) to exclude evidence of widespread dissemination not tied to the Jokes at Issue or falling outside the relevant access windows, *i.e.*, when Plaintiff published the Jokes and Issue and when they were submitted by *Conan*'s writers or broadcast by Defendants;

5. The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's First Motion *in Limine* (ECF No. 197); specifically, the Court **GRANTS** Plaintiff's First Motion *in Limine* as to the UAB and Delta Jokes and as to third-party jokes published after Plaintiff published the Jokes at Issue, but otherwise **DENIES** Plaintiff's First Motion *in Limine*;

6. The Court **DENIES** Plaintiff's Second Motion *in Limine* (ECF No. 198) to exclude evidence of Defendants' and Plaintiff's subsequent similar jokes unrelated to the Jokes at Issue;

7. The Court **DENIES** Plaintiff's Third Motion *in Limine* (ECF No. 200) to exclude third-party jokes alone or with either party unrelated to the Jokes at Issue; and

8. The Court **DENIES** Plaintiff's Fourth Motion *in Limine* (ECF No. 202) to exclude former Exhibits IV and IW (now Exhibits 731 and 732) as untimely produced.

The Court **SETS** a hearing on the Parties' amended proposed jury instructions and verdict form for May 23, 2019, at 1:30 p.m., in Courtroom 4D. The Parties **SHALL FILE** their amended proposed jury instructions and verdict form and e-mail Word versions to the Court on or before May 9, 2019.

**IT IS SO ORDERED.**

Dated: April 16, 2019

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge